## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICOR, INC.,

        Plaintiff,

v.

SOURCEBLUE, LLC f/k/a TURNER
LOGISTICS, LLC,

        Defendant.

Case No.: 1:21-cv-00698-RGA

**DEMAND FOR JURY TRIAL**

## SOURCEBLUE, LLC ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT, AND COUNTERCLAIMS

Defendant SourceBlue, LLC f/k/a Turner Logistics, LLC ("Defendant" or "SourceBlue"), by and through undersigned counsel, hereby submits this answer and affirmative defenses to the Complaint for Patent Infringement ("Complaint") filed by Plaintiff NICOR, Inc. ("Plaintiff" or "NICOR") in the above-captioned action. Any allegation in the Complaint not specifically admitted below is denied.

## ANSWER TO THE COMPLAINT

## NATURE OF THE ACTION

1.    SourceBlue admits that the NICOR Complaint purports to state an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., but affirmatively denies that there is any merit to Plaintiff's action. SourceBlue further admits that NICOR asserts that SourceBlue has infringed U.S. Patent No. 10,824,427, but affirmatively

denies there is any merit to NICOR's assertion. Except as admitted, SourceBlue denies the allegations in paragraph 1 of the Complaint.

## THE PARTIES

2.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and therefore denies them.

3.     SourceBlue admits that it was formerly known as Turner Logistics, LLC. SourceBlue further admits that it is a limited liability company organized and existing under the laws of the State of Delaware, file 3354819, and has a principal place of business at 3 Paragon Dr., #1, Montvale, NJ 07645. SourceBlue also admits that its registered agent, the Corporation Trust Company, resides at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Except as admitted, SourceBlue denies the allegations in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.     SourceBlue admits that the NICOR Complaint purports to state an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., but affirmatively denies that there is any merit to Plaintiff's action. SourceBlue further admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), but affirmatively denies there is any merit to NICOR's action. Except as admitted, SourceBlue denies the allegation in paragraph 4 of the Complaint.

5.     SourceBlue admits that this court has personal jurisdiction over Defendant. SourceBlue further admits that it has a registered agent in this District and is a Delaware limited liability company. Except as admitted, SourceBlue denies the allegations in paragraph 5 of the Complaint.

6.     SourceBlue admits that venue is proper in this District under 28 U.S.C. § 1400(b) because SourceBlue is a Delaware limited liability company and thus resides in this District. Except as admitted, SourceBlue denies the allegations in paragraph 6 of the Complaint.

## NICOR'S '427 PATENT

7.     SourceBlue admits that on November 3, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,824,427 ("the '427 Patent"), and that the '427 Patent is entitled a "Method and System for Power Supply Control." SourceBlue further admits that what appears to be a copy of the '427 Patent is attached to the Complaint as Exhibit 1 and that Plaintiff purports to incorporate the '427 Patent into the Complaint. Except as admitted, SourceBlue denies the allegations in paragraph 6 of the Complaint.

8.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and therefore denies them.

9.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint and therefore denies them.

10.     SourceBlue admits that it markets a product called the Remote Driver Control Center ("RDCC") under its Solidian® brand, which NICOR has accused of infringing the '427 Patent. SourceBlue further admits that before the '427 Patent issued NICOR appears to have obtained confidential information concerning an early design of the Solidian® RDCC that SourceBlue considered, but never implemented ("Preliminary RDCC Product Design"). SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint and therefore denies them.

11.     Source Blue admits that on November 12, 2020, NICOR sent a letter to SourceBlue regarding its Preliminary RDCC Product Design, and in that letter NICOR

informed Defendant that the Preliminary RDCC Product Design was covered by at least one claim of the '427 Patent, but SourceBlue affirmatively denies that the Preliminary RDCC Product Design or any SourceBlue Solidian® RDCC product that has been made, used, sold, offered for sale, or imported into the U.S. is covered by any claim of the '427 Patent. SourceBlue further affirmatively denies that there is any merit to the factual and legal analysis reflected in the November 12, 2020, letter. SourceBlue further admits that a true and correct copy of NICOR's letter to SourceBlue is attached as Exhibit 2 to the Complaint. Except as admitted, SourceBlue denies the allegations in paragraph 11 of the Complaint.

## <u>COUNT 1</u>

### (Infringement of U.S. Patent No. 10,824,427)

12.      SourceBlue incorporates by reference its answers to the averments of paragraphs 1 through 11 as if fully set forth herein.

13.      SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and therefore denies them.

14.      SourceBlue admits that it has had actual knowledge of the '427 Patent since the date it received the November 12, 2020, regarding the '427 Patent. Except as admitted, SourceBlue denies the allegations in paragraph 14 of the Complaint.

15.      Denied.

16.      Denied.

17.      Denied.

18.      Denied.

19.    SourceBlue admits that NICOR has not licensed SourceBlue to practice the '427. SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint and therefore denies them. SourceBlue further affirmatively alleges that the

20.    Denied.

21.    Denied.

22.    Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

SourceBlue states that Plaintiff's prayer for relief does not require a response. To the extent that this section may be deemed to allege any facts or any factual or legal entitlements to the relief requested, SourceBlue denies that Plaintiff is entitled to any relief whatsoever as prayed or otherwise.

SourceBlue submits that the headings in Plaintiff's Complaint are not substantive pleadings to which any response is required, but to the extent any response is required, they are denied. SourceBlue further hereby denies the allegations in the Complaint not expressly admitted above.

