David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab M. Samuel (SBN 228296)
esamuel@hdmnlaw.com
Paul G. Novak (SBN 261388)
paul@hdmnlaw.com
HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

*Attorneys for SourceBlue, LLC and
Infinilux Corporation*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NICOR, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC f/k/a TURNER LOGISTICS, LLC,<br><br>   Defendant.<br><br>Consolidated for all purposes with:<br><br>INFINILUX CORPORATION<br><br>   Plaintiff,<br><br>v.<br><br>NICOR, INC.<br><br>   Defendant. | Case No.  2:21-cv-05876-AB(PDx)<br><br>**SOURCEBLUE'S ANSWER AND AFFIRMATIVE DEFENSES TO NICOR'S FIRST AMENDED COMPLAINT, AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant SourceBlue, LLC f/k/a Turner Logistics, LLC ("Defendant" or "SourceBlue"), by and through undersigned counsel, hereby submits this answer and affirmative defenses to the First Amended Complaint ("FAC") filed by Plaintiff NICOR, Inc. ("Plaintiff" or "NICOR") in the above-captioned action. Any allegation in the FAC not specifically admitted below is denied.

## ANSWER TO THE COMPLAINT

## NATURE OF THE ACTION

1.     SourceBlue admits that the NICOR FAC purports to state an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., but affirmatively denies that there is any merit to Plaintiff's action. SourceBlue further admits that NICOR asserts that SourceBlue has infringed U.S. Patent No. 10,824,427 ("the '427 Patent") directly and indirectly, but affirmatively denies there is any merit to NICOR's assertion. SourceBlue also affirmatively asserts that SourceBlue does not infringe, and has not, infringed, directly or indirectly and that the '427 Patent is invalid. Except as admitted, SourceBlue denies the allegations in paragraph 1 of the FAC.

## THE PARTIES

2.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the FAC and therefore denies them.

3.     SourceBlue admits that it is a limited liability company organized and existing under the laws of the State of Delaware, file 3354819, and has a principal

1   place of business at 3 Paragon Dr., #1, Montvale, NJ 07645. Except as admitted,

2   SourceBlue denies the allegations in paragraph 3 of the FAC.

3                                **JURISDICTION AND VENUE**

4          4.     SourceBlue admits that the NICOR FAC purports to state an action

5   for patent infringement arising under the Patent Laws of the United States, 35

6   U.S.C. §§ 1, et seq., but affirmatively denies that there is any merit to Plaintiff's

7   action. SourceBlue further admits that this Court has subject matter jurisdiction

8   over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), but affirmatively

9   denies there is any merit to NICOR's action. SourceBlue admits that the Court has

10  supplemental jurisdiction over NICOR's state law claims, but affirmatively denies

11  that there is any merit to Plaintiff's state law claims. Except as admitted,

12  SourceBlue denies the allegation in paragraph 4 of the FAC.

13         5.     SourceBlue admits that this court has personal jurisdiction over

14  Defendant. Except as admitted, SourceBlue denies the allegations in paragraph 5

15  of the FAC.

16         6.     SourceBlue admits that venue is proper in this District because

17  SourceBlue agreed to transfer the Delaware action to this Court. Except as

18  admitted, SourceBlue denies the allegations in paragraph 6 of the FAC.

19                               **FACTUAL ALLEGATIONS**

20         7.     SourceBlue admits that on November 3, 2020, the United States

21  Patent and Trademark Office issued U.S. Patent No. 10,824,427 ("the '427

22  Patent"), and that the '427 Patent is entitled a "Method and System for Power

23  Supply Control." Infinilux further admits that the '427 Patent claims priority to

24

SOURCEBLUE ANSWER TO FAC
AND COUNTERCLAIMS
Case No. 2:21-cv-05876-AB-PD

Provisional Application No. 62/576,877, filed on October 25, 2017, Provisional Application No. 62/668,642, filed on May 8, 2018, and Provisional Application No. 62/764,678, filed on August 15, 2018, but affirmatively denies that any of the claims of the '427 Patent are entitled to the benefit of the filing date of these provisional applications. SourceBlue further admits that what appears to be a copy of the '427 Patent is attached to the FAC as Exhibit A and that Plaintiff purports to incorporate the '427 Patent into the FAC. Except as admitted, SourceBlue denies the allegations in paragraph 7 of the FAC.

8.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the FAC and therefore denies them.

9.     SourceBlue affirmatively denies that NICOR ever provided patented Lighting Control Units ("LCUs") to Facebook's datacenter NAO1 and NAO2, because, at a minimum, on information and belief, the construction of Facebook's datacenters NAO1 and NAO2 were completed before the '427 Patent issued as a patent. SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the FAC and therefore denies them.

10.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 10 of the FAC and therefore denies them. In the second sentence of paragraph 10 of the FAC, SourceBlue denies that NICOR did not supply products for the NAO3

datacenter, and SourceBlue admits that its Remote Driver Control Center ("RDCC") marketed under the Solidian® brand was installed in NAO3.

11.     SourceBlue denies each and every remaining allegation of paragraph 10 of the FAC. SourceBlue further affirmatively alleges that datacenter NAO4 has not been built. SourceBlue also affirmatively alleges that the Solidian® RDCC units installed into the NAO3 datacenter do not infringe the '427 Patent, including because they do not satisfy each and every limitation of the claims of the '427 Patent and because the Solidian® RDCC units installed into the NAO3 datacenter were installed prior to the '427 Patent issued.

12.     SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the FAC and therefore denies them. SourceBlue further affirmatively asserts that it was never informed of any quality issues associated with its Solidian® products at NAO3/4.

