Lena N. Bacani (SBN 213556)
lena.bacani@lozaip.com
LOZA & LOZA, LLP
305 N. Second Ave., Ste. 127
Upland, CA 91786
Telephone: (877) 406-5164
Facsimile: (213) 394-3625

Attorneys for Plaintiff,
NICOR, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOR, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC, f/k/a TURNER LOGISTICS, LLC,<br><br>              Defendant. | Case No. 2:21-cv-05876-AB-KS<br><br>**NICOR, INC.'S OPPOSITION TO DEFENDANTS'** *EX PARTE* **APPLICATION TO (1) COMPEL, OR IN THE ALTERNATIVE, FOR LEAVE TO FILE A MOTION TO COMPEL; AND (2) AWARD MONETARY SANCTIONS PURSUANT TO FRCP 37(A)(5)**<br><br>Hon. Patricia Donahue<br>Courtroom:          580<br>Hearing Date:     Jan. 9, 2022<br>Time:                  10:00 a.m. |
| INFINILUX CORPORATION<br><br>              Plaintiff,<br><br>v.<br><br>NICOR, INC.<br><br>              Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENT</u>

<u>Page</u>

I.   INTRODUCTION ............................................................... 1

II.  BACKGROUND ................................................................. 3

III. ARGUMENT ....................................................................... 9

   A.   Defendants Have Not Demonstrated Entitlement to *Ex Parte* Relief Because They will Not Be Irreparably Prejudiced by Using the Court's Pre-Discovery Motion Procedure ................................................. 10

   B.   Defendants are Not Without Fault in Creating the Alleged Crisis ............... 11

   C.   Defendants are Not Entitled to Monetary Sanctions ..................................... 13

IV.  CONCLUSION ................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Lew v. Kona Hosp.*,
  754 F.2d 1420 (9th Cir. 1985) ........................................................................... 13

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ............................................................. 10, 11

*Taylor v. Shippers Transport Express, Inc., No. CV 13-02092,*
  *2014 WL 12561081 (C.D. Cal. Aug. 5, 2014)* ..................................................... 9

**Other Authorities**

Fed. R. Civ. P. 37(5)(C) ......................................................................................... 13

Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii) ........................................................................ 13

Fed. R. Civ. P. 30(b)(6) ..................................................................................... 4, 14

Fed. R. Civ. P.37 .................................................................................................... 13

1

**MEMORANDUM IN OPPOSITION**

2

**I.    INTRODUCTION**

3        Defendants' *Ex Parte* Application ("Application") should be denied because:

4    (1) there is no emergency or good cause justifying *ex parte* relief; (2) numerous

5    statements in Defendants' *Ex Parte* Application are false and misleading; and (3)

6    Defendants, themselves, are largely to blame for creating the alleged "crisis."

7    Monetary sanctions against NICOR are not justified as NICOR has diligently

8    worked to comply with all of its discovery obligations in good faith.  In contrast,

9    Defendants' *Ex Parte* Application abuses the discovery process and unfairly

10    harasses NICOR.  For the reasons detailed herein, NICOR respectfully requests the

11    Court deny Defendants' Application and grant NICOR its fees and costs for

12    responding to the improper demand.

13        Defendants argue that they are entitled to emergency relief because: (1)

14    NICOR has "refused to *complete* its document production or provide a date certain

15    as to when its production will be complete;" (2) NICOR is attempting to force

16    Defendants to depose its witnesses before its document production; (3) discovery

17    cutoff and summary judgment filing deadlines are fast approaching; and (4) further

18    delay will allow insufficient time for Defendants "to properly prepare for trial."

19    (Appl., Dkt. 74 at 3.)  Defendants go on to argue that they "do not make the *ex*

20    *parte* application lightly," despite the fact that they emailed *ex parte* demands to the

21    Court twice in the past month and threatened NICOR with an *ex parte* application

22    nearly every day between the Christmas and New Year's holidays.

