1 | David A. Randall (SBN 156722)
2 | dave@orbitip.com
   | Ehab M. Samuel (SBN 228296)
3 | esamuel@orbitip.com
   | Thomas J. Brindisi (SBN 175587)
4 | tom@orbitip.com
   | ORBIT IP LLP
5 | 10900 Wilshire Blvd., Suite 300
   | Los Angeles, CA 90024
6 | Tel.:  (310) 887-1333
7 | Fax:  (310) 887-1334
8 | Attorneys for Defendant
9 | SourceBlue, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NICOR, INC.,<br>          Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC f/k/a<br>TURNER LOGISTICS, LLC<br><br>          Defendant.<br><br>Consolidated for all purposes with:<br><br>INFINILUX CORPORATION<br>          Plaintiff,<br><br>v.<br><br>NICOR, INC.,<br>          Defendant. | CASE Nos.: 2:21-cv-05876-AB(PDx)<br>and 2:21-cv-5300-AB(PDx)<br><br>**SOURCEBLUE, LLC's NOTICE OF<br>MOTION AND MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Honorable André Birotte Jr.<br>Ctrm:  7B, 350 West 1st Street,<br>Los Angeles, CA 90012<br>Hearing Date: May 26, 2023<br>Hearing Time:  10:00 a.m.<br><br>Complaint Filed:  May 14, 2021<br>Trial Date:  August 8, 2023 |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 26, 2023, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7B of the Ronald Reagan United States Courthouse, located at 411 West Fourth Street, Santa Ana, California, defendant SourceBlue, LLC f/k/a Turner Logistics, LLC ("SourceBlue"), will and does move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 that U.S. Patent No. 10,824,427 ("the '427 patent") is invalid. SourceBlue also moves for summary judgment on counts II-III of plaintiff NICOR, Inc.'s ("NICOR's") First Amended Complaint ("FAC") (Dkt. 55).

This motion is made on the following grounds:

1.  The asserted claims of the '427 patent are invalid under:

    a.  35 U.S.C. § 102(a)(1) due to pre-critical date offers for sale, sales, and public use; and/or

    b.  35 U.S.C. § 112(a) for lack of enablement in light of admissions by NICOR and its inventors; and

2.  NICOR's state law claims in Counts II and III are legally defective for the reasons summarized in the present motion and set forth fully in Infinilux's motion for summary judgment filed concurrently herewith.

Counsel for the parties met and conferred, as required by L.R. 7-3, on April 14, 2023. While counsel engaged in a meaningful discussion, they were unable to reach a resolution eliminating the need for this motion. This motion is therefore made following the conference of counsel, which took place on April 14, 2023.

This motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Appendix of Exhibits in Support of Infinilux and SourceBlue's Motions for Partial Summary Judgment and Motions to Strike and Exclude ("Appendix"), the accompanying Declaration of

1  David A. Randall in support, the concurrently-filed Motions to Strike and Exclude,

2  the pleadings and papers on file in this matter, and the arguments of counsel at the

3  hearing on this motion.

4

5                                    Respectfully submitted,

6

7  DATED:  April 25, 2023              ORBIT IP, LLP

8                                    By:  /s/ David A. Randall

9                                    David A. Randall (SBN 156722)
                                     Ehab Samuel (SBN 228296)
10                                   Thomas J. Brindisi (SBN 175587)

11
                                     *Attorneys for Defendant*
12                                   SOURCEBLUE, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARDS ...........................................................................1

III.  ARGUMENT...........................................................................................2

    A.   The Asserted Claims of the '427 Patent Are Invalid Under the
       On-Sale Bar ...................................................................................2

        1.   The '427 Patent's Critical Date Is October 24, 2017................. 2

        2.   NICOR Judicially Admitted Its LCU Was Covered by the
             '427 Patent ..................................................................... 3

        3.   The LCU Was Commercially Offered for Sale and Sold
             Before the Critical Date, by NICOR to National, and by
             National to Cupertino Electric ....................................... 4

