David A. Randall (SBN 156722)
dave@orbitip.com
Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
Thomas J. Brindisi (SBN 175587)
tom@orbitip.com
ORBIT IP LLP
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Consolidated Plaintiff
Infinilux Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| NICOR, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC f/k/a<br>TURNER LOGISTICS, LLC<br><br>          Defendant.<br><br>Consolidated for all purposes with:<br><br>INFINILUX CORPORATION<br>          Plaintiff,<br><br>v.<br><br>NICOR, INC.,<br>          Defendant. | CASE Nos.: 2:21-cv-05876-AB(PDx)<br>and 2:21-cv-5300-AB(PDx)<br><br>**INFINILUX CORPORATION'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I-III OF NICOR INC.'S COUNTERCLAIMS AND PRECLUDING NICOR FROM RECOVERING CERTAIN TYPES OF DAMAGES**<br><br>Honorable André Birotte Jr.<br>Ctrm: 7B, 350 West 1st Street,<br>Los Angeles, CA 90012<br>Hearing Date: May 26, 2023<br>Hearing Time: 10:00 a.m.<br><br>Complaint Filed: May 14, 2021<br>Trial Date: August 8, 2023 |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 26, 2023, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 7B of the Ronald Reagan United States Courthouse, located at 350 West First Street, Los Angeles, California, consolidated plaintiff and counterclaim defendant Infinilux Corporation ("Infinilux"), will and does move the Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on counts I-III of consolidated defendant and counterclaimant NICOR, Inc.'s ("NICOR's") counterclaims and precluding certain types of damages.

This motion is made on the of the following grounds:

1.      NICOR's Expert Reports and the other discovery in this case is insufficient to create a triable issue of fact with respect to the indirect infringement of the asserted patent claims under 35 U.S.C. § 271(b) or (c) as set forth in Count 1 of NICOR's counterclaim.

2.      NICOR's Expert Reports and the other discovery in this case is insufficient to create a triable issue of fact with respect to: (i) NICOR's state law claims, and (ii) certain types of damages.

Counsel for the parties have met and conferred as required by L.R. 7-3.  While counsel engaged in a meaningful discussion, they were unable to reach a resolution eliminating the need for this motion. This motion is therefore made following the conference of counsel, which took place on April 14, 2023.

This motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Appendix of Exhibits in Support of Infinilux and SourceBlue's Motions for Partial Summary Judgment and Motions to Strike and Exclude ("Appendix"), the accompanying Declaration of

David A. Randall in support, the concurrently-filed Motions to Strike and Exclude, the Statement of Undisputed Facts Re Infinilux Corporation's Motion for Summary Judgment ("SF"), the pleadings and papers on file in this matter, and the arguments of counsel at the hearing on this motion.

Respectfully submitted,

DATED:  April 25, 2023          ORBIT IP, LLP

By:  /s/ David A. Randall
David A. Randall (SBN 156722)
Ehab Samuel (SBN 228296)
Thomas J. Brindisi (SBN 175587)


*Attorneys for Consolidated Plaintiff*
INFINILUX CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................5

I.      INTRODUCTION .......................................................................1

II.     LEGAL STANDARD ...................................................................2

III.    ARGUMENT................................................................................3

        A.   NICOR's Cannot Prove Indirect Patent Infringement Because It
             Cannot Show the Requisite Knowledge and Intent ............................3

             1.   Defendants cannot be Liable for Direct Infringement That
                  Took Place Before November 12, 2020.................................... 4

             2.   Partial Summary Judgement of No Indirect Infringement Is
                  Also Proper Because the SourceBlue Parties Did Not
                  Specifically Intend Another Party to Infringe the '427
                  Patent nor Did They Know that Another Party's Acts
                  Constituted Infringement ............................................ 4

             3.   NICOR Cannot Prove Contributory Infringement Because
                  It Cannot Prove a Lack of Substantial Non-Infringing Uses..... 8

        B.   NICOR Cannot Satisfy the Test for Intentional Interference with
             Prospective Economic Advantage (IIPER)............................................8

        C.   NICOR's Has Not Alleged Any Conduct That Was Wrongful as
             a Matter of Law ...................................................................10

        D.   NICOR Cannot Satisfy the Test for California Unfair
             Competition (UCL) ...............................................................12

        E.   Federal Law Preempts NICOR's Five Allegations of Wrongful
             Conduct Premised on Patent Infringement .........................................12

        F.   Summary Judgment Should be Granted On NICOR's Claims For
             Lost Profits Because NICOR Cannot Show But-For Causation.........14

             1.   NICOR Failed to Prove the First and Second *Panduit*
                  Factors.................................................................. 14

             2.   Under the Fourth *Panduit* Factor, NICOR Inc. is Not
                  Entitled to Recover Lost Profits of NICOR International ....... 18

3.      NICOR is Not Entitled to Lost Profits for NAO3 and LCO
        Datacenters on its IIPER Claim ................................................. 20

G.      Summary Judgment Should Be Granted on NICOR's Claim for
        Disgorgement Because it is Unavailable Under California's UCL ....21

IV.     CONCLUSION.................................................................................23

INFINILUX MPSJ
CASE Nos.: 2:21-cv-05876-AB(PDx)
and 2:21-cv-5300-AB(PDx)

# TABLE OF AUTHORITIES

## CASES

*Amgen, Inc. v. Sandoz Inc.*, 877 F.3d 1315 (Fed. Cir. 2017) ..................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 2

*Boldstar Technical, LLC v. Home Depot, Inc.*,

    517 F.Supp.2d 1283 (S.D. Fla. 2007) ..................................................................... 13

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) .................... 12

*CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d 933 (D. Minn. 2006) .......... 13

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,

    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ...................................................................... 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ..................................................... 2

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ......................................... 3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) ..... 3

*Echostar Satellite Corp. v. NDS Group PLC*, No. SA CV03-0950 DOC, 2008 U.S.

