Lena N. Bacani (SBN 213556)
    lena.bacani@lozaip.com
LOZA & LOZA, LLP
305 N. Second Ave., Ste. 127
Upland, CA 91786
Telephone:   (877) 406-5164
Facsimile:    (213) 394-3625

Gordon E. Gray (SBN 175209)
    geg@grayiplaw.com
THE GRAY LAW FIRM
4401 N. Atlantic Blvd., 2nd Fl.
Long Beach, CA 90807
Tel:   (562) 984-2020

Attorneys for Plaintiff,
NICOR, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOR, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC, f/k/a TURNER LOGISTICS, LLC,<br><br>    Defendant. | Case No. 2:21-CV-05876-AB-KS<br><br>**NICOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. André Birotte, Jr.<br><br>Hearing Date:   May 26, 2023<br>Time:            10:00 a.m.<br>Courtroom:       7B |
| INFINILUX CORPORATION<br><br>    Plaintiff,<br><br>v.<br><br>NICOR, INC.<br><br>    Defendant. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 26, 2023, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable André Birotte Jr. located at 350 West First Street, Los Angeles, CA 90012, Courtroom 7B, Plaintiff and Counterclaim Defendant NICOR, Inc. ("NICOR"), will and hereby does move the Court pursuant to Fed. R. Civ. P. 56 for an order granting partial summary judgment of:

(I) Infringement of Claims 1-3 and 7 of U.S. Patent No. 10,824,427 ("the '427 Patent"), literally (direct or indirect) or under the Doctrine of Equivalents, by SourceBlue, LLC and Infinilux Corporation (collectively, "Defendants"), or, alternatively, if the Court declines to enter summary judgment of infringement as to any of the asserted claims, NICOR asks the Court to summarily adjudicate those claim limitations for which the Court finds no material issue of fact; and

(II) No liability in NICOR's favor on Defendants' state tort claims of: (1) unfair competition; (2) tortious interference with prospective and/or contractual economic relations; (3) slander of title/trade libel; and (4) abuse of process.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, Declaration of Lena N. Bacani (and exhibits thereto), the record on file with the Court in this action, and such additional arguments and evidence as may be presented to the Court prior to the resolution of this Motion.

Counsel for NICOR met and conferred with counsel for Defendants on April 14, 2023 regarding NICOR's intent to bring this Motion and the grounds therefor. Counsel for Defendants indicated that it would oppose the Motion.

1  Dated:  April 25, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LOZA & LOZA, LLP.

By: _Lena Bacani_____

Lena N. Bacani

Attorneys for Plaintiff NICOR, Inc.

1

# TABLE OF CONTENTS

2

3

4

I.    INTRODUCTION AND BACKGROUND......................................................1

II.   LEGAL STANDARDS ..........................................................................2

  A.   Summary Judgment ...................................................................2

  B.  Patent Infringement ....................................................................2

  C.  Claim Construction......................................................................3

III.   THE ACCUSED PRODUCT INFRINGES THE '427 PATENT .................4

  A.  The Accused Product Infringes Claim 1 .....................................4

      1.  Preamble: "A system comprising: a distributed DC power output system comprising:" ...................................................5

      2.  Claim element [1a] "a case with a normal power side and an emergency power side" ...................................................5

      3.  Claim element [1b] "a barrier separating the normal power side and the emergency power side" ...................................6

      4.  Claim element [1c] "a normal mains AC power input configured to accept 120-277 volts AC" ...............................6

      5.  Claim element [1d] "a second mains AC power input configured to accept 120-277 volts AC" ...........................7-8

      6.  Claim element [1e] "at least one normal power supply driver configured on the normal power side" ...........................8

      7.  Claim element [1f] "at least one emergency power supply driver configured on the emergency power side" ...............8

      8.  Claim element [1g] "a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current" ....................8

      9.  Claim element [1h] "a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current" ....................................................12

      10.  Claim element [1i] "a controller connected to the terminal block wherein the controller controls at least one [LED lighting]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

application" .................................................................................................... 14

11.  Claim element [1j] "a cable provided from said distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one [LED lighting] application via the cable."  ....................... 15

a.  The Accused Product literally infringes……………………………………………………………15

b.  The claim limitation is satisfied under the Doctrine of Equivalence ……………………………………………………….…16

B.  The Accused Product Infringes Claim 2 ........................................................ 17

C.  The Accused Product Infringes Claim 3 ........................................................ 18

D.  The Accused Product Infringes Claim 7 ........................................................ 18

IV.  NICOR IS ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANTS' STATE TORT CLAIMS ................................................... 18

A.  NICOR's Actions are Protected by Litigation Privilege ................................ 19

1.  Litigation Privilege pursuant to Cal. Civ. Code § 47(b)…………….19

2.  Litigation Privilege Extends to Each of Defendants' State Law Claims……………………………………………………………20

3.  Litigation Privilege Has Been Expressly Applied to Patent Claims…22

B.  Defendants' State Tort Claims are Preempted by Patent Law ...................... 23

1.  Defendants' State Law Claims Are Really Patent Law Claims……...23

2.  Patent Law Preempts Such Claims………………………………… 23

C.  Patent Infringement Demand Letters are Protected by the First Amendment and the Petitioning Clause........................................................................25

V.  CONCLUSION ............................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allergan Sales, LLC v. Sandoz, Inc.*,
    935 F.3d 1370 (Fed. Cir. 2019) ..................................................................... 3, 9

*Anderson v. Liberty Lobby, Inc.*,
    477 U. S. 242 (1986) ............................................................................................ 2

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
    632 F.3d 1246 (Fed. Cir. 2011) ......................................................................... 4

*Aronson v. Kinsella*,
    58 Cal. App. 4th 254 (1997) ............................................................................ 23

*Bighorn Capital, Inc. v. Sec. Nat'l Guaranty, Inc.*,
    Case No: C 15-03083 ........................................................................................ 21