## AFFIRMATIVE DEFENSES

SourceBlue asserts the following affirmative defenses without prejudice to its position that it does not have the burden of proof to establish these defenses to the extent that the burden on the issue rests with Plaintiff as a matter of law. The factual basis supporting the affirmative defenses is further described in Paragraphs 1 through 76 of SoureBlue's counterclaims below, which are incorporated by reference to each of the following affirmative defenses. SourceBlue

hereby reserves its right to amend its Answer and Affirmative Defenses as additional information

becomes available and additional defenses become apparent.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement of the '427 Patent)

SourceBlue does not infringe and has not infringed any valid and enforceable claim of the

'427 Patent directly or indirectly (including contributory or by inducement), literally or by the

doctrine of equivalents, or via any other mechanism of liability. NICOR has not met its burden to

set forth a basis of infringement of any claims of the '427 Patent. Therefore, SourceBlue does not

infringe any claim of the '427 Patent at least on that basis. SourceBlue also incorporates its

defenses and counterclaims. Because of the reasons set forth in those defenses and

counterclaims, including its defenses and counterclaims of invalidity and unenforceability,

SourceBlue cannot infringe any valid, enforceable claim of the '427 Patent. Furthermore,

SourceBlue has not infringed and currently does not infringe, either directly or indirectly, any

valid, enforceable, and properly construed claim of the '427 Patent, either literally or under the

doctrine of equivalents or in any manner, because the Accused Product do not include at least

one limitation of the asserted claims.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity of the '427 Patent)

The asserted claims of the '427 Patent are invalid and/or unenforceable for failure to

satisfy the requirements for patentability and/or otherwise comply with one or more provisions

set forth in Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101,

102, 103, 112, 115 and/or 116, and the rules, regulations and laws pertaining thereto.

## FOURTH AFFIRMATIVE DEFENSE
### (Patent Marking and Notice)

Upon information and belief, Plaintiff's claims are limited, in whole or in part, by failure

to comply with the marking and notice requirements of 35 U.S.C. § 287.

If, *arguendo*, (a) the '427 Patent is valid and enforceable, and (b) Defendant has infringed

one or more claims of the '427 Patent, then Plaintiff's damages, if any, are limited to those

calculated from the commencement of this lawsuit because, upon information and belief,

Plaintiff failed to properly mark its relevant products as required by 35 U.S.C. § 287, or to

otherwise give adequate and/or proper notice to SourceBlue of infringement of the '427 Patent

until after commencement of this lawsuit.

## FIFTH AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

Although SourceBlue denies that Plaintiff is entitled to any relief in this action, Plaintiff's

claims for injunctive relief are barred because, among other things, any alleged injury to Plaintiff

is not immediate or irreparable, and Plaintiff has an adequate remedy at law. Moreover, the

public interest and balance of hardships weigh against an injunction under the circumstances of

this case.

## SIXTH AFFIRMATIVE DEFENSE
### (Patent and Trademark Misuse)

Plaintiff's claims are barred, in whole or in part, by the doctrine of patent misuse.

Plaintiff's patent claims are barred for patent misuse because Plaintiff has abused and is

continuing to abuse the exclusive right granted to Plaintiff with the grant of the '427 Patent by

knowingly attempting to enforce the '427 Patent by taking an objectively unreasonable interpretation of the scope of the '427 Patent in an intentional attempt to improperly extend the scope of the '427 Patent well beyond its legitimate scope. Plaintiff is also knowingly attempting to enforce an invalid patent that Plaintiff knows it obtained by improper means, including by using SourceBlue's confidential information to target SourceBlue's product during prosecution and misrepresenting to the Examiner during prosecution that the claims applicant sought were supported by written description when they were not. Plaintiff's acts are all done in an improper attempt to suppress legitimate competition in the connector market and constitute patent misuse.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

Defendant is not willfully infringing, and has not willfully infringed, either literally or under the doctrine of equivalents, any valid claim of the '427 Patent, whether directly, indirectly, contributorily or by inducement.

## EIGTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel / Prosecution Disclaimer / Ensnarement)

Plaintiff is barred by the doctrine of prosecution history estoppel, prosecution disclaimer, and/or ensnarement from contending that any claim of the '427 Patent covers any product manufactured, used, sold or offered for sale by SourceBlue, in any manner inconsistent with arguments made by the patent applicant or assignee in prosecuting the patent, with respect to any subject matter surrendered during prosecution of the patent, or in such a manner that would ensnare the prior art. For example, Plaintiff is barred from recapturing claim scope surrendered during prosecution of the '427 Patent and from asserting claim scope that would ensnare prior art products, systems and methods. Further, by reason of admissions, arguments and/or amendments

made by or on behalf of the applicant during the prosecution of the application that resulted in

the issuance of the '427 Patent, Plaintiff is estopped, in whole or in part, from construing the

asserted claims in a manner that falls within the surrendered claim scope.

## NINTH AFFIRMATIVE DEFENSE
### (Action Including An Invalid Patent Claim)

Plaintiff's prayer for costs is barred, in whole or in part, by Plaintiff's failure to disclaim

any invalid claims under 35 U.S.C. § 288. The '427 Patent includes one or more claims that are

invalid. Plaintiff is thus precluded from recovering costs for Defendants' alleged infringement, if

any, of the '427 Patent because Plaintiff failed to enter a disclaimer of the invalid claims at the

USPTO before the commencement of the present suit as required by 35 U.S.C. § 288.

## TENTH AFFIRMATIVE DEFENSE
### (No Exceptional Case)

Plaintiff cannot prove that this is an exceptional case justifying an award of exemplary

damages, treble damages, increased profits and/or attorney fees and costs against Defendant,

under 35 U.S.C. § 285.