13.     SourceBlue admits that in the third quarter of 2020, Facebook authorized Turner Construction Company ("Turner Construction") to award the lighting contract for the NAO5 and NAO6 datacenters to Turner Logistics, LLC, which later changed its name to SourceBlue, LLC ("SourceBlue"). SourceBlue further admits that it was and is a subsidiary of Turner Construction. Except as admitted, SourceBlue denies each and every allegation of paragraph 11 of the FAC. Further, SourceBlue affirmatively alleges on information and belief that Facebook never "chose NICOR's lighting system for NAO5/6," nor did Facebook or Turner Construction award a lighting contract to NICOR for either the NAO5 or NAO6 datacenter.

14.     SourceBlue admits that it acquired the Accused Product from Infinilux and that Infinilux is contracted with SouceBlue to provide all of the equipment that makes up the Solidian® lighting system to SourceBlue. Except as admitted, SourceBlue denies each and every allegation of paragraph 13 of the FAC.

15.     Denied.

16.     Denied. SourceBlue further affirmatively alleges on information and belief that NICOR was never awarded the lighting contract for the Facebook datacenters NAO5 and NAO6. SourceBlue also affirmatively alleges that the Solidian® RDCC units it has sold to SourceBlue and intends to sell to SourceBlue in the future do not infringe the '427 Patent and that the '427 Patent had not issued at the time SourceBlue submitted a bid for the NAO5 and NAO6 datacenters.

17.     Denied. SourceBlue further affirmatively alleges on information and belief that NICOR was never awarded the lighting contracts for Facebook datacenters NAO3, NAO4, NAO5 or NAO6. SourceBlue further affirmatively alleges that the Solidian® RDCC units it has sold and intends to sell in the future do not infringe the '427 Patent and that the '427 Patent had not issued at the time SourceBlue submitted its bids for the NAO3 and NAO4 datacenters and the NAO5 and NAO6 datacenters. SourceBlue further affirmatively alleges that the '427 Patent is invalid.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     SourceBlue admits that on November 12, 2020, NICOR sent a letter to Turner Logistics, LLC, which subsequently changed its name to SourceBlue, regarding a confidential early design of the Solidian® RDCC that Infinilux and SourceBlue considered, but never implemented ("Preliminary RDCC Product Design"). SourceBlue further admits that in that letter NICOR asserted that the Preliminary RDCC Product Design infringed the '427 Patent, but SourceBlue affirmatively denies that the Preliminary RDCC Product Design or any Solidian® RDCC product that has been made, used, sold, offered for sale, or imported into the U.S. is covered by any claim of the '427 Patent. SourceBlue further affirmatively denies that there is any merit to the factual and legal analysis reflected in the November 12, 2020, letter. SourceBlue further admits that a redacted version of the November 12, 2020, letter was filed at Dkt. No. 10 (Exhibit 2). Based on information and belief, SourceBlue further admits that an unredacted version of the November 12, 2020, letter, which is referenced as Exhibit 2 in SourceBlue's original Complaint, was filed under seal at Dkt. No. 7. Except as admitted, SourceBlue denies the allegations in paragraph 21 of the FAC.

23.     SourceBlue admits that in SourceBlue's subsequent correspondence, including SourceBlue's April 30, 2021, letter, SouceBlue informed NICOR that the Solidian® RDCC Installation Instructions on which NICOR based its infringement allegations:

"was never publicly distributed, remained in draft form, and by its nature was never intended to describe the structure and function of an RDCC Product with technical and legal precision. It was merely draft installation instructions. Further, the Document was superseded and never corresponded to any commercial Solidian® product."

SourceBlue further admits that SourceBlue refused to provide NICOR's outside attorneys with documents reflecting the actual design of the Solidian® RDCC or a sample of the Solidian RDCC because NICIOR's outside attorneys had (i) failed to properly show how the Preliminary RDCC Product Design infringed the '427 Patent under a proper claim construction, and (ii) refused to respond to SourceBlue's explanations as to why the Preliminary RDCC Product Design did not infringe.  In addition, NICOR's outside counsel was prosecuting patent applications related to the '427 Patent and, on information and belief, had already employed non-public, proprietary information of SourceBlue during the prosecution of the '427 Patent. Except as admitted, SourceBlue denies the allegations in paragraph 22 of the FAC.

24. Admitted.

25. SourceBlue admits that prior to the filing of this action, SourceBlue never mentioned that it obtained the Accused Products from Infinilux in any of its correspondence to NICOR. SourceBlue is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24 of the FAC and therefore denies them.

1    26.    Denied.

2    27.    Denied.

3    28.    Denied.

## COUNT 1

### (Infringement of U.S. Patent No. 10,824,427)

6    29.    SourceBlue incorporates by reference its answers to the averments of

7    paragraphs 1 through 27 as if fully set forth herein.

8    30.    SourceBlue is without knowledge or information sufficient to form a

9    belief as to the truth of the allegations contained in paragraph 29 of the FAC and

10   therefore denies them.

11   31.    SourceBlue admits that it has had actual knowledge of the '427 Patent

12   since the date it received the November 12, 2020, letter regarding the '427 Patent.

13   Except as admitted, SourceBlue denies the allegations in paragraph 14 of the

14   FAC.

15   32.    Denied.

16   33.    Denied.

17   34.    Denied.

18   35.    Denied.

19   36.    SourceBlue admits that NICOR has not licensed SourceBlue to

20   practice the '427 Patent. SourceBlue is without knowledge or information

21   sufficient to form a belief as to the truth of the remaining allegations contained in

22   paragraph 19 of the FAC and therefore denies them.

23   37.    Denied.

1      38.    Denied.

2      39.    Denied.

3                        **COUNT II**

4      **(Intentional Interference with Prospective Economic Advantage)**

5      40.    SourceBlue incorporates by reference its answers to the averments of

6      paragraphs 1 through 38 as if fully set forth herein.

7      41.    Denied.

8      42.    Denied.

9      43.    Denied.

10     44.    Denied.

11     45.    Denied.

12     46.    Denied.

13     47.    Denied.

14     48.    Denied.