23        Defendants' statement that NICOR has refused to complete discovery is

24    blatantly false.  In its December 14 email to this Court, Defendants repeatedly

25    alleged that NICOR had failed to produce *any* documents in response to the 12

26    listed topics.  During the parties' meet and confer on December 27, 2022, NICOR

27    provided Defendants with specific examples of documents, by bates number,

28    previously produced that were responsive to the topics, clearly refuting Defendants'

1   allegations.  Many of the documents were apparently overlooked by Defendants
2   and, as a result, Defendants backpedaled and now demand that NICOR immediately
3   certify *completion* of all document production.

4       NICOR explained that it will complete production soon but that it cannot
5   provide an exact date until it has the opportunity to finalize ESI production, which
6   is a moving target because Defendants recently expanded the email search terms on
7   December 12 and have indicated that they may do so again.  In addition,
8   Defendants specified additional documents ***less than a week ago*** during the
9   December 27 conference, and NICOR needs additional time to search for those
10  documents.

11      There are so many misstatements in Defendants' Application, that it is
12  impossible for NICOR to fully address them all in the time and space available for
13  this Opposition.  As one example, Defendants repeatedly allege that NICOR is
14  concealing documents, which is absolutely false.  Defendants argue, with no basis
15  whatsoever, that NICOR denies the existence of 2017 documents related to
16  NICOR's LCU product.  NICOR has never said that no 2017 documents exist and,
17  indeed, has already produced multiple documents, several of which it pointed out
18  during the parties' December 27 meet and confer.  Defendants are intentionally
19  ignoring NICOR's production and the fact that the effective filing date of the
20  asserted '427 Patent is October 25, 2017, not October 25, 2018, as Defendants
21  appear to claim.  NICOR has clearly told Defendants that it does not have any
22  documents regarding the LCU dated more than a year prior to the effective October
23  25, 2017 filing date and it does not.  The documents from Alfa Tech referenced by
24  Defendants do not suggest otherwise, and Defendants know it.

25      Defendants' assertion that *ex parte* relief is needed because NICOR intends
26  to force Defendants to take depositions before NICOR's supplemental document
27  production is ludicrous.  On December 30, NICOR provided a wide selection of
28  available dates for its witnesses, all of which are after NICOR's anticipated

1    supplemental productions.

2          While the discovery cutoff and other deadlines are approaching, there is no

3    basis for Defendants' emergency Application.  Throughout this action, Defendants

4    have consistently failed to comply with the Court's procedures, including the

5    streamlined pre-discovery conference.  In addition, Defendant did not adequately

6    confer before filing this Application, racing to file it at 2 a.m. following the holiday

7    weekend when a simple email to NICOR would have informed them of NICOR's

8    forthcoming ESI production.  As detailed below, Defendants were largely

9    responsible for the delays in discovery and, therefore, have not established

10   entitlement to *ex parte* relief.

11   **II.    BACKGROUND**

12         Shortly before the Court granted Defendants' November 16, 2022 *Ex Parte*

13   Application (Dkt. 65) to extend the *same-day* discovery cutoff (Dkt.68), Defendants

14   served a wave of new discovery – including two sets of interrogatories, five

15   deposition notices and multiple third-party subpoenas -- that had *not* been timely

16   served before the November 16 discovery deadline.  (*See,* Decl. of Lena Bacani

17   ("Bacani Decl."), ¶ 16.)  Defendants never provided a justification for their late

18   discovery.

19         Originally, this Court rejected Defendants' request for a Pre-Discovery

20   Motion Conference on this issue, finding it "untimely."  (Dkt. 64.)  For over three

21   months, the fact and expert discovery cutoff had been November 16, 2022.  (Dkt.

22   61.)  The original discovery cutoff was previously extended two months, along with

23   other case deadlines.  (*Id.*)  The need for the extension was due, in large part, to

24   Defendants' repeated failure to produce documents needed for NICOR's initial

25   expert reports, originally due August 5, 2022.[1]  (Bacani Decl. at ¶ 6.)  NICOR

26   agreed to the first stipulated extension because Defendants indicated that it would

27   _____

28         [1] NICOR telephonically met and conferred with Defendants regarding their
     deficient document productions at least three times - on July 6, July 26 and
     September 12, 2022.  (Bacani Decl. ¶¶ 4, 9.)