        4.   The LCU Was "Ready for Patenting"........................................ 6

    B.   The "Patented LCU" Was in Public Use Before the Critical Date .......7

    C.   NICOR's Arguments That the '427 Patent Is Not Obvious Admit
       Its Claimed "Barrier" Isn't Enabled ......................................................8

    D.   NICOR's Remaining Causes of Action Are Legally Deficient ..........13

        1.   NICOR Cannot Show Knowledge and Intent for Indirect
             Infringement............................................................................. 13

        2.   NICOR Cannot its Prove its State Law Claims ....................... 14

IV.   CONCLUSION....................................................................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*3M v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002) ................................. 7

*American Title Ins. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ......................... 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................. 1

*CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d 933 (D. Minn. 2006) .......... 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................. 1

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ................................... 13

*Deerpoint Grp. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207 (E.D. Cal. 2018) .............. 3

*Group One, Ltd. v. Hallmark Cards, 254 F.3d 1041 (Fed. Cir. 2001)* ............... 4, 5, 6

*Guam Paradise Co. v. Mitsubishi Corp., Ltd.*, 12 F.3d 1106 (9th Cir. 1993) .......... 14

*Helsinn Healthcare S.A. v. Teva Pharmas. USA*, 586 U.S. __, 139 S. Ct. 628 .......... 4

*In re Smith*, 714 F.2d 1127 (Fed. Cir. 1983) ......................................... 7, 8

*In re Wands*, 858 F.2d 731 (Fed. Cir. 1988) ......................................... 9, 12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.2d 937 (Cal. 2003) ....................................................................... 13, 14

*Linear Tech. v. Micrel Inc.*, 275 F.3d 1040 (Fed. Cir. 2001) ................................ 4, 6

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ......................... 1

*Microsoft v. i4i Ltd.*, 564 U.S. 91 (2011) ................................................. 1, 2

*Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371 (Fed. Cir. 2023) ............... 6, 7

*Nano-Second Tech. Co. v. Dynaflex Int'l*, No. CV 10-9176, 2013 WL 1855828 (C.D. Cal. May 1, 2013) ........................................................... 15

*Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840 (9th Cir. 2004)................... 14

*Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998) ...................................................... 2, 6

*Research Corp. v. Microsoft*, 627 F.3d 859 (Fed. Cir. 2010).................................. 2, 8

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 249 F.3d 1307 (Fed. Cir. 2001) .......... 2

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617

    F.3d 1296 (Fed. Cir. 2010) ................................................................................ 9

## Statutes

35 U.S.C. § 102 ..........................................................................................i, 2, 3

35 U.S.C. § 271(c) ........................................................................................... 13

## Other Authorities

UCC § 2-204(2) .................................................................................................. 5

## Rules

Fed. R. Civ. P. 56 ............................................................................................... 1

## Rules

Fed. R. Civ. P. 56 ............................................................................................... 1

## I.   INTRODUCTION

NICOR and its distributor had the same LCU which it has judicially admitted to be covered by the '427 patent claims on sale and in public use before the patent's October 24, 2017 critical date. Further, the patent omitted details the named inventors admit a person of ordinary skill in the art ("POSA") would need to enable what NICOR claims is non-obvious.

NICOR's state law claims are legally defective for the reasons summarized in the present motion and set forth fully in Infinilux's accompanying motion for partial summary judgment.

## II.   LEGAL STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. A fact is material if its resolution might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-23. Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587. A party asserting invalidity bears the burden of proving it with clear and convincing evidence. *Microsoft v. i4i Ltd.*, 564 U.S. 91, 95 (2011).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT

NICOR's claim for infringement set forth in Count I of the FAC (Dkt. 55) fails because the '427 patent's asserted claims are invalid as a matter of law under (A) 35 U.S.C. § 102(a)(1) due to pre-critical date offers for sale, sales, and public use, and (B) 35 U.S.C. § 112(a) for lack of enablement in light of NICOR's admissions. NICOR's remaining claims in this case (Counts II and III of its FAC) fail as a matter of law for the reasons set forth in Infinilux's accompanying motion for partial summary judgment.