    Dist. LEXIS 11045 (C.D. Cal. Oct. 15, 2008) ....................................................... 23

*Grain Processing Corp. v. American Maize-Prods. Co.*,

    185 F.3d 1341 (Fed. Cir. 1999). ...................................................................... 15, 17

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998).... 12

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268

    (S.D.N.Y. 2000) ....................................................................................................... 17

*Knova Software, Inc. v. Inquira, Inc.*, No. CIV.A.06 381 JJF,

    2007 WL 1232186 (D. Del. Apr. 27, 2007) .......................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

    63 P.3d 937 (Cal. 2003)..................................................................8, 10, 21, 22

*Lee Myles Assocs. v. Paul Rubke Enters.*, 557 F. Supp.2d 1134 (S.D. Cal. 2008) ...21

*Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008)........................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................2

*Midwest Industries, Inc. v. Karavan Trailers, Inc.*,

    175 F.3d 1356 (Fed. Cir. 1999) ...........................................................................13

*Nano-Second Tech. Co. v. Dynaflex Int'l*, No. CV 10-9176,

    2013 WL 1855828 (C.D. Cal. May 1, 2013).........................................................14

*National Rural Telcoms v. DIRECTTV, Inc.*,

    319 F. Supp.2d 1059 (C.D. Cal. 2003)..................................................................22

*Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988). ..........................15

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,

    575 F.2d 1152 (6th Cir. 1978) ......................................................................passim

*Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840 (9th Cir. 2004).....................9

*Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed. Cir. 2004).......19

*Protegrity Corp. v. Voltage Sec., Inc.*, No. 3:10-cv-755(RNC),

    2013 U.S.Dist. LEXIS 181516 (D.Conn. Dec. 31, 2013). ....................................17

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp.2d 1176 (S.D. Cal. 2012)...............22

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,

    620 F.3d 1305 (Fed. Cir. 2010) ...........................................................................18

*Theme Promotions, Inc. v. News America Marketing FSI*,

    546 F. 3d 991 (9th Cir. 2008) ...............................................................................21

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595-AB(Ex),

    2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) ........................................ 13

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*,

    No. 4:19-CV-03113, 2021 WL 5991758 (S.D. Tex. Dec. 16, 2021). .................. 16

*United States v. Rodrigues*, 229 F.3d 842 (9th Cir. 2000) ........................................ 22

STATUTES

35 U.S.C. § 271(b) ........................................................................................ i, 3

35 U.S.C. § 271(c) ........................................................................................... 3

# I.   INTRODUCTION

In 2018, NICOR Inc. ("NICOR") was awarded a contract to supply its lighting systems, including its lighting control units ("LCUs") and multiple LED light fixtures (or "luminaires"), for a Meta Platforms Inc. ("MPI" or "Facebook") data center in New Albany, Ohio ("NAO 1/2").  NICOR claims that the SourceBlue LLC and Infinilux (collectively, "the SourceBlue Parties") copied its LCUs, infringed its patent that later issued, and intentionally priced its competing product so as to underbid NICOR for the next Facebook data center project, which NICOR had expected to get. Based on these allegations, NICOR asserts claims for inducing patent infringement, contributory infringement, intentional interferences with prospective economic advantage and unfair competition.

Both contributory and inducing infringement require specific knowledge that another party directly infringes a patent.  Intent is often challenging to prove, but here NICOR cannot prove it because NICOR itself has changed its infringement theory at least twice since notifying SourceBlue of its infringement allegations. How could the SourceBlue Parties have believed some third party would directly infringe the patent by installing and using the Accused Products when NICOR's own infringement theory keeps evolving?

Even if NICOR could establish indirect or direct infringement, it should not be permitted to seek lost profits damages because it has not established "but for" causation.  To assert lost profits, a patentee must present evidence that there is a demand for its product and no acceptable noninfringing alternatives to meet that demand.  Here, NICOR's damages expert offers only a conclusory opinion that there are no non-infringing alternatives.  But the evidence developed in discovery supports a finding that there were and are noninfringing alternatives.  And this is not theoretical: the undisputed evidence shows that Facebook has purchased and/or approved these alternative solutions for its data centers before and is pivoting toward

them for future data center projects.  Therefore, NICOR should be limited to a reasonable royalty if it proves infringement.

NICOR's IIPER claim fails because IIPER requires a wrongful act independent of interference with the plaintiff's prospective economic relationship. Here, the only "wrongs" NICOR complains of are pricing competing products lower than NICOR's products, and infringing NICOR's patent.  The first is not "wrongful" as a matter of law, and the second does not support IIPER because a claim that patent infringement violates state unfair competition law is preempted by the Patent Act.  Thus, the SourceBlue parties are entitled to summary adjudication on NICOR's state law claims.