*CAE Screen-plates v. Heinrich Fiedler GmbH & Co. KG*,
    224 F.3d 1308 (Fed. Cir. 2000) ......................................................................... 3

*Castaline v. Aaron Mueller Arts*,
    2010 WL 583944 (N.D.Cal. Feb. 15, 2010) .................................................... 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 2

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009) ....................................................................... 17

*Desper Prods., Inc. v. Qsound Labs, Inc.*,
    157 F.3d 1325 (Fed. Cir. 1998) ......................................................................... 3

*Dow Chemical Co. v. Exxon Corp.*,
    139 F.3d 1470 (Fed. Cir. 1998) ....................................................................... 24

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) ......................................................................... 3

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004) ....................................................................... 25

*Hunter Douglas Inc. v. Harmonic Design*,
  153 F.3d 1318 (Fed. Cir. 1998) ........................................................ 24

*I & U, Inc. v. Publishers Sols. Int'l*,
  652 F. App'x 558 (9th Cir. 2016) ....................................................... 21

*Kaufman v. Microsoft Corp.*,
  34 F.4th 1360 (Fed. Cir. 2022) ...................................................... 4, 10

*Lerette v. Dean Witter Org'n, Inc.*,
  60 Cal. App. 3d 573 (1976) ............................................................... 19

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ............................................................................ 3

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ............................................................... 4

*Pacific Gas Electric Co. v. Bear Stearns Co.*,
  50 Cal.3d 1118 (Cal. 1990) .................................................... 20, 21, 22

*PC Connector Sols. LLC v. SmartDisk Corp.*,
  406 F.3d 1359 (Fed. Cir. 2005) ........................................................... 2

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) .............................. 3, 4, 9, 10

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993) ....................................................................... 19

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*,
  473 F. Supp. 2d 1083 (S.D. Cal. 2007) .............................................. 20

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
  411 F.3d 1369 (Fed. Cir. 2005) ......................................................... 23

*Visto Corp. v. Sproqit Technologies, Inc.*,
  360 F. Supp. 2d 1064 (N.D. Cal. 2005) ....................................... 22, 23

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) ......................................................... 16

*Warner– Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ............................................................................. 16

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC,*
814 F. Supp. 2d 1033 (S.D. Cal. 2011), *citing Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232 (Cal. 2007) ..................... 19

**Statutes**

California Business & Professions Code § 17200 ..................................... 20

California Civil Code § 47(b) ......................................................... 2, 19, 22

**Other Authorities**

Fed. R. Civ. P. 56(c) ...................................................................... 2

Restatement Second of Torts, section 586 ............................................. 23

United States Constitution ............................................................. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND BACKGROUND

NICOR seeks partial summary judgment of:  (A) infringement of claims 1-3 and 7 ("Asserted Claims") of U.S. Patent No. 10,824,427 ("the '427 Patent"), either literally (direct or indirect) or under the Doctrine of Equivalents; and (B) no liability under Defendants' tort claims:  (1) unfair competition; (2) tortious interference with prospective and/or contractual economic relations; (3) slander of title/trade libel; and (4) abuse of process.  If the Court declines to enter summary judgment of infringement as to any of the asserted claims, NICOR requests the Court summarily adjudicate those claim limitations for which it finds no material issue of fact.

NICOR's LCU system, a commercial embodiment of the '427 Patent, was installed in several Facebook datacenters.  (Statement of Undisputed Facts ("SUF") at ¶¶ 9-10.)  It is undisputed that, after their own proposed lighting control system was rejected by Facebook, SourceBlue took photos of NICOR's LCU and sent them to Infinilux to copy. (SUF at ¶¶ 13-15.) SourceBlue and Infinilux (collectively, "Defendants") thereafter developed and sold their Solidian® RDCC system ("Accused Product") which, according to defendant Infinilux, is "exactly the same" as NICOR's LCU.  (SUF at ¶¶ 16-17.)  Because the Accused Product includes every claim limitation of the Asserted Claims (SUF at ¶¶ 18-63), it infringes the '427 Patent either literally or under the Doctrine of Equivalents.

The Court has not yet construed the Asserted Claims.  However, the Court may construe the claims on summary judgment as a matter of law.  In an attempt to avoid infringement, Defendants adopt an overly narrow claim construction that imports limitations from the '427 Patent specification not found in the claims and impermissibly excludes the '427 Patent's preferred embodiment.  Such a claim construction is improper.  Under the correct construction, there is no genuine dispute that the Accused Product infringes. (SUF at ¶¶ 18-63.)

NICOR'S NOTICE OF MOT. AND MOT. FOR PARTIAL SUMM. J.

Defendants have filed multiple meritless state tort claims that Defendants admit are based solely on NICOR's assertion of its patent rights. (SUF, at ¶¶ 71-79.) NICOR's conduct, which is privileged under California Civil Code § 47(b) and the United States Constitution, is not unlawful. In addition, Defendants' state tort claims are preempted by U.S. Patent Law. Therefore, partial summary judgment in favor of NICOR on Defendants' state law claims is warranted.

It is undisputed and irrefutable that NICOR is entitled to partial summary judgment are set forth in NICOR's Statement of Uncontroverted Facts and Contentions of Law filed herewith. NICOR respectfully requests that its motion be granted in its entirety.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive summary judgment, there must be evidence sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (1986).

### B.    Patent Infringement

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

A literal infringement analysis involves two steps. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as

properly construed must be compared to the accused device or process." *CAE Screen-plates v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1316 (Fed. Cir. 2000).

The second step of a literal infringement analysis—comparison of the claims to the accused device or process—is ordinarily a question of fact submitted to a jury. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). Often, however, "the composition of the allegedly infringing process or product is undisputed.  In such a case, literal infringement collapses into claim construction—a matter of law—amenable to summary judgment." *Desper Prods., Inc. v. Qsound Labs, Inc.*, 157 F.3d 1325, 1333 (Fed. Cir. 1998).