## DEFENDANT'S COUNTERCLAIMS FOR DECLARATORY RELIEF

SourceBlue hereby asserts the following counterclaims against Plaintiff Nicor:

## NATURE OF ACTION

1.      This case concerns NICOR's allegations that SourceBlue's Remote Driver

Control Center ("RDCC") product infringed United States Patent No. 10,824,427 ("the '427

Patent") in the Complaint in this action and NICOR's improper attempt to capture market share

by asserting a patent that is invalid, not infringed, and/or unenforceable.

2.      SourceBlue's counterclaims seek, *inter alia,* a declaratory judgment that (a)
SourceBlue did not and does not infringe, either directly or indirectly, the '427 Patent; and (b)
the claims of the '427 are invalid and unenforceable for failure to comply with the requirements
for patentability set forth in Title 35 of the United States Code, including without limitation, 35
U.S.C. §§ 101, 102, 103, 112, and/or 116. SourceBlue's counterclaims are necessary to resolve
the controversy regarding Defendant NICOR's claims of infringement directed to SourceBlue's
Solidian® RDCC product.

3.      SourceBlue also brings affirmative counterclaims for (a) unfair competition
pursuant to California Business & Professions Code §17200, *et seq.* and the common law; (b)
tortious interference with prospective and/or contractual economic relations; and (c) slander of
title/trade libel.

## THE PARTIES

4.      Defendant and Counterclaimant SourceBlue, LLC f/k/a Turner Logistics, LLC
("SourceBlue") is a limited liability company organized and existing under the laws of the State
of Delaware, with a principal place of business at 3 Paragon, #1, Montvale, NJ 07645.

5.      On information and belief, Plaintiff and Counter-Defendant NICOR is a
corporation organized and existing under the laws of the State of New Mexico, with a principal
place of business at 2200 Midtown Place NE, Suite A, Albuquerque, NM 87107.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States of America, 35
U.S.C. §§ 1 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court
has subject matter jurisdiction over SourceBlue's patent related claims pursuant to 28 U.S.C. §§

1331, 1338(a), 2201, and 2202 based on the existence of an actual controversy between SourceBlue, on the one hand, and NICOR, on the other hand, for claims under the patent laws. In particular, there is an active, substantial case or controversy between SourceBlue and NICOR having adverse legal interests regarding whether SourceBlue, and its customers, infringe any claims of the '427 Patent, and whether such patent is valid, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The existence of this controversy is demonstrated by, for example, NICOR's filing of the Complaint in this action which identifies SourceBlue's Solidian® RDCC products as the infringing instrumentalities in the complaint and the infringement charts attached to the complaint.

7.      This Court also has supplemental jurisdiction over Infinilux's State law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the patent claims within the Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over NICOR because NICOR invoked the jurisdiction of this court by filing this action and availing itself to the rights and benefits of Delaware law and/or courts, and on information and belief, conducts business in and maintains substantial contacts with the State of Delaware. .

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391.

## **BACKGROUND**

10.      SourceBlue sales and markets LED lighting systems under the Solidian® brand. SourceBlue presently markets the Solidian® branded lighting systems for use in datacenters around the country, including datacenters that Facebook is building. A typical datacenter

requires over two hundred (200) SourceBlue Solidian® RDCC units that NICOR has accused of infringing its '427 Patent in addition to approximately 3,400 LED light fixtures. As a result, significant potential revenue is at stake in connection with a contract award for a lighting system at each datacenter.

11.    In the third quarter of 2020, Facebook authorized Turner Construction Company to award a contract to SourceBlue for the purchase of its Solidian® lighting systems for a Facebook datacenter, referenced herein as NAO5 and NAO6, to be built in Albany, Ohio.

12.    NICOR competed with SourceBlue for Facebook's business with respect to the NAO5 and NAO6 datacenters. Indeed, Facebook had originally specified the NICOR lighting system for NAO5 and NAO6, but subsequently Facebook chose the Solidian® lighting system over the NICOR lighting system for NAO5 and NAO6.

13.    Due to the cost, performance, and ease of installation of the Solidian® lighting system, SourceBlue is informed and believes, that Facebook was intending to add the Solidian® lighting system into its master specification for datacenters in April of 2021. This would mean that the Solidian® lighting system would be approved to be installed in future Facebook datacenters as long as the Solidian® lighting system remained on the master specification. On information and belief, this would mean that the Solidian® lighting system would be approved to be installed in approximately twelve to fourteen new datacenters per year.

14.    On information and belief, the NICOR lighting systems are less desirable for a number of factors including cost to purchase and installation cost. Apparently unable to fairly compete with the Solidian® lighting system, as explained more fully below, NICOR resorted to falsely accusing the Solidian® RDCC product of infringing the '427 Patent. Moreover, NICOR communicated false statements relating to the validity and infringement of the '427 Patent to

Facebook and others in order to prevent the addition of the Solidian® lighting system to the
datacenter master specification.

15.    In the Complaint in this action, NICOR claims to be the owner of all right, title,
and interest in the '427 Patent. Further, NICOR claims to possess the exclusive right and
standing to prosecute patent infringement actions involving the '427 Patent.

16.    The '427 Patent is entitled "Method and System for Power Supply Control." The
'427 Patent was filed October 24, 2018, and issued November 3, 2020. .

17.    The '427 Patent claims priority to Provisional Application No. 62/576,877, filed
on October 25, 2017, entitled "LUMINAIRE POWER BANK," Provisional Application No.
62/668,642, filed on May 8, 2018, entitled "METHOD AND SYSTEM FOR POWER SUPPLY
CONTROL," and Provisional Application No. 62/764,678, filed on August 15, 2018, entitled
"METHOD AND SYSTEM FOR POWER SUPPLY CONTROL." On information and belief,
the '427 Patent and each of the provisional applications to which it claims priority were
prosecuted by NICOR's counsel located in the Central District of California.