15     49.    Denied.

16     50.    Denied.

17     51.    Denied.

18                        **COUNT III**

19                  **(Unfair Competition)**

20     52.    SourceBlue incorporates by reference its answers to the averments of

21     paragraphs 1 through 50 as if fully set forth herein.

22     53.    Denied.

23     54.    Denied.

24

55.    Denied.

56.    Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

SourceBlue states that Plaintiff's prayer for relief does not require a response. To the extent that this section may be deemed to allege any facts or any factual or legal entitlements to the relief requested, SourceBlue denies that Plaintiff is entitled to any relief whatsoever as prayed or otherwise.

SourceBlue submits that the headings in Plaintiff's FAC are not substantive pleadings to which any response is required, but to the extent any response is required, they are denied. SourceBlue further hereby denies the allegations in the FAC not expressly admitted above.

## AFFIRMATIVE DEFENSES

SourceBlue asserts the following affirmative defenses without prejudice to its position that it does not have the burden of proof to establish these defenses to the extent that the burden on the issue rests with Plaintiff as a matter of law. The factual basis supporting the affirmative defenses is further described in Paragraphs 23 through 98 of SoureBlue's counterclaims below, which are incorporated by reference to each of the following affirmative defenses. SourceBlue hereby reserves its right to amend its Answer and Affirmative Defenses as additional information becomes available and additional defenses become apparent.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's FAC fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Non-Infringement of the '427 Patent)

SourceBlue does not infringe and has not infringed any valid and enforceable claim of the '427 Patent directly or indirectly (including contributory or by inducement), literally or by the doctrine of equivalents, or via any other mechanism of liability. NICOR has not met its burden to set forth a basis of infringement of any claims of the '427 Patent. Therefore, SourceBlue does not infringe any claim of the '427 Patent at least on that basis. SourceBlue also incorporates its defenses and counterclaims. Because of the reasons set forth in those defenses and counterclaims, including its defenses and counterclaims of invalidity and unenforceability, SourceBlue cannot infringe any valid, enforceable claim of the '427 Patent. Furthermore, SourceBlue has not infringed and currently does not infringe, either directly or indirectly, any valid, enforceable, and properly construed claim of the '427 Patent, either literally or under the doctrine of equivalents or in any manner, because the Accused Product do not include at least one limitation of the asserted claims.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity of the '427 Patent)

The asserted claims of the '427 Patent are invalid and/or unenforceable for failure to satisfy the requirements for patentability and/or otherwise comply with one or more provisions set forth in Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 115 and/or 116, and the rules, regulations and laws pertaining thereto.

## FOURTH AFFIRMATIVE DEFENSE

### (Patent Marking and Notice)

Upon information and belief, Plaintiff's claims are limited, in whole or in part, by failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

If, *arguendo*, (a) the '427 Patent is valid and enforceable, and (b) Defendant has infringed one or more claims of the '427 Patent, then Plaintiff's damages, if any, are limited to those calculated from the commencement of this lawsuit because, upon information and belief, Plaintiff failed to properly mark its relevant products as required by 35 U.S.C. § 287, or to otherwise give adequate and/or proper notice to SourceBlue of infringement of the '427 Patent until after commencement of this lawsuit.

## FIFTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

Although SourceBlue denies that Plaintiff is entitled to any relief in this action, Plaintiff's claims for injunctive relief are barred because, among other things, any alleged injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law. Moreover, the public interest and balance of hardships weigh against an injunction under the circumstances of this case.

## SIXTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

Plaintiff's claims are barred, in whole or in part, by the doctrine of patent misuse. Plaintiff's patent claims are barred for patent misuse because Plaintiff has

abused and is continuing to abuse the exclusive right granted to Plaintiff with the grant of the '427 Patent by knowingly attempting to enforce the '427 Patent by taking an objectively unreasonable interpretation of the scope of the '427 Patent in an intentional attempt to improperly extend the scope of the '427 Patent well beyond its legitimate scope. Plaintiff is also knowingly attempting to enforce an invalid patent that Plaintiff knows it obtained by improper means, including by using SourceBlue's confidential information to target SourceBlue's product during prosecution and misrepresenting to the Examiner during prosecution that the claims applicant sought were supported by written description when they were not. Plaintiff's acts are all done in an improper attempt to suppress legitimate competition in the connector market and constitute patent misuse.

**SEVENTH AFFIRMATIVE DEFENSE**

**(No Willful Infringement)**

Defendant is not willfully infringing, and has not willfully infringed, either literally or under the doctrine of equivalents, any valid claim of the '427 Patent, whether directly, indirectly, contributorily or by inducement.

**EIGTH AFFIRMATIVE DEFENSE**

**(Prosecution History Estoppel / Prosecution Disclaimer / Ensnarement)**

Plaintiff is barred by the doctrine of prosecution history estoppel, prosecution disclaimer, and/or ensnarement from contending that any claim of the '427 Patent covers any product manufactured, used, sold or offered for sale by SourceBlue, in any manner inconsistent with arguments made by the patent applicant or assignee in prosecuting the patent, with respect to any subject matter

surrendered during prosecution of the patent, or in such a manner that would ensnare the prior art. For example, Plaintiff is barred from recapturing claim scope surrendered during prosecution of the '427 Patent and from asserting claim scope that would ensnare prior art products, systems and methods. Further, by reason of admissions, arguments and/or amendments made by or on behalf of the applicant during the prosecution of the application that resulted in the issuance of the '427 Patent, Plaintiff is estopped, in whole or in part, from construing the asserted claims in a manner that falls within the surrendered claim scope.