     NICOR'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATON

allow them to produce requested documents by July 29, 2022.  (*See id.,* Ex. 1 ("September 2 Letter") at ¶ 8.)  Despite this Court's grant of extra time on August 9, Defendants still did not produce the requested documents.  (Bacani Decl., ¶ 7.)  Moreover, NICOR's demands for an update on August 4 and 28 were ignored.  (*See id.*, Ex. 1, September 2 Letter, at ¶ 8.)    NICOR thereafter informed Defendants that it intended to move to compel production.  (*Id.*).

The parties met and conferred again on September 12, 2022.  (*See id.* at ¶ 9.)  Defendants promised they would produce documents on a rolling basis, starting with 2,000 documents on September 16 and 5,000 more on September 23, and agreed to move the expert report deadline one month (to November 4) so that NICOR would have documents in time for its experts.  (*See id.*, Ex. 2 ("September 12 Email") at ¶ 10.)  Despite Defendants' agreement in the September 12 Email, Defendants again failed to produce the promised documents.  (*Id.* at ¶ 12.)

In an attempt to get the requested information, NICOR properly noticed the Rule 30(b)(6) depositions of Defendants on October 28, which was 18 days in advance of the noticed deposition dates and on dates prior to the November 16 Discovery Cutoff.  (*Id.* at ¶ 13.)  In addition, NICOR emailed Defendants' counsel with a request to meet and confer regarding the depositions (*see id*, Ex. 4 ("November 10 Email"))  – a request that was ignored by Defendants until they cancelled the depositions at the last moment – waiting to send objections after 7 pm on Friday (the Veteran's Day holiday) before the depositions were scheduled to begin on Monday (November 14).  (Bacani Decl., ¶ 14.)  Defendants' misconduct and late cancellations of the depositions caused NICOR to incur unnecessary deposition reporter cancellation fees.  (*Id.*)

Acting pursuant to their agreement as memorialized in the September 12 Email, NICOR was forced to serve its expert reports without Defendants' discovery on November 4.  (*Id.* at ¶ 15.)  Following NICOR's service of its initial expert reports, Defendants filed an ex parte application to unilaterally extend the discovery

1    cutoff.  (Dkt. 65.)  In granting the extension, the Court stated that "it appears that

2    the parties had a genuine misunderstanding about extending the discovery cut-off,

3    and that both sides have outstanding document productions."  (Dkt. 66 at 1.)

4          Contrary to the false and misleading statements in Defendants' current

5    Application, it was Defendants, not NICOR, who repeatedly failed to comply with

6    their discovery obligations.  The stipulated extensions in the discovery cutoff were

7    a direct result of Defendants' repeated failures to produce documents to NICOR for

8    *months*.  (*See id.* at ¶¶ 4-5.)  Defendants' only recently produced a majority of their

9    documents on *December 12, 2022*.  (*Id.* at ¶ 12.)  Moreover, Defendants' statement

10   that NICOR refused to meet and confer on November 15 is categorically untrue.

11   NICOR informed Defendants that it would meet and confer when the parties were

12   available to discuss both sides' outstanding discovery issues.  Defendants refused.

13   (*Id.* at ¶ 17.)  Later, the parties met and conferred on November 30 regarding both

14   sides' outstanding discovery.  The parties agreed to exchange ESI search terms the

15   following week.  (*Id.*)

16         Only after NICOR had served its initial expert reports did Defendants seek to

17   extend the discovery deadline, which unduly prejudiced NICOR.  It was for that

18   reason alone, *fairness*, and not because it was withholding documents as

19   Defendants now allege, that NICOR refused to agree to Defendants' unilateral

20   attempt to extend the discovery cutoff in November.  (*Id.* at ¶ 18).  Once

21   Defendants grudgingly agreed to an extension that allowed NICOR to supplement

22   its initial expert reports with documents and witness testimony that Defendants

23   have agreed to produce during the extension period, NICOR agreed to stipulate to

24   extend case deadlines.  (*Id.*at ¶ 19.)  The parties filed their Joint Stipulation (Dkt.

25   70) on December 2, 2022, which was granted by the Court on December 6.  (Dkt.

26   71.)  The Order sets the fact discovery cutoff for ***January 20, 2023***.  That deadline

27   has not yet passed.