### A. The Asserted Claims of the '427 Patent Are Invalid Under the On-Sale Bar

Application of the "on-sale bar" under 35 U.S.C. § 102 is a **question of law** with underlying factual findings. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 249 F.3d 1307, 1310 (Fed. Cir. 2001). The on-sale bar precludes patenting of subject matter offered for sale or sold before the "critical date" one year before a patent's effective filing date. The applicable standard assesses whether the claimed subject matter was: (1) the subject of a commercial offer for sale, and (2) ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).

Before the '427 patent's critical date, both NICOR and its distributor, National Electric Supply Co. ("National"), offered for sale and contracted to sell significant quantities of the system which NICOR has pervasively referred to as "the Patented LCU."

### 1.  The '427 Patent's Critical Date Is October 24, 2017

The evidence of NICOR and National's sales (and public disclosures) more than one year before the '427 patent's filing date—as set forth below—shifts the burden to NICOR to prove entitlement to an earlier filing date or overcome such evidence. *See Research Corp. v. Microsoft*, 627 F.3d 859, 870 (Fed. Cir. 2010). SourceBlue submits that NICOR cannot establish the '427 patent is entitled to the

priority of any of the earlier-filed provisional applications because each lacks written description support for the asserted claims. SF, ¶1. Thus the '427 patent's effective filing date will remain October 24, 2018, and its critical date for purposes of 35 U.S.C. § 102(b)(1) is a year prior or October 24, 2017.

### 2. NICOR Judicially Admitted Its LCU Was Covered by the '427 Patent

NICOR asserts pervasively in its pleadings that its LCU was "patented." SF, ¶2. "'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' Factual assertions in a complaint, unless amended, are conclusively binding judicial admissions." *Deerpoint Grp. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1232 (E.D. Cal. 2018) (quoting *American Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).[1]

'427 patent co-inventor Mr. Gomez testified that the October 20, 2017 version of the LCU worked for the desired functions, had all the UL labels, and was the "final iteration" that NICOR produced. SF, ¶3. In other words, NICOR's pre-critical date LCU, as of October 20, 2017, was the same product that NICOR judicially admits to be covered by the '427 patent. SF, ¶4. NICOR's admission conclusively precludes it from disputing that its final pre-critical date LCU embodied the subject matter claimed by the '427 patent.

---

[1] SourceBlue does not contend that any '427 patent claims cover NICOR's LCU, and the introduction here of NICOR's judicial admission is not a stipulation or admission by SourceBlue that they do.

### 3. The LCU Was Commercially Offered for Sale and Sold Before the Critical Date, by NICOR to National, and by National to Cupertino Electric

In 2019, the Supreme Court held that Congress adopted the then-established judicial construction of the on-sale bar by enacting the AIA (in September 2011) with the same "on sale" language as the predecessor statute. *Helsinn Healthcare S.A. v. Teva Pharmas. USA*, 586 U.S. __, 139 S. Ct. 628. Thus, the gravamen for determining whether acts constitute an on-sale bar has been rolled back to settled pre-AIA precedent construing the meaning of "on sale." In that regard, the Federal Circuit held in *Group One, Ltd. v. Hallmark Cards* that the UCC generally defines whether communications rise to a commercial offer for sale, and that this requires an offer the other party could make into a binding contract by simple acceptance (assuming consideration). 254 F.3d 1041, 1047 (Fed. Cir. 2001). Later the same year the court further explained that "we will search for the common denominator for assistance in crafting the federal common law of contract that now governs the on-sale bar," *Linear Tech. v. Micrel Inc.*, 275 F.3d 1040, 1048-49 (Fed. Cir. 2001), and that the same principles apply to sales as offers for sale, *id.* at 1052 ("General principles of contract law must govern a conclusion that a sale occurred, and under these principles, a completed sale requires an offer, an acceptance, and consideration").