## II.    LEGAL STANDARD

Summary judgment is appropriate if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions "show[] that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. A fact is material if the resolution of that fact might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *see Celotex*, 477 U.S. at 322-23. Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

# III.   ARGUMENT

## A. NICOR's Cannot Prove Indirect Patent Infringement Because It Cannot Show the Requisite Knowledge and Intent

Indirect infringement can only arise in the presence of direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Induced infringement requires the patentee to prove: (1) direct infringement by a third party, (2) that the alleged infringer specifically intended to induce the third party's infringement, and (3) that the alleged infringer knew of the patent and knew that the induced acts constituted patent infringement. *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, (2015).

Contributory infringement requires the patentee to prove  that the alleged infringer sells or offers to sell, within the United States, a component that is a material part of a patented invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Thus, to establish contributory infringement, NICOR must prove that (1) Infinilux had "knowledge of the ['427 Patent] and knowledge of patent infringement," *see Commil USA, LLC*, 575 U.S. 632 at 639, and (2) the accused RDCC products have no substantial non-infringing uses," *Bill of Lading*, 681 F.3d at 1337.

NICOR's indirect infringement claims fail because NICOR cannot establish: (1) direct infringement by a third party; (2) that either defendant knew of  the '427 Patent before November 12, 2020; (3) that Infinilux intended another party to infringe the '427 Patent and knew that the other party's acts constituted infringement; and (4) the accused RDCC has no substantial non-infringing uses.

**1. Defendants cannot be Liable for Direct Infringement That Took Place Before November 12, 2020**

The '427 Patent issued on November 3, 2020. SF, ¶ 2. On November 12, 2020, NICOR's counsel wrote to Infinilux's customer, Turner Logistics, LLC (now SourceBlue) accusing the Solidian RDCC product of infringement. *Id.*, ¶ 11. Infinilux received the letter shortly after. *Id.*, ¶ 12.  There is no evidence that either SourceBlue or Infinilux learned of the '427 patent before then. *Id.*, ¶ 13. Thus, the Court should grant partial summary judgment of no indirect infringement prior to November 12, 2020.

**2. Partial Summary Judgement of No Indirect Infringement Is Also Proper Because the SourceBlue Parties Did Not Specifically Intend Another Party to Infringe the '427 Patent nor Did They Know that Another Party's Acts Constituted Infringement**

NICOR's "infringement" analysis vis a vis the accused Solidian® RDCC products has morphed over time. NICOR has now asserted three distinct infringement theories. The first on November 12, 2020, the second was on March 11, 2021 (Ex. 54), and the latest was on November 4, 2022, by its expert Dr. Schubert. SF, ¶ 14. Given Dr. Schubert had to assert yet a third infringement theory, NICOR's prior infringement theories were admittedly insufficient. And because NICOR admittedly could not articulate how the RDCC products infringed for two years, neither SourceBlue nor Infinilux could have known that another party's acts constituted infringement. Nor could they have specifically intended to cause another party to directly infringe. Indeed, the SourceBlue Parties consistently articulated that the accused RDCC products lack at least two elements required by the patent claims: the terminal block element and the controller element. *See Id.*, ¶ 15.

On November 24, 2020, SourceBlue's counsel responded to NICOR's letter explaining why its contentions lacked merit. *Id.*, ¶ 16-17.

The '427 Patent issued on November 3, 2020. SF, ¶ 2. There is no evidence that either SourceBlue or Infinilux learned of the '427 patent before receiving NICOR's November 12, 2020 letter accusing the Solidian RDCC product of infringing the '427 patent. *Id.*, ¶¶ 11-13. Therefore, they cannot be liable for direct infringement that took place before November 12, 2020.

The identified Normal Power and Emergency Power Distribution Blocks, however, only had AC in and out. *Id.*, ¶ 18. Fig. A below is an image of page 6 of Exhibit C. NICOR pointed to a single terminal block to meet the "normal side" terminal block element of claim 1.



Fig. A

NICOR responded, providing a new claim chart which asserted that the normal and emergency power side terminal blocks of claim 1 are satisfied by two physically separate, distinct terminal blocks on each side of the accused RDCC products. *Id.* at ¶ 19, 20. This is shown in Figs. B and C below—images of page 6 and 7 of NICOR's of Exhibit 1. But the new chart still failed to explain how the controller was purportedly connected to the claimed "terminal block." *Id.* at ¶ 21. Moreover, for the second terminal block element, NICOR pointed to the Emergency Power

Distribution Block and the Emergency Power Supply Distribution Block, both of which have AC in and out. *Id.* at ¶ 22.



**Fig. B**



**Fig. C**

On March 25, 2021, SourceBlue responded, arguing that NICOR's new interpretation, "is contrary to the express teachings of the '427 Patent and representations made by NICOR to the PTO during the patent's prosecution. SF, ¶ 23. NICOR responded, stating it disagreed. *Id.*, ¶ 24.

On April 30, 2021, SourceBlue pointed out that Rule 11 required a claim construction analysis and NICOR had provided none. *Id.*, ¶ 25. SourceBlue provided its own construction of claim 1, applied it to show lack of infringement, and explained why the doctrine of equivalents was inapplicable. *Id.*, ¶ 26. In response, NICOR sued SourceBlue, incorporating by reference Exhibit 1 from its March 11,

2021. *Id.*, ¶ 27.  Infinilux then sued NICOR for a declaratory judgment of non-infringement on July 1, 2021. *Id.*, ¶ 3. NICOR counterclaimed incorporating by reference its defective March 11, 2021, infringement analysis. *Id.*, ¶ 28.