## C.   Claim Construction

Claim construction is an issue of law to be decided by the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "Only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318-19 (Fed. Cir. 2016).

In determining the proper construction of a claim, a court should first look to the language of the claims themselves. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("[C]laim construction must begin with the words of the claims themselves.").  Claim terms "are generally given their ordinary and customary meaning" which "is the meaning that the term would have to a person of ordinary skill in the art  [("POSITA")] in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13. If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a [POSITA] would have understood disputed claim language to mean." *Id.* at 1314.

"Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id*.

The court should construe claims "in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  However, "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980; *accord Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1256 (Fed. Cir. 2011).  "A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support." *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022).

## III. THE ACCUSED PRODUCT INFRINGES THE '427 PATENT

### A. The Accused Product Infringes Claim 1

Claim 1 of the '427 Patent reads as follows:

1. A system comprising: a distributed DC power output system comprising:

   [1a] a case with a normal power side and an emergency power side;

   [1b] a barrier separating the normal power side and the emergency power side; a normal mains AC power input configured to accept 120-277 volts AC;

   [1c] a second mains AC power input configured to accept 120-277 volts AC; at least one normal power supply driver configured on the normal power side;

   [1d] at least one emergency power supply driver configured on the emergency power side;

   [1e] a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current;

   [1f] a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current;

   [1g] a controller connected to the terminal block wherein the controller controls at least one application; and

NICOR'S NOTICE OF MOT. AND MOT. FOR PARTIAL SUMM. J.

[1h] a cable provided from said distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one application via the cable.

Under the proper claim construction, there can be no dispute that the Accused Product[1] satisfies every claim limitation of Claim 1 of the '427 Patent, either literally or under the Doctrine of Equivalents, as detailed below.

### 1.  Preamble: "A system comprising: a distributed DC power output system comprising:"

There is no dispute that the Accused Product is an electric power supply system that provides power to luminaires, such as LED light fixtures, that are distributed in different locations. (SUF at ¶¶ 18-19; Moss Rebuttal Report, ¶ 186 at 99 (The RDCC "is a remote driver control center for providing at least normal and in some configurations emergency power to lighting fixtures.").)  It is also undisputed that the power being output from the RDCC to the LED lights is DC power.  (SUF at ¶¶ 20-21; Schubert Supp. Rep. at 18 (The Shanghai Moons LED drivers found in the Accused Product are dimmable constant current LED drivers that output DC constant current).)

### 2.  Claim element [1a] "a case with a normal power side and an emergency power side"

There is no dispute that the Accused Product satisfies this claim limitation.[2] The Accused Product includes a metal case.  (SUF at ¶ 22.)   There is also no dispute that the Accused Product includes, inside the metal case as shown below, a normal and emergency power side where LED drivers that distribute normal power are physical separated from drivers that distribute emergency power.  (SUF at ¶¶ 23-26.)  A photograph of the Accused Product is shown below:

---

[1] The Accused Product is the Solidian® RDCC system (excluding the three configurations that Defendants contend are sold with only normal power drivers and no emergency power drivers: RDCC1.1220000, RDCC1.2110000 and RDCC1.2220000. (SUF ¶ 18, 24, 25; Moss Rebuttal Report, ¶ 190.)

[2] Because this limitation is not in dispute, and the parties appear to agree that it is entitled to its plain and ordinary meaning, it does not require construction by the Court.



<u>**Figure 1**</u>     Figure caption: INFX-SB 004189, excerpted and annotated.

### 3. <u>Claim element [1b] "a barrier separating the normal power side and the emergency power side"</u>

Defendants do not deny, and therefore admit, that the Accused Product includes a barrier for separating the normal power side and the emergency power side. (SUF at ¶ 26.)[3] The barrier shown in Figure 1 above physically separates the drivers that accept normal power from the drivers that accept emergency power.

### 4. <u>Claim element [1c] "a normal mains AC power input configured to accept 120-277 volts AC"</u>

There can be no dispute that the Accused Product includes this limitation. The patented invention claims a power distribution system designed to take in normal AC (i.e., alternating current) power, such as that which comes from the power grid, and convert it into constant current DC (direct current) power that is more suitable to power and control downstream LED luminaires. (SUF at ¶¶ 28-29.)

---

[3] Because this limitation is not in dispute, and the parties appear to agree that it is entitled to its plain and ordinary meaning, it does not require construction by the Court.

In a vain attempt to avoid infringement, Defendants' expert, Richard Moss, argues this limitation is not met because the Accused Product is not sold with power cables and power is not connected until the RDCC is installed.  (SUF at ¶ 31.)  Mr. Moss's opinion requires an impermissibly narrow and incorrect interpretation of the claim language.  The plain and ordinary meaning of this element merely requires an input that is configured to accept 120-277 volts of AC power.  The Accused Product has a normal mains power input as shown in the figure below.



Figure caption: INFX-SB 004188, excerpted and annotated.

**Figure 2**

It is also undisputed that the Accused Product is configured to accept the normal mains power at a range of between 120-277 volts AC, as shown on the product label below in Figure 3.  (SUF, ¶ 30-31.)



Figure caption: INFX-SB 004173, excerpted and annotated.

**Figure 3**

    **5.**    **Claim element [1d] "a second mains AC power input**

**configured to accept 120-277 volts AC"**

Defendants deny the Accused Product practices this limitation because they don't sell it with a power cable included.  Defendants' arguments fail for the same reasons discussed in Section 4 and do not raise a dispute of material fact sufficient to avoid summary judgment.  Under the proper claim construction, there is no dispute that the Accused Product is configured with two mains AC power inputs as shown in Figure 2 above. The second AC power input accepts AC power in the range of 120-277 volts, as indicated on the product label and in the specification for the Wattstopper Emergency Lighting Control Unit ("ELCU").  (SUF at ¶ 33.)