18.    The '427 Patent discloses two embodiments of power supply and control systems.
The first embodiment is depicted in FIG. 4, while the second embodiment is depicted in FIG. 9.
The first embodiment is directed to a power supply and control system with a case housing
power supplies and a terminal block, whereby the terminal block is configured to accept mains
AC power input and distribute DC power at constant current, and whereby the power supply
and control system provides control signals and DC power at constant current via a cable. The
second embodiment is directed to a power supply and control system with normal and
emergency terminal blocks for receiving AC mains, and separate terminal blocks for
distributing DC power from the power supplies.

19.     Notably, as shown below, FIG. 4 of the '427 Patent depicts a power supply and control system 400 with a case 405 housing independent power supplies 415-416 and a terminal block 435. The terminal block 435 is configured to accept mains power 452 from an external source, along with data input via cable 451. The terminal block 435 directs the mains power 452 to each of the power supplies 415-416. The DC power from the power supplies 415-416 are directed back to the terminal block 435. The DC power output and return lines from terminal block 435 are provided on wires 440 and 441, which are the power and return lines, respectively.

20.     The rail mounted components of the FIG. 4 include an I/O system 450 that is configured to receive signals from, for example, sensors, or other external devices and interface that input with control systems. The I/O system 450 receives external input from an ethernet line (*e.g.*, input cable 451) connected to a controlling computer system such as computer system 100.



Legend

100 Computer system
400 Power supply and control system
405 Case
410 Rail
415 Power Supply
416 Power Supply
420 Fan
421 Fan
425 Filter
426 Filter
430 Control header
431 Control header
435 Terminal Block

440 Wire
441 Wire
442 Wire
443 Wire
445 Output
450 I/O System
451 Input cable
452 Mains power input
455 Control system
460 I/O block
465 Power supply
470 Switch
475 Surge protector

FIG. 4

21.    The system 400 shown in FIG. 4 further includes a single four wire cable 455 output from the metal case. Two wires 442 and 443 in the cable are the outputs from a DALI control system 455 and the other two wires 440 and 441 are power and return lines, respectively, from the summed power supplies. Thus, according to the '427 Patent, the output 445 from the system 400 comprises control signals and DC power that can be distributed to external applications (*e.g.*, a series of lights). According to the '427 Patent, this single cable design along with the large power supply provided from the terminal block, allows the system

400 to serve power, and control signals, to multiple downline applications, reducing the spider web of cabling necessary for power and control of systems endemic in prior art systems.

22.    Meanwhile, as shown below, FIG. 9 of the '427 Patent depicts another embodiment of a lighting control system 900 that includes a case 905 with a barrier 985 separating emergency and normal power sides. Separate AC mains power 946 and 951 are routed through terminal block 945 and terminal block 950, respectively. Terminal block 945 is configured to handle normal AC power, and terminal block 950 is configured to handle emergency AC power. Terminal block 945 is connected to the components on PCB 920 and controlled by switch 910 via driver 960, which serves as the application driver for normal power operations. Likewise, driver 955 serves as the driver for emergency power operations. Terminal block 965 serves as the terminal block for the low voltage emergency circuit, while terminal block 970 serves as a terminal block for the low voltage normal power circuit. According to the '427 Patent, a controller 980, such as a Wattstopper LMRC-112 series room controller is connected to the terminal block 970. An alternating power supply, with multiple outputs per relay is provided for control on one or more applications 990, such as a dimmable LEDs and associated drivers. The system 900 is thus described as providing control and power to a remote power over ethernet (PoE) application. Specifically, the '427 patent indicates ethernet cable 995 can be provided from case 905 to one or more applications 990 such that system 900 provides individual power and programmable drive current for as many as 14 applications.



Legend

900 Control system
905 Barrier
910 Jacks
915 Voltage switch
920 PCB
925 Jack for cold aisle normal power
930 Jack for hot aisle normal power
935 Control unit
940 Network Bridge
945 Terminal block
946 Mains power

950 Terminal block
951 Mains power
955 Driver
960 Driver
965 Terminal block
970 Terminal block
975 Surge protector
980 Controller
985 Barrier
990 Remote application
995 Ethernet cable

FIG. 9

23.    The '427 Patent's sole independent claim recites:

1.  A system comprising:

a distributed DC power output system comprising:

a case with a normal power side and an emergency power side;

a barrier separating the normal power side and the emergency power
side;

a normal mains AC power input configured to accept 120-277 volts AC;

a second mains AC power input configured to accept 120-277 volts AC;

at least one normal power supply driver configured on the normal power side;

at least one emergency power supply driver configured on the emergency power side;

a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current;

a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current;

a controller connected to the terminal block wherein the controller controls at least one application; and

a cable provided from said distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one application via the cable.

24.    None of the embodiments disclosed in the '427 Patent disclose the system claimed in claim 1. For example, FIG. 4 does not disclose a normal power side and an emergency power side with a normal mains AC power input and a second mains AC power input. Further, FIG. 9 does not disclose a terminal block configured to accept mains AC power input and distribute normal DC power at constant current (on both the normal and emergency side). Neither the figures nor the disclosure of the '427 Patent provide written description support to claim 1. Thus, independent claim 1, including dependent claims, are invalid for lack of adequate written description under 35 U.S.C. § 112.