## NINTH AFFIRMATIVE DEFENSE

### (Action Including An Invalid Patent Claim)

Plaintiff's prayer for costs is barred, in whole or in part, by Plaintiff's failure to disclaim any invalid claims under 35 U.S.C. § 288. The '427 Patent includes one or more claims that are invalid. Plaintiff is thus precluded from recovering costs for Defendants' alleged infringement, if any, of the '427 Patent because Plaintiff failed to enter a disclaimer of the invalid claims at the USPTO before the commencement of the present suit as required by 35 U.S.C. § 288.

## TENTH AFFIRMATIVE DEFENSE

### (No Exceptional Case)

Plaintiff cannot prove that this is an exceptional case justifying an award of exemplary damages, treble damages, increased profits and/or attorney fees and costs against Defendant, under 35 U.S.C. § 285.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## FOURTH AFFIRMATIVE DEFENSE

## (Unclean Hands)

NICOR's claims are barred, in whole or in part, by the doctrine of unclean hands.  NICOR has unclean hands with respect to its claims because NICOR used the confidential information of Infinilux during the prosecution of the '427 Patent to draft claims targeting Infinilux's product.  Moreover, NICOR intentionally communicated false and misleading statements relating to the validity and infringement of the '427 Patent to Facebook and others in order to prevent the addition of the Solidian®/Infinilux lighting system to Facebook's datacenter master specification.

## DEFENDANT'S COUNTERCLAIMS FOR DECLARATORY RELIEF

SourceBlue hereby asserts the following counterclaims against Plaintiff Nicor:

## NATURE OF ACTION

57.     This case concerns NICOR's allegations that SourceBlue's Remote Driver Control Center ("RDCC") product infringed United States Patent No. 10,824,427 ("the '427 Patent") and NICOR's improper attempt to capture market share by asserting a patent that is invalid, not infringed, and/or unenforceable.

58.     SourceBlue's counterclaims seek, *inter alia,* a declaratory judgment that (a) SourceBlue did not and does not infringe, either directly or indirectly, the '427 Patent; and (b) the claims of the '427 are invalid and unenforceable for failure to comply with the requirements for patentability set forth in Title 35 of the United

-15-

States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. SourceBlue's counterclaims are necessary to resolve the controversy regarding Defendant NICOR's claims of infringement directed to SourceBlue's Solidian® RDCC product.

59.     SourceBlue also brings affirmative counterclaims for (a) unfair competition pursuant to California Business & Professions Code §17200, *et seq.* and the common law; (b) tortious interference with prospective and/or contractual economic relations; and (c) slander of title/trade libel.

## THE PARTIES

60.     Defendant and Counterclaimant SourceBlue, LLC f/k/a Turner Logistics, LLC ("SourceBlue") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 3 Paragon, #1, Montvale, NJ 07645.

61.     On information and belief, Plaintiff and Counter-Defendant NICOR is a corporation organized and existing under the laws of the State of New Mexico, with a principal place of business at 2200 Midtown Place NE, Suite A, Albuquerque, NM 87107.

## JURISDICTION AND VENUE

62.     This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 1 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over SourceBlue's patent related claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 based on

the existence of an actual controversy between SourceBlue, on the one hand, and NICOR, on the other hand, for claims under the patent laws. In particular, there is an active, substantial case or controversy between SourceBlue and NICOR having adverse legal interests regarding whether SourceBlue, and its customers, infringe any claims of the '427 Patent, and whether such patent is valid, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The existence of this controversy is demonstrated by, for example, NICOR's filing of this action which identifies SourceBlue's Solidian® RDCC products as the infringing instrumentalities in the complaint and the infringement charts attached to the complaint.

63.     This Court also has supplemental jurisdiction over SourceBlue's State law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the patent claims within the Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

64.     This Court has personal jurisdiction over NICOR because NICOR invoked the jurisdiction of this court by filing this action and availing itself to the rights and benefits of Delaware law and/or courts, and on information and belief, conducts business in and maintains substantial contacts with the State of Delaware.

65.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391.

## **BACKGROUND**

66.     SourceBlue sales and markets LED lighting systems under the Solidian® brand. SourceBlue presently markets the Solidian® branded lighting

systems for use in datacenters around the country, including datacenters that Facebook is building. A typical datacenter requires over two hundred (200) SourceBlue Solidian® RDCC units that NICOR has accused of infringing its '427 Patent in addition to approximately 3,400 LED light fixtures. As a result, significant potential revenue is at stake in connection with a contract award for a lighting system at each datacenter.

67.    In the third quarter of 2020, Facebook authorized Turner Construction Company to award a contract to SourceBlue for the purchase of its Solidian® lighting systems for a Facebook datacenter, referenced herein as NAO5 and NAO6, to be built in Albany, Ohio.

68.    NICOR competed with SourceBlue for Facebook's business with respect to the NAO5 and NAO6 datacenters. Indeed, Facebook had originally specified the NICOR lighting system for NAO5 and NAO6, but subsequently Facebook chose the Solidian® lighting system over the NICOR lighting system for NAO5 and NAO6.

69.    Due to the cost, performance, and ease of installation of the Solidian® lighting system, SourceBlue is informed and believes, that Facebook was intending to add the Solidian® lighting system into its master specification for datacenters in April of 2021. This would mean that the Solidian® lighting system would be approved to be installed in future Facebook datacenters as long as the Solidian® lighting system remained on the master specification. On information and belief, this would mean that the Solidian® lighting system would be approved to be installed in approximately twelve to fourteen new datacenters per year.

70.     On information and belief, the NICOR lighting systems are less desirable for a number of factors including cost to purchase and installation cost. Apparently unable to fairly compete with the Solidian® lighting system, as explained more fully below, NICOR resorted to falsely accusing the Solidian® RDCC product of infringing the '427 Patent. Moreover, NICOR communicated false statements relating to the validity and infringement of the '427 Patent to Facebook and others in order to prevent the addition of the Solidian® lighting system to the datacenter master specification.

71.     In the Complaint in this action, NICOR claims to be the owner of all right, title, and interest in the '427 Patent. Further, NICOR claims to possess the exclusive right and standing to prosecute patent infringement actions involving the '427 Patent.