28

1    Defendants made an ESI production on December 12, 2022.  (*Id.* at ¶ 12.)

2   Shortly thereafter, on December 14, 2022, Defendants sent the Court an email

3   requesting an informal discovery conference on 12 alleged discovery topics.  (Dkt.

4   72-1.)  NICOR responded, stating that Defendants had failed to follow the Court's

5   procedures for discovery disputes.  (Bacani Decl., Ex.5.)  The Court then issued a

6   Minute Order (Dkt. 72) on December 14, reminding the parties' of the Court's

7   standing procedures and ordering NICOR to, by close of business *the next day,* to

8   "confer with the SourceBlue Parties and agree on three proposed mutually agreed

9   times for the conference and to provide the SourceBlue Parties with a brief

10   description of NICOR's position on each dispute."  (*Id.*)  The Court further required

11   that the "SourceBlue Parties will then submit an email to the Court that complies

12   with the requirements."  (*Id.*)

13    The next day, counsel for the parties were in an all-day deposition of third

14   party, Alfa Tech.  The deposition was taken by Defendants' counsel, David

15   Randall.  While the deposition was still in progress, Defendants' other counsel,

16   Ehab Samuel, who was also sitting in on the deposition, complained that NICOR

17   had not yet sent Defendants NICOR's position on each of the 12 dispute topics that

18   NICOR had just seen for the first time the day before.  (Bacani Decl., ¶ 21.)

19   NICOR's counsel informed Defendants that she would provide an email outlining

20   NICOR's position as soon as possible once the deposition was concluded.  Within

21   30 minutes following the end of the deposition after 6 p.m., NICOR provided its

22   position on all 12 dispute topics, as well as three proposed times for the pre-

23   discovery conference.[2]  (*Id.* at ¶ 22.)  Defendants' statement in the Application that

24   NICOR refused to confer with Defendants is absolutely false.

25

26

_____

27   [2] NICOR meant to provide its response on all 12 topics only to Defendants,
but inadvertently selected "Reply All," which also forwarded a copy to the Court.
28   However, that does not change the fact that NICOR fully complied with the Court's
Order.

NICOR'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATON

1    Ignoring the Court's Minute Order (Dkt. 72), Defendants did not submit an

2    email to the Court complying with the Court's procedures.  (*See,* Bacani Decl. at

3    ¶23.)  Defendants did not attempt to meet and confer with NICOR or agree to any

4    of NICOR's proposed pre-conference dates.  Instead, Defendants decided to

5    unilaterally submit another email to this Court on December 16.  (*Id.*)  NICOR once

6    again responded, objecting to Defendants' email and failure to comply with the

7    Court's standing procedures.  (*Id.* at Ex. 6.)  This Court then issued another Minute

8    Order (Dkt. 73) on December 19, clearly outlining the Court's "mandatory

9    procedures regarding discovery disputes."  Defendants still did not comply.

10   NICOR made a supplemental production around December 21, 2022, as

11   agreed.  (*Id.* at ¶ 25.)  Despite this, Defendants began emailing NICOR every day

12   threatening to file an *ex parte* application to compel that same day.  (*Id.* at ¶ 26.)

13   Defendants' repeated these threats daily.  NICOR responded, indicating it disagreed

14   with Defendants' accusations and requesting Defendants provide specific details on

15   what documents they contended were still missing from NICOR's production.  (*Id.*

16   at ¶ 27.)  Contrary to Defendants' allegation, NICOR never informed Defendants

17   that it would produce all emails responsive to the newly-expanded search terms on

18   December 21.  That would not have provided NICOR with sufficient time to

19   conduct the ESI searches.  Rather, NICOR promised to make a supplemental

20   document production on December 21 of other responsive documents, which it did.

21   (*Id.* at ¶ 25.)

22   The parties subsequently met and conferred on December 27.  During the

23   two and a half hour session, NICOR went through each of the 12 dispute topics

24   outlined in Defendants' December 14 email to the Court (Dkt. 72-1), providing

25   numerous examples of responsive documents that had already been produced.

26   (Bacani Decl., ¶ 27.)  NICOR's examples directly contradicted Defendants'

27   repeated allegations that NICOR has not produced any responsive documents.