Here, NICOR's price quotation to National, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SF, ¶5. National eventually issued a purchase order to NICOR, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. SF, ¶6.

As well, National emailed ▮▮▮▮▮▮ to Cupertino Electric, Inc. ("Cupertino") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SF, ¶7. Cupertino then issued purchase orders ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████ SF, ¶8.

3        Whether or not at the time of the initial quotes and purchase orders, Facebook,

4 its engineer of record Alfa Tech, Cupertino, and others had yet told NICOR and

5 National to physically separate the LCU's enclosure into normal and emergency

6 sides and to include a barrier to that end, they certainly *did* so—and the sales' agreed

7 subject became the item that NICOR admits as its "Patented LCU"—before the

8 critical date. Indeed, according to co-inventor Mr. Gomez (who is NICOR's Product

9 Development Manager) and NICOR's records, the LCU of NICOR and National's

10 offers and sales was completed in mid-October 2017. SF, ¶9. Both buyer and seller

11 understood that the 265 LCU units that National ordered ███████████ (for resale

12 to Cupertino) were specified in mid-October 2017 emails which attached

13 specifications laying out NICOR's "final iteration" of LCU. SF, ¶10. National's

14 customer, Cupertino, was intimately involved in the design process, specifying and

15 requiring features including the barrier. SF, ¶11. *See Group One*, 275 F.3d at 1052

16 ("We recognize that under the UCC, a valid contract can be found even if the court

17 cannot pinpoint the exact time of its formation, UCC § 2-204(2), but this rule —

18 however laudable in the commercial setting — cannot relieve the court in an on-sale

19 bar setting from ascertaining if a sale, or an offer for sale, has been made before the

20 critical date.").

21        NICOR and National each undertook major pre-critical date investments

22 (prototyping, ordering materials and assembling units, testing supervised by

23 Cupertino and Facebook's engineer of record, etc.) in response to Cupertino's

24 purchase orders, which Cupertino was aware of, SF ¶12, and per Mr. Gomez and

25 NICOR's records, "production-level" LCUs were shipped out by the first half of

26 November. SF, ¶13. There is no room for any doubt as to assent and acceptance of

27 both an agreement by NICOR to sell to National, as well as an agreement by

28

National to sell to Cupertino, the "Patented LCU" before October 24, 2017. Prices were marked up along the way ████████████████████████ and NICOR's own claims for lost profits implicitly attest to what were clearly sales under the standards set out by *Group One* and *Linear Tech*.

### 4. The LCU Was "Ready for Patenting"

The Federal Circuit recently summarized how the second prong of *Pfaff's* on-sale bar standard "may be shown in at least two ways": the first way is "by proof of reduction to practice before the critical date," which "occurs if the claimant had possession of the subject matter of the [claim] and … it was shown or known to work for its intended purpose." *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023) (citation omitted). "Possession" in that regard may be shown by the existence of a <u>working prototype</u>, and the invention's "intended purpose" should be considered in view of the claims and specification. *Id.* at 1377-78. (emphasis added). "The second way the 'ready for patenting' element may be shown is 'by proof that prior to the critical date the inventor had prepared <u>drawings or other descriptions</u> of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.'" *Id.* at 1378 (emphasis added) ("For example, we have found 'CAD drawings' and related descriptions sufficiently enabling.").

Here, NICOR possessed both a <u>working prototype</u> *and* fulsome <u>drawings and other descriptions</u> of its "final iteration" LCU before the critical date. SF, ¶14. *Both* admittedly satisfied the "ready for patenting" standard, independently. Co-inventor Gomez admitted that by October 20, 2017, NICOR's LCU was "at a stage where it worked for the desired functions," and that its specification drawings then depicted "a functional and satisfactory product that includes a barrier." SF, ¶15. NICOR made that "final iteration" LCU at least by October 23, 2017. SF, ¶16. Co-inventor Brown similarly testified that the prototype by this time was "a production unit" and

1  NICOR had a wiring diagram for its manufacturing department so that "[t]hey knew
2  how to build it and where each wire was landed." SF, ¶17.