On November 4, 2022, NICOR's technical expert, Dr. Schubert, presented a third infringement theory.  Dr. Schubert points to every terminal block on the normal side of the RDCC products as satisfying the "normal terminal block" element of claim 1 and every terminal block on the emergency side of the RDCC products as satisfying the second terminal block element, as shown in Fig. D below. *Id.,* ¶ 31.



**Figure caption:** Solidian RDCC with terminal blocks on the normal side (right-hand side) and the emergency side (left-hand side) (Installation Instruction, 2019 version), annotated.

**Fig. C**

Moreover, in his Supplemental Report Dr. Schubert opines that the Emergency Power Distribution Block provides the emergency power input for his "collective" terminal block and the Emergency Power LED Light Fixture Distribution Block that provides emergency DC power out. *Id.*, ¶ 32.  In other words, NICOR's own expert rejects the infringement theories NICOR articulated pre-suit and in its pleadings.  Under these circumstances, NICOR cannot show a genuine issue of fact regarding whether SourceBlue or Infinilux had the specific intent to cause another party to infringe the '427 patent or knew that another party's

acts constituted infringement. Partial summary judgment on NICOR's indirect infringement claims is thus proper.[1]

### 3. NICOR Cannot Prove Contributory Infringement Because It Cannot Prove a Lack of Substantial Non-Infringing Uses

NICOR alleges that "Infinilux has induced and/or contributed to the infringement by one or more third parties, including SourceBlue, by instructing, directing and/or requiring them to infringe the '427 Patent either literally or under the doctrine of equivalents." SF, ¶ 33. NICOR's allegation against SourceBlue is almost identical but identifies Infinilux as the direct infringer. *Id.*, ¶ 34. Nowhere does NICOR allege that the RDCC has no non-infringing uses. NICOR's technical expert, Dr. Schubert, is also silent on the issue. *Id.*, ¶ 35. The RDCC, however, has substantial non-infringing uses. *Id.*, ¶ 36.   This dooms NICOR's contributory infringement claim, so the defendants are entitled to summary judgment on it.

## B. NICOR Cannot Satisfy the Test for Intentional Interference with Prospective Economic Advantage (IIPER)

To prevail on IIPER under California law, a plaintiff must prove five elements: (1) an economic relationship between NICOR and some third party with the probability of future economic benefit to NICOR; (2) Infinilux's or SourceBlue's knowledge of the existence of the relationship; (3) intentional acts on the part of Infinilux or SourceBlue designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to NICOR proximately caused by the acts of Infinilux or SourceBlue.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 63 P.3d 937, 950 (Cal. 2003).

---

[1] Moreover, Dr. Schubert's new theory of infringement must be rejected because it is a different theory than that articulated in the claim chart which NICOR incorporated into its pleadings. NICOR has never sought to amend to express a new theory and the last day to hear motions to amend was March 4, 2022 (Dkt. 48). NICOR cannot establish good cause for failing to seek to amend earlier.

1      Here, NICOR has not presented any evidence that NICOR has an economic

2  relationship with Facebook with probability of future economic benefit to NICOR,

3  much less that the SourceBlue parties knew of that relationship. It asserts that

4  "Facebook initially awarded NICOR the contracts to provide lighting systems for the

5  Facebook data centers at NAO5 and NAO6." SF, ¶ 37. But NICOR does not even

6  have evidence that Facebook initially awarded NICOR those contracts. Indeed, there

7  is no evidence of a single contract between NICOR and Facebook.

8      NICOR also alleges that if Facebook had selected its lighting system for the

9  NAO5 and NAO6 data center, its products would have been listed on Facebook's

10  master specification and used at additional Facebook data centers, to its benefit. *Id.*,

11  ¶38. But a mere "speculative expectation that a potentially beneficial relationship

12  will arise" is insufficient to demonstrate an economic relationship between the

13  plaintiff and some third party." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d

14  840, 852 (9th Cir. 2004).

15      Further, NICOR cannot meet its burden on the remaining elements.  Indeed,

16  NICOR continues to sell its products for other Facebook data center projects (SF,

17  ¶39).  Even if NICOR had the requisite relationship with Facebook, there is no

18  evidence that it has been disrupted.

19      Equally important, NICOR cannot meet the threshold requirement that "it is

20  reasonably probable that the lost economic advantage would have been realized but

21  for interference." *Pardi*, 389 F.3d at 852 (quoting *Youst v. Longo*, 43 Cal.3d 64, 729

22  P.2d 728 (Cal. 1987)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮ SF, ¶ 40. But he

25  does not explain how any alleged wrongful conduct caused NICOR's claimed

26  damages. *Id.*, ¶ 41. ▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮ from NICOR's First Amended Complaint and

28

1   Counterclaims, he does not explain how the alleged conduct was the "but for" cause

2   of any lost profits. *Id.*, ¶ 42. ████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   *Id.*, ¶¶43 and 44. It is also undisputed that NICOR's bid for NAO 5/6 was about 56%

6   higher than Infinilux's bid. *Id.*, ¶ 45.  It is probable that NICOR failed to earn the

7   contract because it asked for too much money. Because NICOR has failed to

8   establish causation, defendants are entitled to summary judgment on IIPER. *See*

9   *Guam Paradise Co. v. Mitsubishi Corp., Ltd.*, 12 F.3d 1106, *1 (9th Cir. 1993)

10  (affirming summary judgment where the plaintiff failed to establish causation).