> **6.  Claim element [1e] "at least one normal power supply driver configured on the normal power side"**

There is no dispute that the Accused Product includes this claim limitation.[4] (SUF at ¶ 34.)  As shown in Figure 1 above, the Accused Product has at least one LED driver configured to accept normal AC power on the normal power side. (SUF, ¶ 34-35.)

> **7.  Claim element [1f] "at least one emergency power supply driver configured on the emergency power side"**

There is no dispute that the Accused Product includes this claim element.[5] Figure 1 above shows the Accused Product has at least one LED driver configured to accept emergency AC power on the emergency power side. (SUF at ¶ 36.)

> **8.  Claim element [1g] "a terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current"**

The parties disagree over the meaning of this claim limitation and, for that reason, it requires construction by the Court.  Specifically, the parties disagree over whether "a terminal block" is limited to a single terminal block such that the entire

---

[4] Because this limitation is not in dispute, and the parties appear to agree that it is entitled to its plain and ordinary meaning, it does not require construction by the Court.

[5] Because this limitation is not in dispute, and the parties appear to agree that it is entitled to its plain and ordinary meaning, it does not require construction by the Court.

recited function, "accept[ing] normal AC power input" and "distributing normal DC power at constant current" must be performed by only a single, non-divisible terminal block.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| <u>at least one</u> terminal block configured on the normal power side to accept normal mains AC power input and distribute normal DC power at constant current | a <u>single</u> terminal block on the normal power side that accepts normal mains AC power input, <u>directs the AC power to at least one power supply driver on the normal side</u>, and <u>accepts the DC power output at constant current from the power supply driver for distribution</u>. |
| | SUF, ¶ 37; Moss Reb. Rep., ¶ 226. |

Defendants' proposed claim construction is wrong for several reasons. First, it requires reading all of the underlined language above into the claim. There is no such limitation in the existing claim language. In determining the proper construction of a claim, a court should first look to the language of the claims themselves. *See Allergan Sales, LLC v. Sandoz, Inc*., 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("[C]laim construction must begin with the words of the claims themselves.").

Claim terms "are generally given their ordinary and customary meaning" which "is the meaning that the term would have to a person of ordinary skill in the art [("POSITA")] in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). A POSITA would readily understand that a terminal block can be divided into multiple subblocks to accomplish the same number of connections. (SUF at ¶¶ 38-38.) Similarly, multiple terminal blocks can be used to accomplish the same function, i.e., connections, as a single terminal block. (SUF at ¶38.) If the meaning of the term is not readily apparent, the Court must look to "those sources available to the public that show what a [POSITA] would have understood disputed claim language to mean." *Phillips,* 415 F.3d. at 1314. "Those sources include 'the words of the claims

themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id*.

A POSITA would readily understand at the time of the invention, especially with the benefit of the '427 Patent, that the claimed invention would include:

- *a terminal block on the normal power side configured to accept normal mains AC power input, and*

- *a terminal block, on the normal power side to distribute normal DC power at constant current*

As expressly detailed in Figure 9 and the specification of the '427 Patent, *the claimed "terminal block" described in this claim limitation can be comprised of different terminal blocks, or subblocks, provided they are on the normal power side*. 'Specifically, the specification refers to *two* terminal blocks on the normal side, terminal block 945 and terminal block 970 as follows:

> AC mains power can be routed through **terminal block 945** which is configured to handle normal power, and terminal block 950 to handle emergency power. **Separate mains power 946 and mains power 951 can be provided to the terminal block 945** and terminal block 950 respectively. As such, terminal block 945 can be connected to the components on PCB 920 and controlled by switch 910 via driver 955, which serves as the application driver for normal power operations. Likewise, driver 960 serves as the driver for emergency power operations.
>
> Terminal block 965 serves as the terminal block for the low voltage emergency circuit. **Terminal block 970 serves as a terminal block for the low voltage normal power circuit.**

'427 Pat., 14:4-17 (emphasis added).

Defendants' proposed construction is also incorrect because it excludes the preferred embodiment described above and in Figure 9 of the '427 Patent, and also NICOR's own LCU product.  (SUF at ¶¶ 39-44.)  Any claim construction that would exclude the preferred embodiment is usually incorrect. *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022)("A claim construction that excludes a

1  preferred embodiment is rarely, if ever correct and would require highly persuasive

2  evidentiary support.").

3         Defendants claim construction is also contrary to a POSITA's understanding

4  of this limitation.  It is undisputed that a POSITA would understand that multiple

5  terminal blocks may be substituted for a single block to provide the number of

6  connections required by a particular configuration.  (SUF at ¶ 38.)

7         Under NICOR's proposed construction, it is indisputable that the Accused

8  Product practices this claim limitation.  Defendants do not dispute that the Accused

9  Product has a terminal block that accepts normal AC mains power input, which is

10  referred to in Figure 4 below as the "Normal Power Distribution Block."  (SUF at

11  ¶45.) Defendants also cannot dispute that the Accused Product has a terminal block,

12  called the "Normal Power LED Light Fixture Distribution Block," shown in Figure

13  4 below, that outputs constant current DC power to the LED. (SUF at ¶ 46.)



Figure caption: Solidian RDCC with terminal blocks on the normal side
(right-hand side) and the emergency side (left-hand side) (Installation
Instruction, 2021 version), annotated.

**Figure 4**

NICOR'S NOTICE OF MOT. AND MOT. FOR PARTIAL SUMM. J.

A photograph of the Accused Product showing the claimed terminal block is shown below.