25.    On November 12, 2020, NICOR sent a letter to SourceBlue. *See* Exhibit 2 of Complaint. The November 12, 2020, letter falsely accuses the Solidian® RDCC product of

infringing the '427 Patent. The November 12, 2020, letter also falsely accused the Solidian

RDCC® unit of copying NICOR's patent and products. The November 12, 2020, letter included

a claim chart that purported to map SourceBlue's out-of-date, non-public draft Installation

Instructions for the Solidian® RDCC product to pending claims 21, 22, and 24-27. *See*

Complaint, Exhibit 2 at Exhibits B and C. On information and belief, NICOR obtained these

non-public Installation Instruction surreptitiously, and under its direction, NICOR's California

counsel sought to draft pending patent claims to cover SourceBlue's Solidian® RDCC product.

However, in doing so, as noted above, NICOR intentionally departed from what was disclosed

in the written description of the '427 Patent. On information and belief, NICOR and its counsel

engaged in this conduct in an effort to allow NICOR to compete unfairly withSourceBlue, to

allow NICOR to make a false, but "colorable" charge of infringement against SourceBlue's

Solidian® RDCC product, and to sway Facebook from employing the SourceBlue Solidian®

RDCC product in its future datacenter construction projects and/or to slow the adoption of

SourceBlue's Solidian® RDCC unit in such datacenters.

26.    In the November 12, 2020, letter, NICOR advanced a false, objectively

unreasonable and untenable position that the limitation of claim 1 requiring a "terminal block

configured on the normal power side to accept normal mains AC power input and distribute

normal DC power at constant current," is met by RDCC's "normal power distribution block"

that is configured to only accept AC power input and does not distribute normal DC power. *See*

Complaint, Exhibit 2 at Exhibit C, pp. 4, 6. NICOR, however, provided no explanation as to how

the "normal power distribution block" meets the claim limitation.

27.    In the November 12, 2020, letter, NICOR also advanced a false, objectively

unreasonable and untenable position that the limitation of claim 1 requiring a "second terminal

block configured on the emergency power side to accept second mains AC power input and to

distribute emergency DC power at constant current," is met by the RDCC's emergency terminal

block that is configured to only accept AC power input and does not distribute normal DC

power. *See* Complaint, Exhibit 2 at Exhibit C, pp. 4, 7.

28.     In addition to sending the November 12, 2020, letter to SourceBlue, NICOR and

its California counsel also sent the letter to Patrick Hall of Facebook, Kurt Freitas of Cupertino

Electric, Inc. and Michael Mar and Amanda Carter of Environmental Systems Design, Inc. On

information and belief, Facebook is headquartered in Menlo Park, California and Cupertino

Electric is headquartered in San Jose, California. On information and belief, Environmental

Systems Design is a company headquartered in Chicago, Illinois.

29.     On November 24, 2020, SourceBlue sent a letter to NICOR in response to

NICOR's November 12, 2020, letter, and in such letter informed NICOR that its allegations

were without merit because, among other things, NICOR's purported infringement analysis was

based on an out-of-date non-public, draft document that was superseded and never

corresponded to any commercial product. *See* Exhibit A. The November 24 letter also informed

NICOR that the RDCC product does not have a "terminal block configured … to accept mains

AC power input and distribute … DC power at constant current" on either the normal or

emergency side as required by all of the claims of the '427 Patent.

30.     On March 11, 2021, NICOR's California counsel sent a letter to SourceBlue in

response to SourceBlue's November 24, 2020, letter, whereby NICOR demanded that

SourceBlue provide product samples or product specifications to NICOR, and changed its

position -- now asserting that the "terminal block" claim element found correspondence in two

separate distribution blocks of the Solidian® RDCC product. *See* Complaint, Exhibit 3 at p. 6.

31.     NICOR again provided no explanation as to how the "Normal Power Distribution

Block" and the "Normal Power LED Light Fixture Distribution Block" identified in the letter

meets the claim limitation of "a terminal block configured on the normal power side to accept

normal mains AC power input and distribute normal DC power at constant current". *See*

Complaint, Exhibit D at p. 6.

32.     It can be seen from the diagrams at pages 5 and 6 of Exhibit 3 to the complaint that

the illustrated system does not include "a terminal block" that accepts AC power input, directs the

AC power to a power supply driver, and accepts the DC power output from the power supply

driver for distribution. To the contrary, the illustrated system has a terminal block that accepts

mains AC power and distributes AC power and a separate terminal block that accepts and

distributes DC power from the power supplies.

33.     In the March 11, 2021, letter, NICOR made a similar false and specious allegation

related to two separate distribution blocks on the emergency power side of the SourceBlue

Solidian® RDCC product as satisfying the "second terminal block" limitation of claim 1, namely

the Emergency Power Distribution Block and the Emergency Power Supply Distribution Block of

the SourceBlue Solidian® RDCC product. *See* Complaint, Exhibit 3 at p. 8.

34.     On March 25, 2021, and again on April 21, 2021, SourceBlue explained why

NICOR's shifting assertions are baseless. Indeed, the April 21, 2021, letter further explained in

detail why the RDCC product does not infringe literally or under the doctrine of equivalents.

SourceBlue also explained that it is unreasonable to expect SourceBlue to provide product

samples or confidential information to its competitors based upon mere unsubstantiated

allegations. SourceBlue explained that this was particularly the case here in view of NICOR's

lack of specificity and shifting analysis. In the April 21, 2021, letter, SourceBlue also informed

NICOR it was unreasonable to expect SourceBlue to provide further information concerning the

RDCC product because NICOR was still prosecuting continuing patent applications that

claimed the benefit of the '427 Patent.

35.    Despite being put on notice of its frivolous claims, and its reliance on out-of-date,

non-public draft Installation Instructions that were superseded and did not correspond to any

commercial product, NICOR brought the present infringement action against SourceBlue.