72.     The '427 Patent is entitled "Method and System for Power Supply Control." The '427 Patent was filed October 24, 2018, and issued November 3, 2020.

73.     The '427 Patent claims priority to Provisional Application No. 62/576,877, filed on October 25, 2017, entitled "LUMINAIRE POWER BANK," Provisional Application No. 62/668,642, filed on May 8, 2018, entitled "METHOD AND SYSTEM FOR POWER SUPPLY CONTROL," and Provisional Application No. 62/764,678, filed on August 15, 2018, entitled "METHOD AND SYSTEM FOR POWER SUPPLY CONTROL." On information and belief, the '427 Patent and each of the provisional applications to which it claims priority were prosecuted by NICOR's counsel located in the Central District of California.

74.     The '427 Patent discloses two embodiments of power supply and control systems. The first embodiment is depicted in FIG. 4, while the second embodiment is depicted in FIG. 9. The first embodiment is directed to a power supply and control system with a case housing power supplies and a terminal block, whereby the terminal block is configured to accept mains AC power input and distribute DC power at constant current, and whereby the power supply and control system provides control signals and DC power at constant current via a cable. The second embodiment is directed to a power supply and control system with normal and emergency terminal blocks for receiving AC mains, and separate terminal blocks for distributing DC power from the power supplies.

75.     Notably, as shown below, FIG. 4 of the '427 Patent depicts a power supply and control system 400 with a case 405 housing independent power supplies 415-416 and a terminal block 435. The terminal block 435 is configured to accept mains power 452 from an external source, along with data input via cable 451. The terminal block 435 directs the mains power 452 to each of the power supplies 415-416. The DC power from the power supplies 415-416 are directed back to the terminal block 435. The DC power output and return lines from terminal block 435 are provided on wires 440 and 441, which are the power and return lines, respectively.

76.     The rail mounted components of the FIG. 4 include an I/O system 450 that is configured to receive signals from, for example, sensors, or other external devices and interface that input with control systems. The I/O system 450 receives

external input from an ethernet line (*e.g.*, input cable 451) connected to a

controlling computer system such as computer system 100.



Legend
100 Computer system
400 Power supply and control system
405 Case
410 Rail
415 Power Supply
416 Power Supply
420 Fan
421 Fan
425 Filter
426 Filter
430 Control header
431 Control header
435 Terminal Block

440 Wire
441 Wire
442 Wire
443 Wire
445 Output
450 I/O System
451 Input cable
452 Mains power input
455 Control system
460 I/O block
465 Power supply
470 Switch
475 Surge protector

FIG. 4

77.     The system 400 shown in FIG. 4 further includes a single four wire

cable 455 output from the metal case. Two wires 442 and 443 in the cable are the

outputs from a DALI control system 455 and the other two wires 440 and 441 are

power and return lines, respectively, from the summed power supplies. Thus,

according to the '427 Patent, the output 445 from the system 400 comprises control signals and DC power that can be distributed to external applications (*e.g.*, a series of lights). According to the '427 Patent, this single cable design along with the large power supply provided from the terminal block, allows the system 400 to serve power, and control signals, to multiple downline applications, reducing the spider web of cabling necessary for power and control of systems endemic in prior art systems.

78.     Meanwhile, as shown below, FIG. 9 of the '427 Patent depicts another embodiment of a lighting control system 900 that includes a case 905 with a barrier 985 separating emergency and normal power sides. Separate AC mains power 946 and 951 are routed through terminal block 945 and terminal block 950, respectively. Terminal block 945 is configured to handle normal AC power, and terminal block 950 is configured to handle emergency AC power. Terminal block 945 is connected to the components on PCB 920 and controlled by switch 910 via driver 960, which serves as the application driver for normal power operations. Likewise, driver 955 serves as the driver for emergency power operations. Terminal block 965 serves as the terminal block for the low voltage emergency circuit, while terminal block 970 serves as a terminal block for the low voltage normal power circuit. According to the '427 Patent, a controller 980, such as a Wattstopper LMRC-112 series room controller is connected to the terminal block 970. An alternating power supply, with multiple outputs per relay is provided for control on one or more applications 990, such as a dimmable LEDs and associated drivers. The system 900 is thus described as providing control and power to a

1    remote power over ethernet (PoE) application. Specifically, the '427 patent

2    indicates ethernet cable 995 can be provided from case 905 to one or more

3    applications 990 such that system 900 provides individual power and

4    programmable drive current for as many as 14 applications.



Legend

900 Control system
905 Barrier
910 Jacks
915 Voltage switch
920 PCB
925 Jack for cold aisle normal power
930 Jack for hot aisle normal power
935 Control unit
940 Network Bridge
945 Terminal block
946 Mains power

950 Terminal block
951 Mains power
955 Driver
960 Driver
965 Terminal block
970 Terminal block
975 Surge protector
980 Controller
985 Barrier
990 Remote application
995 Ethernet cable

FIG. 9

79.    The '427 Patent's sole independent claim recites:

     1. A system comprising:

a distributed DC power output system comprising:

a case with a normal power side and an emergency power side;

a barrier separating the normal power side and the emergency power side;

a normal mains AC power input configured to accept 120-277 volts AC;

a second mains AC power input configured to accept 120-277 volts AC;

at least one normal power supply driver configured on the normal power side;

at least one emergency power supply driver configured on the emergency power side;

a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current;

a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current;

a controller connected to the terminal block wherein the controller controls at least one application; and

a cable provided from said distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one application via the cable.

80.    None of the embodiments disclosed in the '427 Patent disclose the system claimed in claim 1. For example, FIG. 4 does not disclose a normal power side and an emergency power side with a normal mains AC power input and a second mains AC power input. Further, FIG. 9 does not disclose a terminal block

configured to accept mains AC power input and distribute normal DC power at constant current (on both the normal and emergency side). Neither the figures nor the disclosure of the '427 Patent provide written description support to claim 1. Thus, independent claim 1, including dependent claims, are invalid for lack of adequate written description under 35 U.S.C. § 112.