28   During the conference, Defendants walked back from their allegations and, in

today's Application, now argue that NICOR should be sanctioned because it has not produced "*all*" responsive documents.  (Dkt. 74 at 3 ("NICOR has refused to complete its document production or provide a date certain as to when its production will be complete.").)

During the December 27 conference, the parties clarified the broad scope of Defendants' requests and what, specifically, Defendants contend is still missing. (Bacani Decl. at ¶ 27.)  While NICOR agreed to search for the additional documents identified by Defendants, NICOR expressly told Defendants that it would ***not*** be able to produce them by December 30 because NICOR was busy gathering emails responsive to the expanded list of email search terms Defendants had provided to NICOR for the first time on December 12.  (*Id*.)  NICOR informed Defendants that it was working diligently on gathering the numerous emails for the expanded search and hoped to produce them on Friday, December 30, before the New Year's holiday.  (*Id.* at ¶ 28.)  NICOR further stated that it would need more than *3 days* to search for the additional documents requested by Defendants during the December 27 conference, especially given the intervening holiday. (*Id.* at ¶ 29.)

NICOR, which is a small company, has worked diligently and in good faith over the Christmas and New Year's holidays – including nights and weekends -- to gather and produce documents.  (*Id.* at ¶ 30.)  Given the breadth of the email search terms, NICOR did not, despite its best efforts, complete its processing of emails on November 30.  (*Id*.)  However, NICOR did provide Defendants with the availability of NICOR's witnesses for deposition on November 30, as agreed during the December 27 meet and confer.  (*Id.* at ¶ 31.)

NICOR continued to gather and review documents over the holiday weekend and intended to produce them on Tuesday.  (*Id.* at ¶ 32.)  However, before NICOR could complete its review and production, it received Defendants' ex parte Application at 2:30 a.m., Tuesday morning.  (*Id*.)  Defendants did not notify NICOR of their intention to file the Application and clearly filed it very early to

NICOR'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATON

1   beat NICOR's document production and shorten NICOR's time to oppose the

2   Application.  (*Id.* at ¶ 33.)  Instead of completing its production, NICOR has had to

3   instead turn its attention to responding to Defendants' frivolous Application.

4        Contrary to Defendants' misstatements, NICOR has not refused to meet and

5   confer with Defendants.  Indeed, NICOR has repeatedly met and conferred with

6   Defendants' counsel in a good faith effort to avoid motion practice -- both on

7   Defendants' threatened motions to compel and regarding NICOR's requests that

8   Defendants produce their promised documents and deposition witnesses.  (*Id.* at

9   ¶ 34.)  Yet, every time the parties appear to reach agreement, Defendants

10  immediately add additional discovery demands, changing the parameters of the

11  parties' agreement and creating a "moving target" for NICOR.  In addition,

12  Defendants threaten to file their *ex parte* application to compel and other discovery

13  letters *daily*.  (*Id.* at ¶ 26.)

14       Indeed, Defendants did not even attempt to meet and confer with NICOR

15  prior to filing their Application the morning after the New Year holiday weekend.

16  If they had provided NICOR the courtesy of an email, NICOR would have

17  informed Defendants that NICOR had worked diligently through the holiday

18  weekend to gather documents for production and intended to produce them

19  Tuesday, needing just a little more time than the December 30 deadline NICOR had

20  originally intended.  It's clear that Defendants' motivation is primarily to harass and

21  burden NICOR in order to increase litigation costs.

22  **III.  ARGUMENT**

23       "[A]bsent an emergency, *ex parte* applications may not be used to obtain a

24  ruling on a discovery dispute."  *Taylor v. Shippers Transport Express, Inc.,* No. CV

25  13-02092, 2014 WL 12561081, at *1 (C.D. Cal. Aug. 5, 2014) ("Ex parte

26  applications are solely for extraordinary relief and should be used with

27  discretion.").  A motion for *ex parte* relief may be granted where the movant

28  demonstrates (1) that its "cause will be irreparably prejudiced if the underlying

motion is heard according to regular noticed motion procedures," and (2) that it's "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect."  *See Mission Power Eng'g Co. v. Cont'l Cas. Co.***,** 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Requiring the moving party to demonstrate both elements is critical because *ex parte* applications are inherently unfair and pose a threat to the administration of justice because, although the non-moving party has an opportunity to respond, the parties' opportunities to prepare are grossly unbalanced.  *Mission Power,* 883 F. Supp. at 490.  To establish that the moving party is without fault or only guilty of excusable neglect, the moving party "must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.* at 493.