3  The content of the drawings, specifications, CAD files, and working LCU that
4  NICOR possessed prior to the critical date significantly exceeded what NICOR
5  disclosed in the '427 patent. SF, ¶18. NICOR cannot (without admitting non-
6  enablement) dispute that its pre-critical date drawings were "sufficiently specific to
7  enable a person skilled in the art to practice the invention," *Minerva Surgical*, 59
8  F.4th at 1377. Nor that NICOR possessed a pre-critical date LCU prototype (if not
9  production-level unit) that worked for its intended purposes. *Id.*

10  **B. The "Patented LCU" Was in Public Use Before the Critical Date**

11  A claimed invention will be deemed to have been in public use under Section
12  102(a)(1) if before the critical date it was: (1) accessible to the public or
13  commercially exploited anywhere in the world, and (2) ready for patenting. *See, e.g.,*
14  *Minerva Surgical*, 59 F.4th at 1378. An invention is in public use when used by
15  anyone not under any limitation, restriction, or obligation of secrecy to the inventor,
16  not primarily for bona fide experimental purposes. *See, e.g.*, *In re Smith*, 714 F.2d
17  1127, 1134 (Fed. Cir. 1983). "Whether a patent is invalid due to a § 102(b) public
18  use is a **question of law** based on underlying questions of fact." *3M v. Chemque,*
19  *Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (emphasis added).

20  In the process of commercially offering and selling significant quantities of its
21  LCU pre-critical date, NICOR disseminated extensive information about the LCU,
22  such as in its October 20, 2017 email sending third-party Cupertino drawings, third-
23  party product specifications, October 20, 2017 Brown memorandum showing
24  compliance with Facebook's specifications, and other details. SF, ¶19. As shown in
25  sections III.B.2&4 above, NICOR has admitted that this "final iteration" LCU
26  embodied the '427 patent claimed subject matter, and it was ready for patenting
27  before the critical date.

28

The terms of Cupertino's purchase orders issued to National contain no confidentiality obligations as to the Seller's information. SF, ¶20.[2] Without any such condition, the extensive information on the LCU conveyed to Cupertino before the critical date (for use by third-parties including Fortis Construction, Alfa Tech, Facebook, etc.) was made to a third-party "not under limitation, restriction, or obligation of secrecy to the (alleged) inventor." *In re Smith*, 714 F.2d at 1134. In lieu of evidence to the contrary (*see Research Corp.*, 627 F.3d at 870), NICOR's and National's pre-critical date dissemination of information on its LCU noted above thus constituted an invalidating public use.

## C. NICOR's Arguments That the '427 Patent Is Not Obvious Admit Its Claimed "Barrier" Isn't Enabled

Though fact issues may preclude a summary judgment of obviousness, a summary determination on enablement can be made because NICOR's and its inventors' contentions of non-obviousness admit its claims are not enabled.

> … A patent specification must "contain a written description of the invention … to **enable** any person skilled in the art … to make and use the same."  The specification must "enable one of ordinary skill in the art to practice the claimed invention without undue experimentation." Enablement under § 112 is a **question of law** with underlying questions of fact regarding undue experimentation.

---

[2] Cupertino's Terms and Conditions from July of 2017 were not captured (at https://web.archive.org/web/20170719204205/www.cei.com/terms&conditions) successfully by the Internet Archive, but its Terms and Conditions found at https://staging.cei.com/sites/default/files/P.O._TermsAndConditions.pdf bearing a date of October 2017 include a provision entitled "Use of Information" expressly confirming that information received by Cupertino from Sellers is not treated confidentially except by separate written agreement.