11     **C. NICOR's Has Not Alleged Any Conduct That Was Wrongful as a**
12        **Matter of Law**

13        The intentional acts allegedly designed to disrupt the relationship must be

14  "wrongful by some legal measure other than the fact of interference itself." *See*

15  *Korea Supply*, 29 Cal. 4th at 1153, 63 P.3d at 950.  ██████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28



1   t██████████████████████████████████████ *Id.*, ¶ 63. Mere

2   speculation does not create a genuine issue of material fact. *Nelson v. Pima*

3   *Community College*, 83 F.3d 1075, 1081-1082 (9th Cir. 1996).

4        Even if the SourceBlue parties had used NICOR's pricing to underbid NICOR

5   for Facebook's NAO 5/6 project, that would not have been "wrongful conduct" as a

6   matter of law. Indeed, NICOR's Mr. Lawrence testified that he tries to get pricing of

7   his competitors, that it is "always good to have competitor feedback," and that he

8   reviewed a competitor's pricing for Facebook's project. SF, ¶¶ 64-65.

9        The remaining "key facts" Mr. Martin identified are NICOR's patent

10  infringement allegations: that the SourceBlue defendants copied NICOR's LCU

11  product, knew their product infringed, knew they were offering their product at a

12  lower price than NICOR's, were therefore awarded the NAO 5/6 contract, received

13  NICOR's notice of infringement, and continued their infringing activities. SF, ¶¶ 54-

14  58.

15       These remaining "key facts" fail to show any wrongful conduct.  First,

16  NICOR does not cite any evidence to support these allegations. Second, NICOR's

17  judicially admitted that the contract for NAO 5/6 was awarded to the SourceBlue

18  Parties before the '427 Patent issued. *Id.*, ¶ 66. Third, none of these statements

19  establishes that the SourceBlue Parties knowingly interfered with an economic

20  relationship or engaged in wrongful conduct separate from patent infringement.

21  ████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████.

23  *Id.*, ¶ 67.  But, as explained further below, allegations of wrongful conduct premised

24  on patent infringement are preempted by federal patent law and cannot support a

25  claim for IIPER. Thus, there is no genuine dispute of material fact that NICOR

26  cannot meet the third element of IIPER.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D. NICOR Cannot Satisfy the Test for California Unfair Competition (UCL)**

To prevail on its state unfair competition claim, NICOR has the burden to prove that the SourceBlue Parties engaged in "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Here, NICOR cannot meet its burden because it bases its unfair competition claim on the same conduct that it asserted for its IIPER claim. SF, ¶ 76. But as discussed above, the first seven "key facts"  do not describe "unlawful conduct" as a matter of law. Nor is there any evidence or argument that such conduct is unfair or fraudulent.  Further, as explained below, the remaining five "key facts" allege conduct that is only "wrongful" because they allege patent infringement.  But an IIPER and an unfair competition claim based on the same facts as patent infringement is preempted by federal patent law. *See infra* III.B.4.

Thus, there is no genuine dispute of material fact evincing unlawful, unfair, or fraudulent business act or practice to support NICOR's unfair competition claim under Cal. Bus. & Prof. Code § 17200.

**E. Federal Law Preempts NICOR's Five Allegations of Wrongful Conduct Premised on Patent Infringement**

"The patent statute's careful balance between public right and private monopoly to promote certain creative activity is a scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 144 (1989) (internal quotation omitted). State law that conflicts with federal law is preempted. *Amgen, Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1326 (Fed. Cir. 2017). In determining whether the state law claim conflicts with federal patent law, the Court takes an "as-applied" approach, focusing on the conduct that forms the basis for the state law claim. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1331, (Fed. Cir. 1998) *overruled in part on other grounds by Midwest*

*Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). If it is based on conduct that is protected or governed by federal patent law, the state law claim is preempted. *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595-AB(Ex), 2016 WL 3475322, *6 (C.D. Cal. Jan. 29, 2016) (holding quasi-contract claim is preempted by federal patent law).

Here, as stated above, the conduct on which NICOR bases its IIPER claim is the same conduct that gives rise to its claim for patent infringement. NICOR's IIPER claim is based on conduct that is protected or governed by federal patent law, and is therefore, preempted. *CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d 933, 939 (D. Minn. 2006) (federal patent law preempts plaintiff's claim for tortious interference with prospective business advantage). Further, NICOR styles its claim as IIPER claim in order to seek remedies unavailable under the Patent Act. For example, NICOR contends it is entitled to lost profits it would have earned if it had been awarded the contract to supply lighting systems for  NAO 3 and NAO 5/6 (where the sales of the accused products occurred before patent issued) and LCO (where no sales of the accused products occurred) projects. Thus, its claim conflicts with Congress's preemptive regulation in patent law. *See Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F.Supp.2d 1283, 1289 (S.D. Fla. 2007) ("If patent infringement or inducement was the unjustified conduct constituting tortious interference, the claim would likely be preempted by federal patent law as an attempt to offer patent-like protection to subject matter addressed by federal law.").