**Figure 5**    Figure caption: INFX-SB 004188, excerpted and annotated.

9. **Claim element [1h] "a second terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current"**

The parties disagree over the meaning of this claim limitation for the same reasons as detailed in Section 8 above.  This claim limitation is nearly identical to Claim element [1g] with the difference being that the terminal blocks are configured on the *emergency side* to accept second mains AC power and output *emergency* DC constant current power to the LEDs.  As with Claim element [1g], the parties disagree over whether a single indivisible terminal block must perform the entire recited function, i.e., "accept[ing] second AC power input" and "distributing emergency DC power at constant current."  (SUF at ¶¶ 47-48.)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| at least one terminal block configured on the emergency power side to accept second mains AC power input and to distribute emergency DC power at constant current | a single terminal block on the emergency power side that accepts second mains AC power input, directs the AC power to at least one power supply driver on the emergency side, and accepts the DC power output at |

| | <u>constant current from the power supply driver for distribution</u>. |
| --- | --- |
| | Moss Reb. Rep., ¶ 233. |

Defendants' proposed claim construction is wrong for the same reasons discussed in Section 8 above.  Defendants' construction is contrary to the express disclosure of the '427 Patent (*see, e.g.,* 14:4-17; Fig. 9), would exclude the preferred embodiment, and is contrary to the plain and ordinary meaning of the limitation as understood by a POSITA at the time of invention.  (SUF at ¶¶ 37-44.)

Under the correct claim construction proposed by NICOR, there is no dispute that the Accused Product practices this claim limitation.  Defendants' expert, Richard Moss, testified:

> Q I hope so.  Okay.  And looking at -- going back up to page 7, does the RDCC disclosed there have a second terminal block configured on the emergency power side to accept second mains AC power input and distribute emergency DC power at constant current?
>
> A No.
>
> Q And why is that?
>
> A Because they're not combined into a single terminal block.  They're scattered around separately.
>
> Q And is that the basis of your opinion finding that this claim element is not present in the RDCC?
>
> A Correct.

(SUF at ¶47; Moss Rough Depo. Tr. 195:16-196:3.)  As shown in Figure 4 above, the Accused Product has an "Emergency Power Distribution Block" [3], that is a terminal block that accepts second (also referred to as "emergency") AC mains power input.  (*Id.*) The Accused Product also has an "Emergency Power LED Light Fixture Distribution Block" on the emergency side of the RDCC, which is a terminal block, that outputs emergency power to the light fixtures at constant DC current. (SUF at ¶ 48; Moss Reb. Rep. ¶ 236 ("second mains AC power received at the emergency AC power distribution block"); ¶ 237 ("Subsequently, the DC power

output from the emergency power supply drivers is routed to the emergency LED light fixture distribution block and fed out of the Solidian® RDCC to provide DC power to a low voltage DC light fixture."); Schubert Supp. Rep. at 41-43.)

10. **Claim element [1i] "a controller connected to the terminal block wherein the controller controls at least one [LED lighting] application"**

Defendants' assertion that the Accused Product does not practice this limitation is based solely on Defendants' improper claim construction for "terminal block," that would require that a single, indivisible terminal block be directly connected to mains AC power and distribute DC power. For the reasons detailed above in sections 8 and 9, Defendants' claim construction is incorrect.

Under the correct construction of "terminal block," it is undisputed that the Accused Product practices this claim element. Defendants concede that the Accused Product has a Legrand LMRC-212, LMRC-213, or similar controller and that the LMRC is connected to the terminal block. (SUF at ¶ 50.) Defendants' expert, Mr. Moss, testified:

> Q   And looking at the wiring diagram on page 9, where does it show the LMRC controller?
>
> A   It's on the right. It's close to the top. It says, (as read): Legrand LMRC-212. Do you see that?
>
> Q   I do. And let me share my screen here.
>
> A   212, so it has two load zones.
>
> Q   Right here (indicating)? Am I pointing in the right place? Okay.
>
> A   Yes. There it is right there, "Legrand LMRC-212."
>
> Q   And these wires, do they show it being connected to this terminal block (indicating)?
>
> A   Yes. The output wires?
>
> Q   Yes.
>
> A   I'm sorry. Yes. Output from the LMRC.

(SUF at ¶50; Moss Rough Depo. Tr. at 198:13-199:4.)

There is also no dispute that the LMRC controller in the Accused Product practices the claim limitation of controlling a lighting application by reducing or increasing the brightness of the LED luminaires. (SUF at ¶ 51-52.)

**11.   Claim element [1j] "a cable provided from said distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one [LED lighting] application via the cable."**

**a.   The Accused Product literally infringes**

Defendants' may argue that the Accused Product does not meet this limitation because of the language "a cable provided from."  Defendants argue that if a cable is not sold with the RDCC units themselves, the Accused Product does not satisfy this limitation.  Defendants cannot avoid partial summary judgment of literal infringement by arguing that a third party installs the RDCC to distribute the DC power to the LEDs.  The issue of direct versus indirect infringement will be the subject of Defendants' motion for partial summary judgment of noninfringement and is not addressed here.

Defendants attempt to avoid literal infringement by arguing that the Accused Product uses *wires* to connect to the LED fixtures rather than a *cable*.  However, a POSITA would understand that wires and cables are both conductors and would use the terms interchangeably.  (SUF at ¶ 54.)  Under the proper construction, a wire connection still literally infringes the claim limitation.  In addition, the plain and ordinary meaning of the claim language does not require that Defendants provide the cable, only that the Accused Product connect to at least one application via a cable.

It is indisputable that the Accused Product, with is the RDCC system, meets this limitation by providing a "distributed DC power output system, wherein the system can provide control and the DC power at constant current, to the at least one application (*i.e.*, an LED lighting fixture) via the cable."  (SUF at ¶ 53.)