36.    In the complaint, NICOR again advanced its objectively unreasonable and

untenable position that the limitation of claim 1 requiring a "terminal block configured on the

normal power side to accept normal mains AC power input and distribute normal DC power at

constant current," as was depicted in FIG. 4 of the '427 Patent by a single terminal block, is met

by two separate terminal blocks on the normal power side. *See* Complaint, Exhibit 3 at p. 6.

37.    Further, NICOR advanced an objectively unreasonable and untenable position

that the limitation of claim 1 requiring "a second terminal block configured on the emergency

power side to accept second mains AC power input and to distribute emergency DC power at

constant current," is met by two separate terminal blocks on the emergency power side. *See*

Complaint, Exhibit 3  at p. 7.

38.    It is axiomatic that claims may not be construed so as to read an express limitation

out of the claims. As such, the claims of the '427 Patent cannot be construed to read out express

limitation that requires a terminal block to be configured to accept mains AC power input and to

distribute emergency DC power at constant current.

39.    For these and other reasons, SourceBlue is informed and believes, and on that

basis alleges, that NICOR is misusing the '427 Patent.

40.     SourceBlue is informed and believes, and on that basis alleges, that NICOR's

allegations are without substantial basis thereby making this case exceptional under 35 U.S.C. §

285 and entitling SourceBlue to an award of its attorneys' fees incurred in connection with

defending and prosecuting this action due to NICOR's knowledge that the '427 Patent is non-

infringed, invalid and/or unenforceable against SourceBlue. Consequently, there is an actual

case or controversy over the '427 Patent.

41.     There exists a clear and serious threat to SourceBlue's business so long as

NICOR's false allegations remain unresolved. SourceBlue therefore needs and seeks resolution

of the issues asserted herein to lift this cloud over its business. SourceBlue is entitled to

declaratory relief in order to avoid wrongful injury to the reputation of its goods and services in

the marketplace and other direct injury suffered from NICOR's false allegations.

## COUNT I - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,824,427

42.     SourceBlue repeats and realleges each and every allegation contained in the above

paragraphs as if fully set forth herein.

43.     NICOR has alleged and continues to allege that the making, using, offering to

sell, selling, and/or importing ofSourceBlue's Solidian® RDCC product infringed one or more

claims of the '427 Patent.

44.     The making, using, offering to sell, selling, and/or importing of SourceBlue's

Solidian® RDCC product did not and does not infringe the '427 Patent, directly or indirectly,

literally or under the doctrine of equivalents. For example, the '427 Patent includes one

independent claim and six dependent claims. Without limitation, claim 1 of the '427 Patent is

directed to a system that requires "a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current." The system of claim 1 also requires "a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current." Furthermore, the system of claim 1 further requires that the system "provide control and the DC power at constant current … via the cable."

45.    SourceBlue's Solidian® RDCC product did not and does not include any of these limitations in independent claim 1, and thus, did not and does not infringe the '427 Patent, directly or indirectly, literally or under the doctrine of equivalents. Moreover, it is well-settled that dependent claims cannot be found to be infringed unless the claims from which they depend have been found to be infringed. At least for these reasons, no claim of the '427 Patent is infringed. The allegations in this paragraph are exemplary and do not preclude SourceBlue from contending that the claims of the '427 Patent are not and have not been infringed for additional reasons.

46.    An actual, present and justiciable controversy exists between SourceBlue and NICOR concerning whether the making, using, offering to sell, selling, and/or importing of SoureBlue's Solidian® RDCC product infringes the '427 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '427 Patent.

47.    SourceBlue seeks a judgement that the making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product does not now and did not previously infringe the '427 Patent.

## COUNT II - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,824,427

48.     SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

49.     NICOR has alleged and continues to allege that the making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product infringed one or more claims of the '427 Patent.

50.     The '427 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

51.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

52.     A judicial declaration is necessary to determine the parties' respective rights regarding the '427 Patent.

53.     SourceBlue seeks a judgement that the claims of the '427 Patent are invalid.

## COUNT III - UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 AND THE COMMON LAW

54.     SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

55.     By the acts alleged, NICOR has engaged in unfair competition within the meaning of California Business & Professions Code § 17200, *et seq.* and the common law.

56.     Infinilux is informed and believes, and on that basis alleges, that NICOR has engaged in unfair business practices, including, but not limited to: (a) the prosecution of patent claims directed at SourceBlue's Solidian® RDCC unit using confidential proprietary information of SourceBlue; (b) attempting to force SourceBlue's customers to terminate their business relations with SourceBlue and/or substitute NICOR's products for SourceBlue's products for sale, distribution and/or installation; (c) falsely informing SourceBlue's customer, among others, that the '427 Patent is valid and infringed by the SourceBlue Solidian® RDCC unit in an effort to sway SourceBlue's customer from using the Solidian® RDCC products; (d) forcing SourceBlue and its supplier to divert time, money and resources to defend against baseless allegations of patent infringement; (e) interfering with business relations of SourceBlue and/or its customers; (f) engaging in acts of patent misuse in an effort to improperly reduce or eliminate competition in the market place and interfere with the established business relationship between SourceBlue and its supplier and/or customers. Such conduct is unlawful, unfair, and/or fraudulent, and therefore, violates California Business & Professions Code §17200, *et seq.* and the common law.

57.     The acts of NICOR violate and/or threaten to violate the spirit of patent laws, and otherwise significantly threaten and/or harm competition. By the unlawful acts, practices, and conduct alleged above, NICOR has injured competition as well as consumers in California and elsewhere.