81.     On November 12, 2020, NICOR sent a letter to SourceBlue. *See* Exhibit 2 of Complaint. The November 12, 2020, letter falsely accuses the Solidian® RDCC product of infringing the '427 Patent. The November 12, 2020, letter also falsely accused the Solidian RDCC® unit of copying NICOR's patent and products. The November 12, 2020, letter included a claim chart that purported to map SourceBlue's out-of-date, non-public draft Installation Instructions for the Solidian® RDCC product to pending claims 21, 22, and 24-27. *See* Complaint, Exhibit 2 at Exhibits B and C. On information and belief, NICOR obtained these non-public Installation Instruction surreptitiously, and under its direction, NICOR's California counsel sought to draft pending patent claims to cover SourceBlue's Solidian® RDCC product. However, in doing so, as noted above, NICOR intentionally departed from what was disclosed in the written description of the '427 Patent. On information and belief, NICOR and its counsel engaged in this conduct in an effort to allow NICOR to compete unfairly with SourceBlue, to allow NICOR to make a false, but "colorable" charge of infringement against SourceBlue's Solidian® RDCC product, and to sway Facebook from employing the SourceBlue Solidian® RDCC product in its future datacenter construction

projects and/or to slow the adoption of SourceBlue's Solidian® RDCC unit in such datacenters.

82.     In the November 12, 2020, letter, NICOR advanced a false, objectively unreasonable and untenable position that the limitation of claim 1 requiring a "terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current," is met by RDCC's "normal power distribution block" that is configured to only accept AC power input and does not distribute normal DC power. *See* Complaint, Exhibit 2 at Exhibit C, pp. 4, 6. NICOR, however, provided no explanation as to how the "normal power distribution block" meets the claim limitation.

83.     In the November 12, 2020, letter, NICOR also advanced a false, objectively unreasonable and untenable position that the limitation of claim 1 requiring a "second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current," is met by the RDCC's emergency terminal block that is configured to only accept AC power input and does not distribute normal DC power. *See* Complaint, Exhibit 2 at Exhibit C, pp. 4, 7.

84.     In addition to sending the November 12, 2020, letter to SourceBlue, NICOR and its California counsel also sent the letter to Patrick Hall of Facebook, Kurt Freitas of Cupertino Electric, Inc. and Michael Mar and Amanda Carter of Environmental Systems Design, Inc. On information and belief, Facebook is headquartered in Menlo Park, California and Cupertino Electric is headquartered in

San Jose, California. On information and belief, Environmental Systems Design is a company headquartered in Chicago, Illinois.

85.     On November 24, 2020, SourceBlue sent a letter to NICOR in response to NICOR's November 12, 2020, letter, and in such letter informed NICOR that its allegations were without merit because, among other things, NICOR's purported infringement analysis was based on an out-of-date non-public, draft document that was superseded and never corresponded to any commercial product. *See* Exhibit A. The November 24 letter also informed NICOR that the RDCC product does not have a "terminal block configured … to accept mains AC power input and distribute … DC power at constant current" on either the normal or emergency side as required by all of the claims of the '427 Patent.

86.     On March 11, 2021, NICOR's California counsel sent a letter to SourceBlue in response to SourceBlue's November 24, 2020, letter, whereby NICOR demanded that SourceBlue provide product samples or product specifications to NICOR, and changed its position -- now asserting that the "terminal block" claim element found correspondence in two separate distribution blocks of the Solidian® RDCC product. *See* Complaint, Exhibit 3 at p. 6.

87.     NICOR again provided no explanation as to how the "Normal Power Distribution Block" and the "Normal Power LED Light Fixture Distribution Block" identified in the letter meets the claim limitation of "a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current". *See* Complaint, Exhibit 3 at p. 6.

88.     It can be seen from the diagrams at pages 5 and 6 of Exhibit 3 to the complaint that the illustrated system does not include "a terminal block" that accepts AC power input, directs the AC power to a power supply driver, and accepts the DC power output from the power supply driver for distribution. To the contrary, the illustrated system has a terminal block that accepts mains AC power and distributes AC power and a <u>separate</u> terminal block that accepts and distributes DC power from the power supplies.

89.     In the March 11, 2021, letter, NICOR made a similar false and specious allegation related to two separate distribution blocks on the emergency power side of the SourceBlue Solidian® RDCC product as satisfying the "second terminal block" limitation of claim 1, namely the Emergency Power Distribution Block and the Emergency Power Supply Distribution Block of the SourceBlue Solidian® RDCC product. *See* Complaint, Exhibit 3 at p. 8.

90.     On March 25, 2021, and again on April 21, 2021, SourceBlue explained why NICOR's shifting assertions are baseless. Indeed, the April 21, 2021, letter further explained in detail why the RDCC product does not infringe literally or under the doctrine of equivalents. SourceBlue also explained that it is unreasonable to expect SourceBlue to provide product samples or confidential information to its competitors based upon mere unsubstantiated allegations. SourceBlue explained that this was particularly the case here in view of NICOR's lack of specificity and shifting analysis. In the April 21, 2021, letter, SourceBlue also informed NICOR it was unreasonable to expect SourceBlue to provide further

information concerning the RDCC product because NICOR was still prosecuting continuing patent applications that claimed the benefit of the '427 Patent.

91.     Despite being put on notice of its frivolous claims, and its reliance on out-of-date, non-public draft Installation Instructions that were superseded and did not correspond to any commercial product, NICOR brought the present infringement action against SourceBlue.