A. **Defendants Have Not Demonstrated Entitlement to *Ex Parte* Relief Because They will Not Be Irreparably Prejudiced by Using the Court's Pre-Discovery Motion Procedure**

To obtain *ex parte* relief, the moving party must show that its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power*, at 492.  This Court has an expedited, informal discovery resolution procedure in the form of a Pre-Discovery Motion Conference, as detailed on the Court's website and in its December 19, 2022 Minute Order (Dkt. 73).

Defendants have repeatedly ignored the Court's procedure, instead opting to email the Court – not once, but *twice* – with emails requesting *ex parte* relief, first, on December 14 and again on December 16.  NICOR has pointed out the correct procedure in its responses and proposed three dates for the pre-discovery conference.  Following this procedure would have allowed the parties a full and fair opportunity to resolve their discovery disputes.  Instead, Defendants refused to select any of NICOR's proposed dates or to propose alternative dates, opting to file

1    the present Application.

2          There is simply no emergency justifying *ex parte* relief as Defendants could

3    have used the Court's Pre-Discovery Motion procedure before the existing

4    discovery cutoff.  Moreover, NICOR has produced documents responsive to the

5    dispute topics at issue in the Application, and has already agreed to produce

6    additional emails in response to Defendants' recently-revised search terms and the

7    additional documents specified less than a week ago during the parties' December

8    27, 2022 meet and confer.  NICOR also provided Defendants on December 30 with

9    a wide range of available dates for NICOR's witnesses that are well before the

10   discovery cutoff and will be after NICOR's supplemental document productions.

11   Therefore, Defendants' argument that they will not have documents prior to the

12   depositions is categorically untrue and, as a result, Defendants will not be

13   irreparably prejudiced if ex parte relief is denied.

14          **B.      Defendants are Not Without Fault in Creating the Alleged Crisis**

15         An applicant for *ex parte* relief must show that it is "without fault in creating

16   the crisis that requires *ex parte* relief, or that the crisis occurred as a result of

17   excusable neglect." *Mission Power*, at 492.  As detailed in the Background section

18   above, Defendants repeatedly neglected their discovery obligations for many

19   months, necessitating several extensions in the discovery cutoff date.  Defendants

20   also waited too long to serve their interrogatories and deposition notices of

21   Defendants' witnesses, such that NICOR would not have had time to respond or

22   make its witnesses available before the November 16 discovery cutoff date had the

23   Court not agreed to extend the deadline.  NICOR subsequently agreed to stipulate

24   to the current extension in the discovery deadline in order to give both parties' time

25   to complete discovery, especially in light of the intervening holidays.  It is

26   diligently using this time to produce the additional documents only recently

27   requested and/or clarified by Defendants, working nights and over the holiday

28   weekend to collect and process documents.

1 |     Defendants' refusal to meet with NICOR in good faith to resolve both sides'
2 | discovery issues has delayed resolution.  Defendants refused to meet and confer
3 | with NICOR in mid-November, only agreeing two weeks later.  The parties'
4 | November 30 meet and confer could have taken place much earlier but for
5 | Defendants' own actions.  In addition, Defendants recently expanded and added
6 | additional ESI search terms that were not proposed or agreed to during the parties'
7 | November 30 meet and confer.  (Bacani Decl. ¶ 27.)  In addition, Defendants
8 | admitted that they never filed the parties Stipulated ESI Order with the Court.  (*Id.*
9 | at ¶ 35.)  Moreover, Defendants repeatedly refused to clarify with any specificity
10 | the documents they alleged were missing from NICOR's supplemental document
11 | productions.   These actions by Defendants have further delayed discovery.
12 |     In addition, Defendants have refused to abide by the Court's pre-discovery
13 | conference procedures, opting instead to submit multiple emails to the Court
14 | seeking *ex parte* relief, requiring NICOR to drop its processing of documents in
15 | order to respond with less than 24 hours' notice, further delaying resolution of the
16 | discovery issues in this Application.
17 |     Defendants created the alleged crisis because of their failure to adequately
18 | meet and confer in good faith.  Defendants filed the Application less than a week
19 | after the parties' December 27 meet and confer, which has not provided NICOR
20 | with sufficient time to complete its supplemental ESI production on the expanded
21 | search terms.  NICOR intended to produce documents on December 30, but needed
22 | a little more time given the volume of emails.  In addition, Defendants filed this
23 | Application at 2:30 a.m. immediately following the New Year's holiday weekend,
24 | which was clearly intended to beat NICOR's expected supplemental ESI document
25 | production and to give NICOR less time to file its opposition.
26 |     NICOR informed Defendants that it would not be able to complete
27 | production of the newly-identified documents specified by Defendants in the
28 | December 27 meet and confer by December 30.  Therefore, it could not provide a