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) (citation omitted; emphases added). Factors relevant to determining whether experimentation is "*undue*" include the:  claims' breadth; nature of the invention; state of the prior art; level of ordinary skill; level of predictability in the art; amount of direction provided by the inventor; existence of working examples; and quantity of experimentation needed to make or use the invention based on the disclosure. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Though the '427 patent claims all recite a case having emergency and normal power sides separated by a "**barrier**," the specification describes a barrier (985) only in Fig. 9 and col. 13, lines 42-54 (highlighting added), SF, ¶21:



NICOR, replying to an interrogatory seeking the factual and evidentiary support for any contention that "secondary considerations or objective indicia are

probative of nonobviousness of any of the Asserted Claims of the '427 Patent"
stated that:

> 22    NICOR's invention as described in the Asserted Claims defied convention
> 23  and teaching of others by including emergency and normal power systems in the
> 24  same enclosure. Before NICOR's LCU product obtained UL certification for
> 25  Emergency Lighting, it was believed, and NICOR was informed, that NEC
> 26  700.10(B) required normal and emergency wiring to be in separate boxes.
> 27  Specifically, one enclosure would have the emergency LED drivers and the ELCU-
> 28  100, and the other box would house the remaining LED drivers. NICOR's
> 1  innovative design allowed the normal and emergency drivers to be in the same box.
> 2  NICOR believes that its invention was the first to accomplish this.

SF, ¶23.[3]

The "invention" and "innovative design," alleged by NICOR to be the first to
realize a single box with both an emergency LED driver side and normal LED driver
side, requires a **barrier** (SF, ¶22), which is recited in all of the '427 patent's claims.
NICOR's interrogatory responses nor its representatives have suggested anything
specific other than inclusion of two separated sides in the box (which requires a
barrier) as non-obvious over otherwise similar prior art.

---

[3] NICOR repeated these non-obviousness contentions in its last response, *see, e.g.,*
*Pavo Sols. Llc v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 U.S. Dist.
LEXIS 228663, at *60 (C.D. Cal. Nov. 20, 2019) (patentee "had a 'duty to amend its
answers to contention interrogatories in a timely manner' and is not excused from
doing so simply because it may require the early disclosure of its theory of non-
obviousness."), and their subject is not one akin to claim construction and
infringement contentions that are inherently prone to major shifts as litigation
progresses, *cf., e.g., Intellect Wireless v. T-Mobile United States*, 735 F. Supp. 2d
928, 937 n.7 (N.D. Ill. 2010) ("This is not to say that Intellect can forever avoid
summary judgment by amending its responses to defendants' [infringement
contention] interrogatories, but rather that Intellect's initial interrogatory responses
are not binding at this stage.").

If this was not obvious (which SourceBlue denies), *why* was it non-obvious? Mr. Gomez – the only named inventor whom NICOR identified as contributing to "conception and development of the mechanical design and simulated thermal management design" (SF, ¶24) – explained it is by virtue of ***features not disclosed in the patent***.

Specifically, he admitted that: assembling a barrier between a normal and emergency side was challenging; the inventors solved that problem by using a ***split*** barrier to facilitate assembly, and a ***wire duct*** to pass cables and wires; it took <u>significant trial and error and prototypes</u> to devise the solution of a split barrier and a wire duct; <u>the '427 patent discloses neither feature</u>; and <u>a lot of trial and error would be required to make a barrier that actually worked if the only guide was the '427 patent disclosure</u>. SF, ¶25.

Mr. Brown, the named inventor that NICOR identified as "primarily responsible for conception and development of the electrical components, design and wiring of the LCU" (SF, ¶26), also testified that: the barrier included two J-boxes formed on opposite sides of the barrier, allowing for routing wires while providing a fire barrier; the barrier with a simple hole instead of a J-boxes would not pass code due to insufficient fire barrier; and the barrier's J-boxes are not shown "independently" in the '427 patent. SF, ¶27.