Similarly, because NICOR bases its unfair competition claim on the alleged wrongful acts asserted with respect to the interference claim, its unfair competition too is premised on the theory that Infinilux and SourceBlue infringed NICOR's '427 Patent, and is therefore, preempted.  *See Knova Software, Inc. v. Inquira, Inc.*, No. CIV.A.06 381 JJF, 2007 WL 1232186, at *3 (D. Del. Apr. 27, 2007) (finding unfair competition claim preempted by federal patent law because plaintiffs "have not

1    alleged any conduct in support of the state law claim beyond the acts alleged in

2    support of their patent infringement claims"); *Nano-Second Tech. Co. v. Dynaflex*

3    *Int'l*, No. CV 10-9176, 2013 WL 1855828, at *5 (C.D. Cal. May 1, 2013) (same);

4    *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 329

5    (E.D.N.Y. 2014) (holding unfair competition and tortious interference claims

6    preempted by federal patent law "due to the absence of allegations of additional

7    tortious conduct that is separate from the patent law cause of action.").

8         In this case, as Mr. Lawrence admitted there would be no wrong and no

9    damage if the SourceBlue Parties did not infringe NICOR's '427 patent. Therefore,

10   patent law preempts both state law claims.

11   **F. Summary Judgment Should be Granted On NICOR's Claims For**

12   **Lost Profits Because NICOR Cannot Show But-For Causation**

13        To recover lost profits for patent infringement, NICOR must prove causation

14   by satisfying the four-factor *Panduit* test: (1) demand for the patented product, (2) an

15   absence of acceptable non-infringing substitutes, (3) the manufacturing and

16   marketing capability to exploit the demand, and (4) the amount of profit the patent

17   owner would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d

18   1152, 1156 (6th Cir. 1978). As set forth below, NICOR cannot meet its burden of

19   proving at least the first, second, and fourth *Panduit* factors.

20        **1. NICOR Failed to Prove the First and Second *Panduit* Factors**





1 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

2 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

3 ▩ *See Nelson*, 83 F.3d T 1081-1082 ("[M]ere allegation and speculation do not

4 create a factual dispute").  Therefore, NICOR cannot meet its burden of proving

5 *Panduit*'s first factor.

6      Turning to *Panduit*'s second factor, to prove the absence of acceptable,

7 noninfringing alternatives, the patentee may prove either that the potential

8 alternative was not acceptable to potential customers or was not available at the

9 time. *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1353-

10 55 (Fed. Cir. 1999). The "but for" inquiry requires reconstructing the market, "as it

11 would have developed absent the infringing product" to determine the amount of

12 money the patentee would have made. *Id.* at 1350. Reconstructing the market

13 "requires the patentee to project economic results that did not occur." *Id.* To avoid

14 the hypothetical reconstruction from becoming pure speculation, the Federal Circuit

15 requires "sound economic proof of the nature of the market" as it would have been

16 without infringement. *Id.*, citing *Oiness v. Walgreen Co., 88 F.3d 1025, 1029-30;*

17 *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988). A fair and

18 accurate reconstruction includes hypothesizing what the patentee's competitors

19 would have done rather than infringe, because competitors will not leave a market if

20 they can compete in a lawful manner. *Grain Processing*, 185 F.3d at 1351.

21      Here, NICOR cannot meet its burden of proving the second *Panduit* factor.

22 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

23 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

24 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

25 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

26 ▩▩▩▩▩▩▩▩▩▩▩▩▩ SF at ¶ 81. ▩▩▩▩▩▩▩▩▩▩

27 ▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩▩

28

1  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨ *d.*, at ¶ 82. Mr. Martin's

2  statement fails for several reasons. <u>First</u>, as a financial analyst, Mr. Martin has no

3  specialized training to opine on ▨▨▨▨▨▨ of electrical products, such as the

4  Project Frog Lantana luminaire. *Id.*, at ¶ 83. Nor is he qualified to opine that there

5  were no acceptable noninfringing alternatives. *Id.*, at ¶ 84; *See Tubular Rollers, LLC*

6  *v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 WL 5991758, *3 (S.D.

7  Tex. Dec. 16, 2021). Indeed, NICOR's technical expert, Mr. Schubert, has not

8  opined that Project Frog's Lantana luminaire was not an acceptable non-infringing

9  alternative. SF at ¶ 85. Thus, Mr. Martin's conclusory, unsupported statement is

10  insufficient to preclude summary judgment. *See Taylor v. List*, 880 F.2d 1040, 1045

11  (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely

12  on conclusory allegation unsupported by factual data.")

13  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

14  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

15  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

16  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

17  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

18  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

19  ▨▨▨▨▨▨▨▨▨▨▨▨▨. Indeed, there is no genuine

20  dispute that not only did Facebook use Project Frog's Lantana luminaires in its

21  datacenters, but it also identified Lantana in its lighting specifications for NAO 3

22  and NAO 5/6 data centers—the same data centers for which NICOR seeks lost

23  profits. SF, ¶ 86. Further, there is no dispute that luminaires with integrated drivers

24  were also available by other manufacturers, including General Electric and

25  Infinilux—both solutions were also installed in Facebook data centers. *Id.*, ¶ 87. Yet

26  Mr. Martin fails to discuss or consider these lighting solutions as commercially

27  available noninfringing alternatives.