It is also undisputable that the Accused Product is configured to provide DC

power at constant current to remote LEDs via a cable.  As shown in the various RDCC installation instructions, the Accused Product includes "Conduit Connections" to connect the RDCC to the LED fixture cables.  (SUF at ¶¶ 54-55.) This is also expressly stated in the "Electrical Connections" section of the RDCC installation instructions:  "[b]ring in *emergency low voltage lighting <u>cable</u>* through 3⁄4" conduit adapter" and "[b]ring in *normal power low voltage lighting <u>cable</u>* through 1-1⁄4" conduit adapter."  (*Id.*)

Without the cable connecting the LED luminaires, the Accused Product does not work.  It cannot power the LEDs without connecting to the LEDs.  Even if Defendants do not themselves install the Accused Product, there is no dispute that the Accused Product, which is configured to and must connect to the LEDs via a cable, literally infringes.

        **b.**        <u>**The claim limitation is satisfied under the Doctrine of Equivalence**</u>

"Under the doctrine of equivalents, "a  product or process that does not literally infringe . . . the express terms of a patent claim  may nonetheless be found to infringe if there is 'equivalence' between the elements of the  accused product or process and the claimed elements of the patented invention." *Warner– Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

The Federal Circuit "applies two articulations of the test for equivalence." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing *Warner– Jenkinson*, 520 U.S. at 21).  Under the insubstantial differences test, "[a]n element in the accused device is equivalent to a  claim limitation if the only differences between the two are insubstantial." *Voda*, 536 F.3d at 1326.  "Alternatively, under the function-way-result  test, an element in the accused device is equivalent to a claim limitation if it 'performs  substantially the same function in substantially the same way to obtain substantially the  same result.'" *Voda*, 536 F.3d at 1326.  The Federal Circuit has stated that the "function-way-result test" is preferable when

analyzing equivalence of mechanical devices. *See, Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,* 559 F.3d 1308, 1312 (Fed. Cir. 2009).

Defendants attempt to avoid literal infringement by arguing that the Accused Product uses *wires* to connect to the LED fixtures rather than a *cable*. Even if the Court is inclined to construe the claim term "cable" narrowly as Defendants may suggest, the Accused Product would still infringe Claim 1 under the Doctrine of Equivalents because a wire is equivalent to a cable under the function-way-result test. It is undisputed that the wires and cables are both conductors whose function is to deliver DC constant current from the RDCC to the remote LED luminaire. (SUF at ¶ 53.) Both the cable and wire perform that function by connecting one end of the wire/cable to the Conduit Connection on the RDCC and the opposite end of the wire/cable to the LED luminaire power inputs. (SUF at ¶ 55.) The result of the wire/cable connection is also the same. Constant current DC power is received by the LED luminaire to cause the LED to light up. (SUF at ¶ 55.)

Because the wire performs the same function the same way, to get the same result, using a wire instead of a cable still satisfies the claim limitation when the Accused Product is installed.

### B.    The Accused Product Infringes Claim 2

Dependent Claim 2 states: *"The system of claim 1 wherein the terminal block distributes the normal DC power from the at least one normal power supply driver."* It is undisputed that the Accused Product includes a terminal block that distributes normal DC power from at least one normal power supply driver.[6] (SUF at ¶ 56.) The RDCC installation instructions show that the Accused Product has a "Normal Power LED Light Fixture Distribution Block" and multiple "Normal Lighting Power Supplies (1-11)." (SUF at ¶ 57.) The normal LED drivers provide and distribute their low-voltage DC power to the terminal block which in turn

---

[6] Because this limitation is not in dispute, and the parties appear to agree that it is entitled to its plain and ordinary meaning, it does not require construction by the Court.

serves as a connection point for cables that are routed from the Accused Product to the LED lighting fixtures.  (SUF at ¶ 58.)

### C. The Accused Product Infringes Claim 3

Dependent Claim 3 includes all limitations in claims 1 and 2 and states:

*"The system of claim 2 further comprising: a surge protector connected to the terminal block for distributing mains power on the normal power side."*

Defendants admit that the Accused Product includes a surge protector.  (SUF at ¶ 59, Moss Rough Depo. Tr. 194:13-15 ("Q: And does the RDCC have a surge protector?  A: It's shown at the bottom of the – bottom of this diagram, so yes.").)  Defendants also do not deny that the surge protector is connected to a terminal block on the normal power side and practices this claim limitation.  (SUF at ¶60.)

### D. The Accused Product Infringes Claim 7

Dependent Claim 7 states:

*"The system of claim 1 wherein the at least one application comprises at least two applications, each of which comprise LED lights powered and controlled by the DC power at constant current from the cable."*

Defendants do not deny, and on that basis admit, that the Accused Product satisfies the additional limitation of Claim 7.  It is undisputed that Defendants infringe Claim 7 and summary judgment on infringement should be entered accordingly. (SUF at ¶¶ 61-63.)

## IV. NICOR IS ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANTS' STATE TORT CLAIMS

All of Defendants' state law claims are premised on NICOR's assertion of its Federal patent rights.  NICOR sent a cease and desist letter to SourceBlue notifying it of NICOR's rights in the patent-in-suit (the '427 Patent).  (SUF at ¶ 64)  NICOR copied several third parties on the letter who had an interest in NICOR's infringement claims, including Facebook (the party that owned the datacenter where the Accused Product was installed).  (*Id.*)  Defendants, facing these patent

claims, raised numerous state law claims in supposed opposition.  However, each of these claims is improper, as the California litigation privilege protects plaintiffs who assert their rights in litigation, or even prior to litigation, as discussed herein. In addition, Defendants' state tort claims are preempted by U.S. Patent law. Because Defendants' state tort claims must fail as a matter of law, partial summary judgment of no liability is appropriate.

### A.   **NICOR's Actions are Protected by Litigation Privilege**

#### 1.   **Litigation Privilege pursuant to Cal. Civ. Code § 47(b).**

In California, the litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action. Cal. Civ. Code § 47(b); *see Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) (acknowledging that communications with some relation to an anticipated lawsuit are within the privilege); *Lerette v. Dean Witter Org'n, Inc.,* 60 Cal. App. 3d 573, 575, 577-78 (1976) (holding that a demand letter was "fully privileged . . . as preliminary to a judicial proceeding").