58.     By reason of NICOR's actions, SourceBlue also has suffered, and will continue to suffer, irreparable harm, for which SourceBlue has no adequate remedy at law. Unless and until NICOR's conduct is enjoined, SourceBlue will continue to engage in the acts alleged herein.

59.     SourceBlue is entitled to relief, including an injunction and/or restitution.

## COUNT IV - TORTIOUS INTERFERENCE WITH PROSPECTIVE AND/OR

## CONTRACTUAL ECONOMIC RELATIONS

60.    SourceBlue repeats and realleges each and every allegation contained in the above
paragraphs as if fully set forth herein.

61.    Through its unlawful conduct, NICOR tortuously interfered with
contracts/prospective relationships between SourceBlue and its supplier and/or  customers.

62.    NICOR knew, or should have known, of the existence of the business dealings
and relationship between SourceBlue and its supplier and/or potential customers, including
Facebook and Cupertino Electric.

63.    NICOR tortuously interfered with such economic business relationships by,
among other things, (a) prosecuting patent claims directed at SourceBlue's RDCC unit using
confidential proprietary information of SourceBlue; (b) by attempting to force SourceBlue's
customers to terminate their business relations with SourceBlue and/or substitute SourceBlue's
products with NICOR's for sale, distribution and/or installation; (c) falsely informing
SourceBlue's customer, among others, that the '427 patent was valid and infringed by the
SourceBlue Solidian® RDCC unit in an effort to sway SourceBlue's customer from using the
Solidian® RDCC products; (d) interfering with business relations of SourceBlue and/or its
customers; (e) engaging in acts of patent misuse in an effort to improperly reduce or eliminate
competition in the marketplace and interfere with the established business relationship between
SourceBlue and its supplier and/or customers; and (f) forcing SourceBlue to divert time, money
and resources to defend against baseless allegations of patent infringement.

64.     SourceBlue is informed and believes, and on that basis alleges, that NICOR's acts
of tortious interference were performed, at a minimum, with gross negligence.

65.     NICOR's false and misleading statements to Facebook disrupted SourceBlue's
relationship with its supplier and Facebook. On information and belief, Facebook did not add the
Solidian® lighting system to its master specification for data centers in April 2021 due to
NICOR's false allegations of the validity of '427 Patent and its false allegations that the
SourceBlue Solidian® RDCC units infringe the '427 Patent. Subsequent to NICOR's false
allegations, Facebook has refrained from using the Solidian® lighting system, including the
accused SourceBlue Solidian® RDCC units, for at least one datacenter for which Facebook had
previously stated such lighting system would be used.

66.     SourceBlue has suffered injury and compensable damages, in an amount to be
proven at trial, but in excess of $75,000, as a result of NICOR's interference with SourceBlue's
contractual relations and prospective contractual relations without justification.

67.     By its actions described above, NICOR has tortuously interfered with
SourceBlue's contractual relations and prospective contractual relations without justification and
has proximately caused and is proximately causing substantial, continuous, and irreparable harm
toSourceBlue, which if not enjoined by this court will continue to SourceBlue's detriment.

68.     SourceBlue seeks a judicial declaration that, at least in light of Nicor's tortious
interference, this is an exceptional case and that SourceBlue is entitled to an award of its
reasonable attorneys' fees.

69.     Further, in engaging in the above-described conduct, NICOR's conduct was
oppressive and malicious, and was made with willful and conscious disregard of the rights

ofSourceBlue. By reason thereof, SourceBlue is entitled to recover punitive and exemplary damages against NICOR in an amount to be proven at trial.

## COUNT V – SLANDER OF TITLE/TRADE LIBEL

70.     SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

71.     NICOR informed SourceBlue and its customer, among others, that the '427 patent was infringed by the Solidian® RDCC unit in an effort to (i) sway SourceBlue's customer from using the Solidian® RDCC products, and (ii) cast doubt on SourceBlue's ownership of, and right to use, the intellectual property embodied within the Solidian® RDCC product. NICOR's statements regarding infringement were false. SourceBlue's Solidian® RDCC product did not and does not infringe any valid claim of the '427 Patent, and thus, SourceBlue does in fact own and/or has the right to use, the intellectual property embodied in the SourceBlue RDCC product.

72.     NICOR knew that it acted with reckless disregard of the truth or falsity as to whether the '427 Patent was valid and/or infringed by the Solidian® RDCC product.

73.     NICOR knew and/or should have recognized that SourceBlue and its customer, among others, might rely on NICOR's statements and that such reliance would cause SourceBlue financial loss.

74.     SourceBlue did in fact suffer immediate and direct financial harm because SourceBlue's customer acted in reliance on NICOR's statement and/or by causing SourceBlue to incur legal expenses necessary to remove the doubt cast by NICOR's statements and to clear title to SourceBlue's Solidian® RDCC product.

75.     NICOR's conduct described above was a substantial factor in causing financial harm to SourceBlue in an amount to be proven at trial, but in a sum not less than $75,000.

76.     Further, NICOR's above-described conduct was oppressive and malicious, and made with willful and conscious disregard of the rights ofSourceBlue. By reason thereof, SourceBlue is entitled to recover punitive and exemplary damages against NICOR in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

SourceBlue respectfully requests that the Court:

A.     Enter judgement that SourceBlue and its Solidian® RDCC product does not infringe any claim of the '427 Patent;

B.     Enter judgment that each claim of the '427 Patent is invalid;

C.     Enter judgment that NICOR has engaged in unfair business practices under the Cal. Bus. Prof. Code §17,200 and the common law;

D.     Enter judgment that SourceBlue is entitled to injunctive relief and restitution for NICOR's unfair competition;

E.     Declare that this case is exceptional under 35 U.S.C. § 285 and award SourceBlue its attorney's fees, costs, and expenses incurred in this action;

F.     Award SourceBlue all compensatory, punitive and other damages recoverable for the tortious interference claim against NICOR;

G.     Award SourceBlue all of its costs and disbursements incurred in defense of NICOR's patent infringement claims;

H.      Award SourceBlue any and all other relief to which SourceBlue may show itself

to be entitled; and

I.      Award SourceBlue such other relief as the Court deem just, equitable, and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant SourceBlue

demands a trial by jury of all issues and claims which are so triable.