92.     In the complaint, NICOR again advanced its objectively unreasonable and untenable position that the limitation of claim 1 requiring a "terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current," as was depicted in FIG. 4 of the '427 Patent by a single terminal block, is met by two separate terminal blocks on the normal power side. *See* Complaint, Exhibit 3 at p. 6.

93.     Further, NICOR advanced an objectively unreasonable and untenable position that the limitation of claim 1 requiring "a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current," is met by two separate terminal blocks on the emergency power side. *See* Complaint, Exhibit 3 at p. 7.

94.     It is axiomatic that claims may not be construed so as to read an express limitation out of the claims. As such, the claims of the '427 Patent cannot be construed to read out the express limitation that requires a terminal block to be configured to accept mains AC power input and to distribute emergency DC power at constant current.

95.     For these and other reasons, SourceBlue is informed and believes, and on that basis alleges, that NICOR is misusing the '427 Patent.

96.     SourceBlue is informed and believes, and on that basis alleges, that NICOR's allegations are without substantial basis thereby making this case exceptional under 35 U.S.C. § 285 and entitling SourceBlue to an award of its attorneys' fees incurred in connection with defending and prosecuting this action due to NICOR's knowledge that the '427 Patent is non-infringed, invalid and/or unenforceable against SourceBlue. Consequently, there is an actual case or controversy over the '427 Patent.

97.     There exists a clear and serious threat to SourceBlue's business so long as NICOR's false allegations remain unresolved. SourceBlue therefore needs and seeks resolution of the issues asserted herein to lift this cloud over its business. SourceBlue is entitled to declaratory relief in order to avoid wrongful injury to the reputation of its goods and services in the marketplace and other direct injury suffered from NICOR's false allegations.

## COUNT I - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,824,427

98.     SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

99.     NICOR has alleged and continues to allege that the making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product infringed one or more claims of the '427 Patent.

100.   The making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product did not and does not infringe the '427 Patent, directly or indirectly, literally or under the doctrine of equivalents. For example, the '427 Patent includes one independent claim and six dependent claims. Without limitation, claim 1 of the '427 Patent is directed to a system that requires "a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current." The system of claim 1 also requires "a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current." Furthermore, the system of claim 1 further requires that the system "provide control and the DC power at constant current … via the cable."

101.   SourceBlue's Solidian® RDCC product did not and does not include any of these limitations in independent claim 1, and thus, did not and does not infringe the '427 Patent, directly or indirectly, literally or under the doctrine of equivalents. Moreover, it is well-settled that dependent claims cannot be found to be infringed unless the claims from which they depend have been found to be infringed. At least for these reasons, no claim of the '427 Patent is infringed. The allegations in this paragraph are exemplary and do not preclude SourceBlue from contending that the claims of the '427 Patent are not and have not been infringed for additional reasons.

102.   An actual, present and justiciable controversy exists between SourceBlue and NICOR concerning whether the making, using, offering to sell,

selling, and/or importing of SoureBlue's Solidian® RDCC product infringes the '427 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '427 Patent.

103.   SourceBlue seeks a judgement that the making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product does not now and did not previously infringe the '427 Patent.

## COUNT II - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,824,427

104.   SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

105.   NICOR has alleged and continues to allege that the making, using, offering to sell, selling, and/or importing of SourceBlue's Solidian® RDCC product infringed one or more claims of the '427 Patent.

106.   The '427 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

107.   As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

108.   A judicial declaration is necessary to determine the parties' respective rights regarding the '427 Patent.

109. SourceBlue seeks a judgement that the claims of the '427 Patent are invalid.

## COUNT III - UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 AND THE COMMON LAW

110. SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

111. By the acts alleged, NICOR has engaged in unfair competition within the meaning of California Business & Professions Code § 17200, *et seq.* and the common law.

112. SourceBlue is informed and believes, and on that basis alleges, that NICOR has engaged in unfair business practices, including, but not limited to: (a) the prosecution of patent claims directed at SourceBlue's Solidian® RDCC unit using confidential proprietary information of SourceBlue; (b) attempting to force SourceBlue's customers to terminate their business relations with SourceBlue and/or substitute NICOR's products for SourceBlue's products for sale, distribution and/or installation; (c) falsely informing SourceBlue's customer, among others, that the '427 Patent is valid and infringed by the SourceBlue Solidian® RDCC unit in an effort to sway SourceBlue's customer from using the Solidian® RDCC products; (d) forcing SourceBlue and its supplier to divert time, money and resources to defend against baseless allegations of patent infringement; (e) interfering with business relations of SourceBlue and/or its customers; (f) engaging in acts of patent misuse in an effort to improperly reduce or eliminate

competition in the market place and interfere with the established business relationship between SourceBlue and its supplier and/or customers. Such conduct is unlawful, unfair, and/or fraudulent, and therefore, violates California Business & Professions Code §17200, *et seq.* and the common law.

113.   The acts of NICOR violate and/or threaten to violate the spirit of patent laws, and otherwise significantly threaten and/or harm competition. By the unlawful acts, practices, and conduct alleged above, NICOR has injured competition as well as consumers in California and elsewhere.

114.   By reason of NICOR's actions, SourceBlue also has suffered, and will continue to suffer, irreparable harm, for which SourceBlue has no adequate remedy at law. Unless and until NICOR's conduct is enjoined, SourceBlue will continue to engage in the acts alleged herein.

115.   SourceBlue is entitled to relief, including an injunction and/or restitution.

## COUNT IV - TORTIOUS INTERFERENCE WITH PROSPECTIVE AND/OR CONTRACTUAL ECONOMIC RELATIONS

116.   SourceBlue repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

117.   Through its unlawful conduct, NICOR tortuously interfered with contracts/prospective relationships between SourceBlue and its supplier and/or customers.

118.   NICOR knew, or should have known, of the existence of the business dealings and relationship between SourceBlue and its supplier and/or potential customers, including Facebook and Cupertino Electric.