1  date certain for completion on December 27.  However, contrary to Defendants'

2  allegation, NICOR did not refuse to complete production.  Moreover, Defendants

3  made no attempt whatsoever to confer with NICOR regarding the status of its ESI

4  production before filing the Application.

5  Because *ex parte* relief could have been avoided if Defendants had not

6  engaged in the above-described conduct, Defendants are not entitled to *ex parte*

7  relief.

8  ### C.   Defendants are Not Entitled to Monetary Sanctions

9  Rule 37 provides that, when a motion to compel is granted, the Court "may,

10  after giving an opportunity to be heard, apportion the reasonable expenses for the

11  motion."  Fed. R. Civ. P. 37(5)(C).  An opposing party may avoid such an award

12  only if its position was "substantially justified" or "other circumstances make an

13  award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).  "The district

14  court has great latitude in imposing sanctions under" Rule 37.  *Lew v. Kona Hosp*.,

15  754 F.2d 1420, 1425 (9th Cir. 1985).

16  Defendants' request for sanctions under Rule 37 should be denied.  In

17  support of their demand, Defendants argue the same false statements addressed

18  above, including that NICOR has failed to meet and confer, concealed documents,

19  and intends not to produce documents before depositions, or will withhold

20  depositions.  (Dkt. 74 at 23-24.)  None of these statements are true.

21  NICOR has produced numerous responsive documents, a fact that

22  Defendants appear to admit given the change in their allegations.  In their

23  December 14 email, Defendants claimed NICOR had not produced *any* responsive

24  documents and now, in this Application, Defendants argue that NICOR has not

25  *completed* document production.  These are very different allegations.

26  NICOR is substantially justified in not having completed all document

27  production at this time.  First, NICOR stipulated to extend the discovery cutoff in

28  order to provide both parties additional time to complete discovery.  Second, it has

1    only been two weeks – over two holiday weekends -- since Defendants provided

2    NICOR with new ESI search terms and only a week since the parties' December 27

3    meet and confer, when Defendants finally clarified the documents they contend are

4    missing from NICOR's existing production.  NICOR showed Defendants that many

5    documents they thought were missing, weren't, including materials lists for VLL,

6    2017 documents related to the LCU, and others.

7           Despite this, Defendants continue to ignore this Court's clear pre-discovery

8    motion procedures.  Defendants harassed NICOR every day for a week between

9    Christmas and New Year, attempting to overburden NICOR and increase litigation

10   expenses.  In addition, Defendants did not meet and confer in good faith, jumping

11   ahead with filing this Application when a simple email to NICOR would have

12   informed them of the timing of NICOR's supplemental ESI production.

13   Defendants' should be required to pay NICOR's expenses for responding to this

14   meritless Application, and for the cancellation fees NICOR incurred resulting from

15   Defendants' last-minute cancellation of their Rule 30(b)(6) depositions.

16   **IV.   <u>CONCLUSION</u>**

17           For the foregoing reasons, NICOR respectfully requests that the Court deny

18   Defendants' *Ex Parte* Application in its entirety, and for any further relief the Court

19   deems just and warranted.

20    Dated:  January 4, 2023                      Respectfully submitted,

21                                                 LOZA & LOZA, LLP.

22

23                                                 By: *Lena Bacani*

24                                                 Lena N. Bacani

25                                                 Attorneys for Plaintiff NICOR, Inc.

26

27

28