And Mr. Shaw, NICOR identified as being involved in the "conception and review of the mechanical design of the LCU" (SF, ¶28), testified flat-out that a POSA would not be able to build a product from Fig. 9 as it "provides no technical information, and so it would be very hard to figure out how to provide the exact

solution based on a rough block diagram"[4]—and further that "[y]ou would never

reveal exactly how you're doing something" in a patent. SF, ¶29.

Thus, NICOR's expert in his rebuttal report resorts to improperly-

incorporated "essential material" from the '877 provisional application to reach his

opinion that the barrier disclosed in the '427 patent is enabled, e.g., at p.111

explaining that the '877 provisional application discloses that the "height of the

barrier rises from the floor of the case to the ceiling of the case" and showing that in

the caption on p.112; at p.113 explaining that the '877 provisional application

discloses the use of ANSI 61 (i.e., TGIC Polyester powder coating) paint-coated,

cold-rolled steel for the barrier, and again that its height is from "floor to ceiling of

case"; at p.114 erroneously opining that a POSA "would have … the three

provisional applications (which are incorporated into the '427 patent)" "in front of

him or her" in the context of the enablement analysis, and specifically relying in that

analysis on the "height (floor to ceiling of case), … type of steel (CRS type of steel),

… and paint coating (ANSI 61 Gray)." SF, ¶30.

In contrast, Mr. Moss employed the *proper* legal standards, and applied the

*Wands* factors on the issue of the '427 patent's enablement.  In view of NICOR's

position, Mr. Moss opined that four of the eight "are roughly neutral or not

significantly informative in this case," with the other four favoring non-enablement.

SF, ¶31.  Ultimately, the admissions by NICOR and its named inventors foreclose

any reasonable argument or inference that could salvage the '427 patent's validity—

accepting NICOR's position that the '427 patent isn't obvious means accepting its

named inventors' explanation of why the patent can't be deemed enabled. SF, ¶32.

---

[4] Even if more details were included in NICOR's provisional applications, material
in provisional applications is legally unavailable for incorporation by reference to
support enablement of the asserted claims. 37 CFR 1.57(d)(1); *see also* concurrently
filed SourceBlue and Infinilux's Motion to Strike and Exclude Expert Opinions of E.
Fred Schubert, Ph.D. at § V.A.1 (hereinafter "Motion to Exclude Schubert").

### D. NICOR's Remaining Causes of Action Are Legally Deficient

SourceBlue relies upon Infinilux's motion for partial summary judgment as to NICOR's state law claims, and specifically, that NICOR cannot: (1) establish a claim for Intentional Interference with Prospective Economic Relations ("IIPER") under California law, as it cannot establish the first, third, fourth, or fifth factors of the five-factor test under *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 63 P.2d 937, 950 (Cal. 2003); (2) satisfy the test for a California Unfair Competition Law ("UCL") claim; and (3) rely on state law tort claims premised on patent infringement to seek damages unavailable under the patent statutes.

### 1. NICOR Cannot Show Knowledge and Intent for Indirect Infringement

Both induced infringement and contributory infringement require the patentee to prove the defendant knew another party would use the Accused Product so as to directly infringe the patent. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, (2015) (inducing infringement); 35 U.S.C. § 271(c) (contributory infringement). Here, there is no evidence that SourceBlue learned of the '427 patent before receiving NICOR's November 12, 2020 infringement notice letter. Statement of Undisputed Facts in Support of Infinilux's Motion for Partial Summary Judgment ("Infinilux SF,") ¶¶ 11-13. Therefore, they cannot be liable for direct infringement before that date.  Even afterward, SourceBlue had no reason to conclude the RDCC could be used to directly infringe the '427 patent under the NICOR's current theory, new in its expert report on infringement. Both defendants have always denied infringement because RDCC lacks at least the recited terminal block and controller.  Infinilux SF, ¶¶ 15-18, 25, 26.  Additionally, for contributory infringement, neither NICOR nor its technical expert has tried to show that the RDCC has no non-infringing uses. *Id.*, ¶ 35. The RDCC has substantial non-infringing uses. *Id.*, ¶ 36. Therefore, both defendants are entitled to summary judgment on contributory infringement.