28

1      <u>Fourth</u>, Mr. Martin failed to reconstruct the market, as required under Federal

2  Circuit precedent, by failing to address or consider the other "pre-existing solutions"

3  in the market. *See Grain Processing*, 185 F.3d at 1351 (affirming district court's

4  denial of lost profit damages). The Lantana luminaire is only one example of a pre-

5  existing solution. SF, ¶ 88.  The SourceBlue Parties' technical expert, Mr. Richard

6  Moss, identified four products as commercially acceptable non-infringing

7  alternatives. *Id.*, ¶89.  Therefore, Mr. Martin's lost profits opinion should be

8  excluded.  *See Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp.

9  2d 268, 285 (S.D.N.Y. 2000) (excluding expert's opinion on lost profits in part

10 because expert "did not discuss, and apparently never considered, the commercial

11 acceptability of non-infringing substitutes"). Aside from the Lantana luminaire

12 product, Mr. Moss opined that, from a technical perspective, Lantana's Remote

13 Driver Unit (RDU) system, NICOR's Two-Wire LCU system, NICOR's IMS

14 System, and standard lighting fixtures with integrated drivers—are all commercially

15 acceptable non-infringing alternatives. *Id.*, ¶90.  Mr. Moss's opinion on

16 commercially acceptable non-infringing alternatives stands unrebutted. Where the

17 plaintiff does not support its lost profits claim with expert testimony, summary

18 judgment is appropriate. *Protegrity Corp. v. Voltage Sec., Inc.*, No. 3:10-cv-

19 755(RNC), 2013 U.S.Dist. LEXIS 181516 (D.Conn. Dec. 31, 2013).

20     <u>Fifth</u>, Mr. Moss's opinion that lighting fixtures with integrated drivers are an

21 acceptable noninfringing alternative is supported by other evidence. Notably, Ms.

22 Pendyala at Alfa Tech, Facebook's engineering consulting firm, confirmed that

23 Facebook specified and used these products in its datacenters as an alternative

24 solution. SF, ¶ 91. Mr. Verbeek also testified that General Electric light fixtures with

25 integrated drivers were installed in Facebook's PNB project. *Id.*, ¶ 92. Further,

26 Infinilux's corporate designee, Mr. Devesh Patel, testified that Infinilux's lighting

27 fixtures with integrated drivers were sold to SourceBlue for Facebook's NAO 3

28

1   project. *Id.*, ¶ 93. ████████████████████████████████████████

2   ████████████████████████ *Id.*, ¶94.  Moreover, Facebook has specified the

3   lighting fixtures with integrated drivers for its LCO datacenter project (without

4   including any specifications for remote driver units) and indicated that it was

5   "pivoting away" from fixtures using remote drivers. *Id.*, ¶95.

6          In sum, even drawing all inferences in favor of NICOR, there is no genuine

7   dispute of material fact  that NICOR cannot meet the first and second *Panduit*

8   factors. Accordingly, the Court should grant summary judgment precluding NICOR

9   from recovering damages based on its lost profits.

10          **2.   Under the Fourth *Panduit* Factor, NICOR Inc. is Not Entitled**
11              **to Recover Lost Profits** ████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ████████████████████████████It is not an owner or an exclusive

17   licensee of the '427 Patent. *Id.*, ¶ 100. It therefore lacks standing to bring suit or

18   claim any damages, including lost profit damages. *See Spine Solutions, Inc. v.*

19   *Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-19 (Fed. Cir. 2010);

20   *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367-72 (Fed. Cir. 2008).

21   ████████████████████████████"is not entitled to recover any lost profits

22   suffered by ████." *See Spine Solutions*, 620 F.3d at 1319; *see also Mars*, 527 F.3d at

23   1365-67.

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 Because NICOR is not entitled to convoyed sales,

25 Infinilux requests the Court to enter summary judgment precluding NICOR from

26 recovering any of .

27

28

### 3. NICOR is Not Entitled to Lost Profits for NAO3 and LCO Datacenters on its IIPER Claim

NICOR did not plead any wrongful conduct by the SourceBlue Parties that proximately caused NICOR economic harm in connection with NAO 3 and LCO datacenters. SF, ¶ 68. Similarly, NICOR's damages expert, Mr. Martin, largely parroting NICOR's counterclaims, did not identify any wrongful conduct by the SourceBlue Parties in connection with NAO 3 and LCO datacenters. *Id.*, ¶ 69. Mr. Martin introduces new theories of liability by including alleged lost profit damages for NAO 3 and LCO datacenters. *Id.*, ¶ 70. NICOR never identified these damages theories in its initial disclosures. Because NICOR and its expert failed to identify any wrongful conduct by the SourceBlue Parties in connection with NAO 3 and LCO datacenters, NICOR cannot satisfy the five-factor test for an IIPER claim on these datacenters.

Further, even if it asserted wrongful conduct premised on patent infringement, as it did for NAO 5/6, NICOR cannot show that it is entitled to lost profit damages for NAO 3 because that project *predated* the issuance of the '427 patent. *Id.*, ¶ 71. Given that the '427 patent had not issued at the time of NAO 3 sales activity, infringement of it cannot constitute wrongful conduct. I███████████████████ ███████████████████████████████████████████████ *Id.*, ¶ 72.