The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040 (S.D. Cal. 2011), *citing Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241 (Cal. 2007) (internal quotations and citations omitted). The litigation privilege can apply to out-of-court statements "to nonparties who have a substantial interest in the outcome of the pending litigation." *Castaline v. Aaron Mueller Arts,* 2010 WL 583944, at *4 (N.D.Cal. Feb. 15, 2010).

Indeed, the California Supreme Court has ruled that the only tort not subject to the litigation privilege is malicious prosecution.

> The policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress,

negligent misrepresentation, invasion of privacy, fraud, and to the torts alleged here: interference with contract and prospective economic advantage. (13) (See fn. 12.) (50 Cal.3d 205, 215 and cases cited.) In fact, the privilege applies to any action except one for malicious prosecution. (*Silberg v. Anderson,supra*,50 Cal.3d at p. 216; *Ribas v. Clark* (1985) 38 Cal.3d 355, 364 [ 696 P.2d 637, 49 A.L.R.4th 417].)

*Pacific Gas Electric Co. v. Bear Stearns Co*., 50 Cal.3d 1118, 1132-33 (Cal. 1990) (emphasis added) (Hereinafter "*PG&E*").

### 2.   Litigation Privilege Extends to Each of Defendants' State Law Claims.

Defendants have asserted nearly identical state law claims for:  (1) Unfair Competition; (2) Tortious Interference with Prospective and/or Contractual Economic Relations; and Slander of Title/Trade Libel.  (SUF at ¶¶71-72.)  In addition, Infinilux has asserted an additional claim for Abuse of Process.  (SUF at ¶72)  All these state law claims are based on Defendants' contention that NICOR wrongly asserted its '427 Patent claims in its pre-suit communications and in this litigation.  (SUF at ¶¶73-79.)

Each of Defendants' state law claims is based on NICOR's alleged communications pertaining to assertion of its rights in the '427 Patent (the patent-in-suit). (SUF at ¶¶73-79.)  Such communications are not actionable based on the litigation privilege.  In fact, the only actionable state law claim is for malicious prosecution which is not relevant here.  *See PG&E*, 50 Cal.3d at 1132-33.

There is no dispute that Defendants' claim for Unfair Competition under California Business & Professions Code § 17200 and the Common Law [Count III], is based on NICOR's '427 Patent assertion.  (SUF at ¶¶ 73, 76.)  Therefore, it is not actionable.  *See PG&E*, 50 Cal.3d at 1132-33*; see also Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F. Supp. 2d 1083, 1089 (S.D. Cal. 2007) (dismissing 17200 claim on the basis of litigation privilege).

1    There is no dispute that Defendants' claim for Tortious Interference with

2    Prospective and/or Contractual Economic Relations [Count IV], is based on

3    NICOR's assertions of its rights in the '427 Patent.  (SUF at ¶¶ 74, 77.)  The *PG&E*

4    court expressly ruled that such claims are not actionable and subject to the litigation

5    privilege.  *PG&E*, 50 Cal.3d at 1132-33 ("The policy of encouraging free access to

6    the courts is so important that the litigation privilege extends beyond claims of

7    defamation . . . to the torts alleged here: *interference with contract and prospective*

8    *economic advantage*.") (emphasis added).  Indeed the Court ruled that such a claim

9    could only be brought after the litigation if the case was later decided in

10    Defendant's favor.  *PG&E*, 50 Cal.3d 1118, 1137 (Cal. 1990) ("To permit a cause

11    of action for interference with contract or prospective economic advantage to be

12    based on inducing potentially meritorious litigation on the contract would threaten

13    free access to the courts by providing an end run around the limitations on the tort

14    of malicious prosecution.").

15    There is no dispute that Defendants' state claim for Slander of Title/Trade

16    Libel [Count V], is based on NICOR's assertion of its patent rights.  (SUF at ¶¶ 75,

17    78.)  Such claims are not actionable.  *See PG&E*, 50 Cal.3d 1132-33 ("In fact, the

18    privilege applies to any action except one for malicious prosecution.").  Courts have

19    expressly ruled that the litigation privilege bars claims for slander of title.  *See*

20    *Bighorn Capital, Inc. v. Sec. Nat'l Guaranty, Inc*., Case No: C 15-03083 SBA, 2015

21    WL 9489897, at *6 (N.D. Cal. Dec. 29, 2015) (dismissing slander of title claim

22    based on litigation privilege).  And Courts have similarly barred recovery for trade

23    libel based on the litigation privilege.  *See I & U, Inc. v. Publishers Sols. Int'l,* 652

24    F. App'x 558, 2-3 (9th Cir. 2016) (unpublished, affirming dismissal of trade libel

25    claim based on litigation privilege).

26    There is also no dispute that Infinilux's claim for Abuse of Process [Count V

27    [sic]], is based on NICOR's assertion of its rights in the '427 Patent.  (SUF at ¶ 79.)

28    The *PG&E* court expressly ruled that such claims were not actionable and subject

1   to the litigation privilege.  *PG&E*, 50 Cal.3d 1132-33 ("The policy of encouraging

2   free access to the courts is so important that the litigation privilege extends beyond

3   claims of defamation to claims of ***abuse of process*** . . . .") (emphasis added).

4       It is clear from Cal. Civ. Code § 47(b) and the cases interpreting it, that

5   Defendants' state law claims, each of which is based on NICOR's assertion of its

6   rights in the patent-in-suit, are barred by the litigation privilege and not actionable

7   as a matter of law.  Accordingly, the Court should grant partial summary judgment

8   in NICOR's favor, and find that NICOR is not liable for any of Defendants' state

9   law claims.