DATED:  July 6, 2021                    /s/ Kenneth L. Dorsney
                                        Kenneth L. Dorsney (#3726)
                                        Cortlan S. Hitch (#6720)
                                        MORRIS JAMES LLP
                                        500 Delaware Ave., Ste 1500
                                        Wilmington, DE 19801-1494
                                        (302) 888-6800
                                        kdorsney@morrisjames.com
                                        chitch@morrisjames.com

                                        OF COUNSEL:
                                        David A. Randall (CA SBN 156722)
                                        Ehab M. Samuel (CA SBN 228296)
                                        HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C.
                                        10900 Wilshire Blvd., Suite 300
                                        Los Angeles, CA 90024
                                        (310) 887-1333
                                        dave@hdmnlaw.com
                                        esamuel@hdmnlaw.com

                                        *Attorneys for Defendant*
                                        SOURCEBLUE, LLC f/k/a
                                        TURNER LOGISTICS, LLC

# EXHIBIT A

# ᴅ DAY PITNEY LLP

BOSTON    CONNECTICUT    FLORIDA    NEW JERSEY    NEW YORK    WASHINGTON, DC

**ANDREW M. RIDDLES**
Attorney at Law

605 Third Avenue, 31st Floor
New York, NY 10158-1803
T: (212) 297-5855 F: (203) 202-3896
ariddles@daypitney.com

November 24, 2020

**VIA EMAIL** - lena.bacani@lozaip.com
**ORIGINAL VIA UPS**

Lena N. Bacani, Esq.
Loza & Loza, LLP
305 N. Second Avenue, #127
Upland, CA 91786

Re:    NICOR, Inc. – Turner Logistics LLC.

Dear Ms. Bacani:

This firm represents Turner Logistics LLC ("Turner") in its intellectual property matters. Your letter to Turner dated November 12, 2020 ("the Letter") has been passed along to us for response.

The Letter states that the Solidian® RDCC Series Remote Driver Control Center ("the "RDCC Product") may infringe US Patent No. 10,824,427 entitled Method and System for Power Supply ("the '427 Patent"), which issued on November 3, 2020. We have reviewed the assertions set forth in the Letter and find those assertions to be without merit.

The purported infringement analysis presented in the Letter is based upon an out-of-date, non-public document entitled Installation Instructions, RDCC Series Remote Driver Control Center, Revision 10, December 2, 2019 ("the Document"). The Document, however, was never publicly distributed, remained in draft form, and by its nature was never intended to describe the structure and function of an RDCC Product with technical and legal precision. It was merely draft installation instructions. Further, the Document was superseded and never corresponded to any commercial Solidian® product.

In addition to relying on inaccurate and unreliable information, the purported infringement analysis is at best superficial and uninforming. No construction is provided of any claim term, the cornerstone of any infringement analysis. What is presented in Exhibit C is merely an attempt to locate similar words in '427 Patent claims and in the Document. And even this attempt is incomplete. For example, claim 1 of the '427 Patent requires "a controller

107009929.1

**DAY PITNEY** LLP

Lena N. Bacani, Esq.
November 24, 2020
Page 2

connected to the terminal block wherein the controller controls at least one application." The
purported infringement analysis, appearing at page 8 of 16 of Exhibit C of the Letter, includes a
legend "Controller" with an indicator line. There is no explanation, however, of how the
controller box indicated corresponds to the controller described and claimed in the '427 Patent
and performs the function specifically required by the claim language. There are numerous other
instances in the purported infringement analysis where explicit claim limitations are either not
addressed or completely ignored.

Lack of reliance upon technically accurate and reliable information, and the development
of a superficial and uninforming analysis, is a clear indication that no reasonable infringement
investigation was conducted prior to sending the Letter. Apparently, there was no inspection or
testing of actual hardware. There was no review of detailed technical information carrying any
indicia of reliability. Indeed, if a reasonable infringement investigation had been undertaken, it
would have shown, *inter alia*, that the RDCC Product does not have a "terminal block configured
… to accept mains AC power input and distribute … DC power at constant current" on either the
normal or emergency side as required by all of the claims of the '427 Patent.

The baseless and incomplete assertions of infringement in the Letter raise questions as to
why the Letter was sent. Your client, NICOR, Inc., is aware of the contractual relationship
between Facebook, Inc. and Turner. This is confirmed by the copying of Facebook, Inc. on the
Letter. The sending of such a letter can only be interpreted as an attempt to interfere with this
relationship thereby causing harm to Turner. If your client chooses to engage in such seemingly
reckless, if not intentional, behavior, it does so at its own peril.

In view of the foregoing, we deem the assertions in the Letter fully addressed and
consider this matter closed.

Yours very truly,

Andrew M. Riddles

AMR/TIO

cc:    Kurt Freitas, Cupertino Electric, Inc. (via email)
       Michael Mar and Amanda Carter, Environmental Systems Design, Inc. (via email)
       Patrick Hall, Facebook, Inc. (via email)
       Mark Boyle, Turner Construction Company (via email)
       Ben Kaplan, Turner Construction Company (via email)

107009929.1