119.   NICOR tortuously interfered with such economic business relationships by, among other things, (a) prosecuting patent claims directed at SourceBlue's RDCC unit using confidential proprietary information of SourceBlue; (b) by attempting to force SourceBlue's customers to terminate their business relations with SourceBlue and/or substitute SourceBlue's products with NICOR's for sale, distribution and/or installation; (c) falsely informing SourceBlue's customers, among others, that the '427 patent was valid and infringed by the SourceBlue Solidian® RDCC unit in an effort to sway SourceBlue's customer from using the Solidian® RDCC products; (d) interfering with business relations of SourceBlue and/or its customers; (e) engaging in acts of patent misuse in an effort to improperly reduce or eliminate competition in the marketplace and interfere with the established business relationship between SourceBlue and its supplier and/or customers; and (f) forcing SourceBlue to divert time, money and resources to defend against baseless allegations of patent infringement.

120.   SourceBlue is informed and believes, and on that basis alleges, that NICOR's acts of tortious interference were performed, at a minimum, with gross negligence.

121.   NICOR's false and misleading statements to Facebook disrupted SourceBlue's relationship with its supplier and Facebook. On information and

belief, Facebook did not add the Solidian® lighting system to its master specification for datacenters in April 2021 due to NICOR's false allegations of the validity of '427 Patent and its false allegations that the SourceBlue Solidian® RDCC units infringe the '427 Patent. Subsequent to NICOR's false allegations, Facebook has refrained from using the Solidian® lighting system, including the accused SourceBlue Solidian® RDCC units, for at least one datacenter for which Facebook had previously stated such lighting system would be used.

122.   SourceBlue has suffered injury and compensable damages, in an amount to be proven at trial, but in excess of $75,000, as a result of NICOR's interference with SourceBlue's contractual relations and prospective contractual relations without justification.

123.   By its actions described above, NICOR has tortuously interfered with SourceBlue's contractual relations and prospective contractual relations without justification and has proximately caused and is proximately causing substantial, continuous, and irreparable harm toSourceBlue, which if not enjoined by this court will continue to SourceBlue's detriment.

124.   SourceBlue seeks a judicial declaration that, at least in light of Nicor's tortious interference, this is an exceptional case and that SourceBlue is entitled to an award of its reasonable attorneys' fees.

125.   Further, in engaging in the above-described conduct, NICOR's conduct was oppressive and malicious, and was made with willful and conscious disregard of the rights of SourceBlue. By reason thereof, SourceBlue is entitled to

1  recover punitive and exemplary damages against NICOR in an amount to be

2  proven at trial.

4  ### <u>COUNT V – SLANDER OF TITLE/TRADE LIBEL</u>

5  126.   SourceBlue repeats and realleges each and every allegation contained

6  in the above paragraphs as if fully set forth herein.

7  127.   NICOR informed SourceBlue and its customer, among others, that the

8  '427 patent was infringed by the Solidian® RDCC unit in an effort to (i) sway

9  SourceBlue's customer from using the Solidian® RDCC products, and (ii) cast

10  doubt on SourceBlue's ownership of, and right to use, the intellectual property

11  embodied within the Solidian® RDCC product. NICOR's statements regarding

12  infringement were false. SourceBlue's Solidian® RDCC product did not and does

13  not infringe any valid claim of the '427 Patent, and thus, SourceBlue does in fact

14  own and/or has the right to use, the intellectual property embodied in the

15  SourceBlue RDCC product.

16  128.   NICOR knew that it acted with reckless disregard of the truth or

17  falsity as to whether the '427 Patent was valid and/or infringed by the Solidian®

18  RDCC product.

19  129.   NICOR knew and/or should have recognized that SourceBlue and its

20  customer, among others, might rely on NICOR's statements and that such reliance

21  would cause SourceBlue financial loss.

22  130.   SourceBlue did in fact suffer immediate and direct financial harm

23  because SourceBlue's customer acted in reliance on NICOR's statement and/or by

24

-37-

causing SourceBlue to incur legal expenses necessary to remove the doubt cast by NICOR's statements and to clear title to SourceBlue's Solidian® RDCC product.

131.   NICOR's conduct described above was a substantial factor in causing financial harm to SourceBlue in an amount to be proven at trial, but in a sum not less than $75,000.

132.   Further, NICOR's above-described conduct was oppressive and malicious, and made with willful and conscious disregard of the rights of SourceBlue. By reason thereof, SourceBlue is entitled to recover punitive and exemplary damages against NICOR in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

SourceBlue respectfully requests that the Court:

A.   Enter judgement that SourceBlue and its Solidian® RDCC product does not infringe any claim of the '427 Patent;

B.   Enter judgment that each claim of the '427 Patent is invalid;

C.   Enter judgment that NICOR has engaged in unfair business practices under the Cal. Bus. Prof. Code §17200 and the common law;

D.   Enter judgment that SourceBlue is entitled to injunctive relief and restitution for NICOR's unfair competition;

E.   Declare that this case is exceptional under 35 U.S.C. § 285 and award SourceBlue its attorney's fees, costs, and expenses incurred in this action;

F.   Award SourceBlue all compensatory, punitive and other damages recoverable for the tortious interference claim against NICOR;

G.      Award SourceBlue all of its costs and disbursements incurred in defense of NICOR's patent infringement claims;

H.      Award SourceBlue any and all other relief to which SourceBlue may show itself to be entitled; and

I.      Award SourceBlue such other relief as the Court deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant SourceBlue demands a trial by jury of all issues and claims which are so triable.

DATED:  March 15, 2022          Respectfully submitted,

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C.

By:  /s/ David A. Randall
David A. Randall (CA SBN 156722)
Ehab Samuel (SBN 228296)
Paul G. Novak (SBN 261388)

*Attorneys for Defendant and Counterclaimant*
SOURCEBLUE, LLC f/k/a TURNER LOGISTICS LLC