## 2.  **NICOR Cannot its Prove its State Law Claims**

NICOR has no evidence that it had an economic relationship with Facebook with probability of future economic benefit to NICOR, much less that the SourceBlue parties knew of that relationship. NICOR does not even have evidence that Facebook initially awarded it contracts to supply products for NAO 5/6. A mere "speculative expectation that a potentially beneficial relationship will arise" is insufficient to demonstrate an economic relationship between the plaintiff and some third party." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 852 (9th Cir. 2004). Even if NICOR had the requisite relationship with Facebook, there is no evidence that it has been disrupted.

NICOR cannot show it would have realized an economic advantage but for defendants' alleged interference. Its damages expert offers only a conclusory statement to that effect. SF, ¶ 40. Therefore, defendants are entitled to summary judgment on IIPER. *See Guam Paradise Co. v. Mitsubishi Corp., Ltd.*, 12 F.3d 1106, 1106. (9th Cir. 1993) (affirming summary judgment where the plaintiff failed to establish causation).

Intentional acts allegedly designed to disrupt the relationship must be "wrongful by some legal measure other than the fact of interference itself." *Korea Supply*, 29 Cal. 4th at 1153. The only "wrongful" acts NICO complains of are (1) that SourceBlue used NICOR's pricing from its bid to submit a lower price to MPI (SF, ¶ 53), and (2) patent infringement (SF, ¶¶ 54-58). But even if the SourceBlue parties had used NICOR's pricing to underbid NICOR, that would not have been "wrongful conduct."  And to the extent that NICOR's IIPER claim is based on conduct governed by federal patent law, it is preempted. See *CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d 933, 939 (D. Minn. 2006) (federal patent law preempts claim for tortious interference with prospective business advantage). Similarly, to the extent that NICOR bases its unfair competition claim on the

wrongful acts of patent infringement, it too is preempted.  *See Nano-Second Tech. Co. v. Dynaflex Int'l*, No. CV 10-9176, 2013 WL 1855828, at *5 (C.D. Cal. May 1, 2013) ("the unfair competition claim is preempted where it is based on the same conduct that gives rise to a … patent infringement claim).

## IV.    CONCLUSION

Both NICOR and its commercial distributor, National Electric Supply Co., commercially offered and contracted to sell significant quantities of its "Patented LCU," and they placed it in public use, before the '427 patent's critical date.  This is a question of law, discovery is complete, and the subsidiary fact issues have been exposed more than adequately.

Further, setting aside NICOR's meritless arguments that the '427 patent claims a non-obvious advance either over the prior art or the specifications and instructions that third parties provided, the things which NICOR and its inventors allege were not obvious got left out of the '427 patent.  This too is a question of law, and NICOR's admissions are dispositive.

NICOR's remaining causes of action are legally deficient for the reasons set forth in Infinilux's motion for summary judgment filed concurrently herewith. SourceBlue respectfully requests that this Court grant summary judgment dismissing NICOR's baseless case.

DATED:  April 25, 2023            ORBIT IP, LLP

                                  By:  /s/ David A. Randall
                                  David A. Randall (SBN 156722)
                                  Ehab Samuel (SBN 228296)
                                  Thomas J. Brindisi (SBN 175587)

                                  *Attorneys for Defendant*
                                  SOURCEBLUE, LLC

1

## <u>Certification of Compliance with C.D. Cal. L.R. 11-6.2</u>

2      The undersigned, counsel of record for Infinilux Corporation, certifies that

3 this brief contains 4,331 words, which complies with the word limit of L.R. 11-6.1.

4

5  April 25, 2023                                    */s/ David A. Randall*
                                                     _____
6                                                    David A. Randall

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28