Meanwhile, the bidding process for the LCO datacenter project has not even begun. *Id.*, ¶ 73. ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.*, ¶ 74. ████████████████ ██████████████████████████████. *Id.*, ¶ 75. Thus, there is no evidence in the record that "it is reasonably probable" that NICOR has

1   lost any economic advantage. NICOR's speculation on lost profit damages for a

2   future LCO project is insufficient to create a genuine issue of fact. *See Nelson*, 83

3   F.3d at 1081-1082 ("[M]ere allegation and speculation do not create a factual

4   dispute for purposes of summary judgment").

5        Accordingly, there is no genuine dispute of material fact and summary

6   judgment should be granted against NICOR precluding it from recovering lost

7   profits for the NAO 3 and LCO datacenters.

8   **G. Summary Judgment Should Be Granted on NICOR's Claim for**
    **Disgorgement Because it is Unavailable Under California's UCL**

9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SF, ¶ 109.  But the Supreme Court of

13  California has held that disgorgement of profits allegedly obtained by means of an

14  unfair business practice is not an authorized remedy in an individual action under the

15  unfair competition law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

16  1134, 1150-52, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003). Following *Korea Supply*,

17  California's federal courts have repeatedly dismissed claims or struck requests for

18  disgorgement where the plaintiff sought profits a defendant allegedly obtained by

19  unfair competition. *See Theme Promotions, Inc. v. News America Marketing FSI*,

20  546 F. 3d 991, 1009) (9th Cir. 2008) (the "California Supreme Court has held that

21  nonrestitutionary disgorgement is akin to damages remedy: relief that is not allowed

22  under the UCL); *Lee Myles Assocs. v. Paul Rubke Enters*., 557 F. Supp.2d 1134,

23  1144 (S.D. Cal. 2008) (disgorgement under UCL not authorized "where the money

24  sought to be disgorged was not taken from the plaintiff and the plaintiff did not have

25  an ownership interest in the money").

26

27

28

1 ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

2 ▨▨▨ citing *SkinMedica, Inc. v. Histogen Inc*., 869 F. Supp.2d 1176, 1184 (S.D. Cal.

3 2012). SF, ¶ 110. NICOR's reliance on *Skinmedica* is misplaced. *Skinmedica*

4 explains that restitutionary disgorgement focuses on the victim's (*i.e.*, consumer's)

5 loss and is typified in situations "where the disgorged money came from the

6 prospective plaintiff in the first instance." 869 F. Supp. 2d at 1184 (quoting *National*

7 *Rural Telcoms v. DIRECTTV, Inc*., 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003)

8 (granting summary judgment as to damages available under the UCL) and *Korea*

9 *Supply*). Thus, "disgorgement of profits is an available remedy for an individual

10 plaintiff under the UCL only to the extent that it constitutes restitution." *Id*. at 1184-

11 85. In the UCL context, "restitution means the return of money to those persons

12 from whom it was taken or who had an ownership interest in it." *Id*. at 1184. The

13 *Skinmedica* court granted Skinmedica's motion for partial summary judgment

14 limiting damages because it concluded that the relief its competitor, Histogen,

15 sought in its UCL counterclaim—a constructive trust imposed on "ill-gotten gains"

16 acquired or obtained by means of unfair competition—"does not qualify as

17 restitution under the UCL" because Histogen did not have an identifiable and vested

18 interest in the money it sought to recover. *Id*. at 1185-86. The court reasoned that

19 Histogen's UCL claim was analogous to that in a case in which the Ninth Circuit

20 held that a company did not have a vested interest in a lost business opportunity not

21 yet under binding contract. *Id*. at 1186 (citing *United States v. Rodrigues*, 229 F.3d

22 842, 847 (9th Cir. 2000)). In both *Skinmedica* and *Rodrigues*, the relief sought was

23 essentially damages, not the return of money in which the claimant had a vested

24 property interest. *Id*. The court explained that parties cannot simply restyle

25 speculative damage claims for sales they might have made as "restitution" to obtain

26 relief under section 17200. *Id*.

27

28

Here too, NICOR seeks to restyle its claim for the SourceBlue Parties' profits from their contracts to supply products for Facebook's data centers as "restitutionary disgorgement" when they really seek damages. This sleight of hand should be rejected, as it was in *Skinmedica*. *See also Echostar Satellite Corp. v. NDS Group PLC*, No. SA CV03-0950 DOC, 2008 U.S. Dist. LEXIS 11045 at *26 (C.D. Cal. Oct. 15, 2008) ("Echostar's proposed definition of restitution would eviscerate the difference between restitution and damages.").

For these reasons, summary judgment that NICOR is not entitled to disgorgement as a remedy under the UCL should be granted.

## IV.   CONCLUSION

For the foregoing reasons, Infinilux respectfully requests that the Court enter judgment for Infinilux on NICOR's indirect infringement claims, state law claims, claims for lost profits, and claim for disgorgement of Infinilux's profits.


DATED:  April 25, 2023          ORBIT IP, LLP

By:  /s/ Ehab M. Samuel
David A. Randall (SBN 156722)
Ehab Samuel (SBN 228296)
Thomas J. Brindisi (SBN 175587)


*Attorneys for Consolidated Plaintiff*
INFINILUX CORPORATION

## **Certification of Compliance with C.D. Cal. L.R. 11-6.2**

The undersigned, counsel of record for Infinilux Corporation, certifies that this brief contains 6744 words, which complies with the word limit of L.R. 11-6.1.

April 25, 2023

*/s/ Ehab M. Samuel*

David A. Randall

-24-