10      **3.**      **Litigation Privilege Has Been Expressly Applied to Patent Claims**

11      In the context of a patent assertion, courts applying California law have ruled

12  that the litigation privilege prohibits essentially all tort claims against the patent

13  holder.  In *Visto Corp. v. Sproqit Technologies, Inc.*, 360 F. Supp. 2d 1064, 1065

14  (N.D. Cal. 2005), plaintiff Visto Corporation sued defendant Sproqit Technologies,

15  Inc. for infringement of Visto's '192 patent. In turn, Sproqit filed counterclaims

16  against Visto for (1) declaration of noninfringement and invalidity of the '192

17  patent, (2) declaration of noninfringement and unenforceability of another patent

18  (the '708 patent), (3) tortious interference with prospective economic advantage,

19  and (4) defamation.  *See id.* Visto's motion to dismiss was granted based on the

20  litigation privilege as to the state law claims for tortious interference and

21  defamation.  *See id*.

22      The defendant, Sproqit, contended that the patent assertion was only subject

23  to the litigation privilege if made in good faith.  *Visto Corp. v. Sproqit*

24  *Technologies, Inc*., 360 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005) (Defendant

25  "asserts that prelitigation communications are privileged only if "they are made in

26  relation to a proceeding that `is contemplated in good faith and under serious

27  consideration.'" ").  The court ruled that it is the contemplation of litigation, not the

28  merits of the litigation, that must be made in good faith.

> It is true that prelitigation communications are privileged only if made in connection with proposed litigation contemplated in good faith and under serious consideration. However, Sproqit misconstrues the good faith requirement. It is the contemplation of litigation that must be in good faith, not the merits of the actual litigation itself that animates the litigation privilege. As pointed out by the court in *Aronson v. Kinsella*, 58 Cal. App. 4th 254 (1997), the "genesis of the [good faith and serious consideration] test is the Restatement Second of Torts, section 586, comment e, which seeks to prevent application of the privilege when the statements are made at a time when the possibility of litigation is not seriously considered." *Id.* at 266

*Visto Corp. v. Sproqit Technologies, Inc.*, 360 F. Supp. 2d 1064, 1069 (N.D. Cal. 2005) (emphasis added).

The same applies here, where the only alleged misconduct asserted by Defendants is that NICOR threatened to bring, and did bring, litigation on its '427 Patent. It is undeniable that NICOR's threat of patent litigation was made in good faith since NICOR did, in fact, bring the litigation. For these reasons, NICOR's actions are protected by the litigation privilege and Defendants' state law claims must fail as a matter of law.

### B.    Defendants' State Tort Claims are Preempted by Patent Law

#### 1.    Defendants' State Law Claims Are Really Patent Law Claims

As stated above in Section IV(A), each of Defendants' state law claims is brought in response to the Federal patent claims asserted by NICOR and is based on NICOR's assertions of its rights in the '427 Patent prior to, and during, the present lawsuit. (SUF at ¶¶ 71-79.)  Because they relate directly to the patent-in-suit and subject matter of this litigation, Defendants' state law claims are pre-empted by the Federal Patent law.

#### 2.    Patent Law Preempts Such Claims

Federal Circuit law governs whether federal patent law preempts a state law claim. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) (*citing Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356,

1361 (Fed. Cir. 1999)). Tort claims under state law are not preempted by federal patent law where they include additional elements not found in federal patent law claims. *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998).

> To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted.

*Hunter Douglas Inc. v. Harmonic Design*, 153 F.3d 1318, 1335 (Fed. Cir. 1998).

The facts in this case are not in dispute.  Defendants' state law claims are based solely on the fact that NICOR asserted its '427 Patent claims and notified Cupertino and Facebook by copying them on NICOR's cease and desist letter to SourceBlue.  (SUF at ¶¶ 64, 69, 71-79.)  Cupertino Electric and Environmental Systems Design, Inc. are subcontractors involved with the Facebook datacenters where NICOR's LCU, the commercial embodiment of the invention claimed in the '427 Patent, or the Accused Product, had been installed.  (SUF at ¶¶ 66-67.) Facebook owned the datacenters where both NICOR's LCU and the Accused Products had been installed. (SUF at ¶ 65.)

NICOR's assertions of infringement of the '427 Patent are governed and protected by Federal patent law.   Because Defendants admit that their state law claims are based solely on NICOR's assertion of its patent rights, without adding anything more or any other elements, those state law claims are preempted as a matter of law.  *Hunter Douglas Inc. v. Harmonic Design*, 153 F.3d 1318, 1335 (Fed. Cir. 1998).

NICOR'S NOTICE OF MOT. AND MOT. FOR PARTIAL SUMM. J.

**C.** **Patent Infringement Demand Letters are Protected by the First Amendment and the Petitioning Clause**

The Federal Circuit holds that the defendants' state law claims are barred by the Petition Clause and federal patent law preemption. *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). The Federal Circuit (and several other circuits) provides *Noerr* immunity from state-law liability based on the Petition Clause and federal patent law preemption. *Id.* at 1376 (citing *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *A.D. Bedell Wholesale Co. v. Philip Morris, Inc.*, 263 F.3d 239, 252-53 (3d Cir. 2001); *Primetime 24 Joint Venture v. Nat' Broad. Co.*, 219 F.3d 92, 100 (2d Cir. 2000); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992)). Importantly, a patent holder must be allowed to inform potential infringers of infringing activity. *Id. (citing Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 (1913).). So long as the claim of infringement is made without objective bad faith, state law claims are barred. *Id.* Accordingly, summary judgment should be entered against Defendants' state-law claims as a matter of law.

**V.** **CONCLUSION**

For the foregoing reasons, NICOR respectfully requests that the Court grant NICOR's Motion in its entirety.

Dated: April 25, 2023

Respectfully submitted,

LOZA & LOZA, LLP.

By: *Lena Bacani*

Lena N. Bacani

Attorneys for Plaintiff NICOR, Inc.