David A. Randall (SBN 156722)
dave@orbitip.com
Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
Thomas J. Brindisi (SBN 175587)
tom@orbitip.com
ORBIT IP, LLP
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

*Attorneys for SourceBlue, LLC and
Infinilux Corporation*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| NICOR, INC.,<br>    Plaintiff,<br><br>v.<br><br>SOURCEBLUE, LLC f/k/a<br>TURNER LOGISTICS, LLC<br><br>    Defendant.<br>Consolidated for all purposes with:<br><br>INFINILUX CORPORATION<br>    Plaintiff,<br><br>v.<br><br>NICOR, INC.,<br>    Defendant. | CASE Nos.: 2:21-cv-05876-AB(PDx) and 2:21-cv-5300-AB(PDx)<br><br>**INFINILUX CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I-III OF NICOR, INC,'S COUNTERCLAIMS AND PRECLUDING NICOR FROM RECOVER CERTAIN TYPES OF DAMAGES**<br><br>Honorable André Birotte Jr.<br>Ctrm:  7B, 350 West 1st Street,<br>Los Angeles, CA 90012<br>Hearing Date: May 26, 2023<br>Hearing Time:  10:00 a.m.<br><br>Complaint Filed:  May 14, 2021<br>Trial Date:  August 8, 2023 |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................ 1

II.    ARGUMENT ................................................................................. 1

A. NICOR FAILED TO MEET ITS BURDEN ESTABLISHING INDIRECT
   INFRINGEMENT OF THE ASSERTED '427 PATENT ................................. 1

   1. NICOR Has Not Shown That the SourceBlue Parties Had the
      Requisite Knowledge of the '427 Patent Before November 12, 2020 ...... 1

   2. Absent Evidence of Alleged Third-Party Infringers or Intent to
      Induce a Third Party's Infringement, the SourceBlue Parties Cannot
      Induce Infringement of the Asserted Patent ..................................... 2

   3. NICOR's Arguments of No Substantial Noninfringing Uses Are
      Untimely and Unsupported ...................................................... 3

   4. NICOR Has Not Shown That the SourceBlue Parties Had the
      Requisite Knowledge For Indirect Infringement ............................... 4

B. NICOR FAILED TO MEET ITS BURDEN ON ITS STATE LAW CLAIMS . 8

   1. NICOR Cannot Introduce A New Legal Theory of A Cartwright Act
      Violation to Avoid Preemption and Oppose Summary Judgment ........... 8

   2. NICOR's Evidence for Cartwright Act Violation is Insufficient to
      Create a Genuine Issue of Material Fact ...................................... 9

   3. Other Than Its Untimely Assertion of Cartwright Act Violation,
      NICOR Has Not Articulated any Wrongful Acts to Support Its State
      Law Claims ....................................................................... 11

C. NICOR HAS NOT SHOWN THAT THERE IS A GENUINE DISPUTE OF
   FACT PRECLUDING SUMMARY JUDGMENT ON ITS LOST PROFITS
   DAMAGES ........................................................................... 12

   1. Because NICOR Does Not Dispute That Martin Failed to Consider
      Non-Infringing Alternatives, it is Not Entitled to Lost Profit
      Damages ........................................................................... 12

2. NICOR Is Not Entitled to Recover Lost Profits of NICOR International as a Matter of Law ............................................................. 13

3. NICOR Failed to Show a But-For Causation Between the Damages that It Seeks for Light Fixture Sales and Its Newly-Raised Wrongful Conduct Based on a Cartwright Violation from RDCC Sales ............... 14

D. NICOR DOES NOT DISPUTE SUMMARY JUDGMENT ON ITS CLAIM FOR DISGORGMENT ....................................................................... 15

III.   CONCLUSION ............................................................................. 15

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anticancer, Inc. v. Leica Microsys.*, No. 11cv2756 DMS (JMA),

   2013 WL 12089904 (S.D. Cal. Jun. 26, 2013) ........................................................ 5

*Aten Intl. Co. v. Uniclass Tech.*, CV 15-04424-AG, 2017 U.S. Dist. LEXIS 236197

   (C.D. Cal. April 24, 2017) ................................................................................... 12

*Callaway Golf Co. v. Acushnet Co.*, 691 F. Supp. 2d 566 (D. Del. 2010) ............... 13

*Commil USA, LLC. v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) .................................. 2, 4

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*,

   286 Cal.Rptr.3d 333, 71 Cal.App.5th 528 (2021) ................................................ 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ................. 3

*FDIC v. Network Capital Funding Corp.*, SA CV 14-00967-AB (ANx), 2015 U.S.

   Dist. LEXIS 199960 (C.D. Cal. Aug. 28, 2015) ................................................... 8

*Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171,

   91 Cal.Rptr.2d 534 (2000) ...................................................................................... 9

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,

   185 F.3d 1341 (Fed. Cir. 1999) ........................................................................... 12

*Grupe v. Glick*, 26 Cal.2d 680 (1945) ...................................................................... 15

*Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) ....................................... 13

*In re Bill of Lading Transmission and Processing System Patent Litigation*,

    681 F.3d 1323 (Fed. Cir. 2012) ........................................................... 3, 4

*In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016) ............................................... 6

*Kids' Universe v. In2Labs*, 95 Cal.App.4th 870 (Cal. Ct. App. 2002) ..................... 15

*Limelight Networks, Inc. v. Akamai Techs. Inc.*, 572 U.S 915 (2014) ....................... 2

*Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008) ...................... 13

*McKinney v. Am. Airlines, Inc.*, 641 F.Supp.2d 962 (C.D. Cal. 2009) ....................... 8

*Mirror Worlds, LLC. v. Apple, Inc.*, 692 F.3d 1351 (Fed. Cir. 2012) ....................... 5

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,

    383 F.3d 1303 (Fed. Cir. 2004) ........................................................ 13, 14

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,

    620 F.3d 1305 (Fed. Cir. 2010) ........................................................ 13, 14

*Starlight Cinemas v. Regal Ent. Grp.*, No. CV 14-5463-R,

    2014 U.S. Dist. LEXIS 162497 (C.D. Cal. Oct. 23, 2014) ................................... 9

*State Indus. v. AO Smith Corp.*, 751 F.2d 1226 (Fed. Cir.  1985) ......................... 2, 7

*Tech. Licensing Corp. v. Technicolor USA, Inc.*, No. CIV 2:03-1329 WBS EFB,

    2010 WL 4070208 (E.D. Cal. Oct. 18, 2010) .............................................. 3

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012) .......................... 3, 4

*VIA Techs., Inc. v. ASUS Computer Int'l*, 14-cv-03586-BLF, 2015 WL 3809382

    (N.D. Cal. Jun. 18, 2015) ............................................................... 2

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015) .... 13, 14

*Western Union Fin. Servs., Inc. v. First Data Corp.*,

    20 Cal.App.4th 1530 (1993) ................................................................. 11

*Wireless v. Solid Inc.*, No. 5:14-cv-03750-PSG, 2015 U.S. Dist. LEXIS 124772

    (N.D. Cal. Sept. 16, 2015) ................................................................... 13

## <u>Statutes</u>

Bus. & Prof. Code § 17043 ............................................................... 10, 11

Bus. & Prof. Code § 17044 ................................................................... 11

# I.    INTRODUCTION

For purposes of this partial summary judgment motion, Infinilux accepted all of NICOR's disputed facts as true. As explained in its motion (Dkt. No. 109-1) and below, the Court should grant summary judgment in favor of Infinilux: (i) on NICOR's indirect infringement of the asserted patent claims as set forth in Count 1 of NICOR's counterclaim; (ii) on NICOR's state law claims set forth in Counts II and III; and (iii) precluding NICOR from recovery certain damages.

NICOR's indirect infringement claim fails because NICOR did not identify any third-party infringers nor present any facts supporting intent to induce. It also conceded that the accused products have noninfringing uses. NICOR's state law claims also fail because: (i) its newly-raised theory of Cartwright Act violation is untimely and unsupported by record evidence establishing an overall gross profit of ███, and (ii) it's proximate causation analysis is wholly inadequate. As a result, no genuine issues of material fact exist.

While NICOR may have hoped, having been awarded contracts to supply lighting systems for Facebook datacenters before, to be awarded more such contracts, neither Facebook nor Turner Construction was under an obligation to choose NICOR for future contracts. NICOR only has itself to blame. It sought to "game the system" by patenting what Facebook had specified, in an attempt to foreclose others from offering competing bids and submitting higher bids with the unreasonable expectation that Facebook would approve them.

# II.    ARGUMENT

## A. NICOR FAILED TO MEET ITS BURDEN ESTABLISHING INDIRECT INFRINGEMENT OF THE ASSERTED '427 PATENT

### 1. NICOR Has Not Shown That the SourceBlue Parties Had the Requisite Knowledge of the '427 Patent Before November 12, 2020

To prevail on an indirect infringement claim, NICOR must establish that the SourceBlue Parties knew of the '427 Patent. *Commil USA, LLC. v. Cisco Sys., Inc.*,

575 U.S. 632, 639 (2015) (liability for inducing infringement and contributory infringement requires knowledge of the patent). In its opposition brief, NICOR argues that the SourceBlue Parties knew of the '427 Patent when they designed the accused RDCC product because they photographed NICOR's LCU, which was labelled "PATENT PENDING." Dkt. 127 at 3:22-24. But assuming the label was seen, that cannot support the knowledge requirement for indirect infringement:

> A "patent pending" notice gives one no knowledge whatsoever.  It is not even a guarantee that an application has been filed.  Filing an application is no guarantee that a patent will issue and a very substantial percentage of applications never result in patents.  What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Indus. v. AO Smith Corp.*, 751 F.2d 1226, 1235 (Fed. Cir.  1985) (knowledge that patent application was pending could not support a finding of willful infringement); *see also VIA Techs., Inc. v. ASUS Computer Int'l*, 14-cv-03586-BLF, 2015 WL 3809382, *3 (N.D. Cal. Jun. 18, 2015) ("knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim.")

Thus, the "patent pending" label is immaterial and cannot create a genuine issue of material fact. The SourceBlue Parties are not liable for indirect infringement that purportedly took place before NICOR's November 12, 2020, demand letter.

### 2. Absent Evidence of Alleged Third-Party Infringers or Intent to Induce a Third Party's Infringement, the SourceBlue Parties Cannot Induce Infringement of the Asserted Patent

NICOR asserts that "SourceBlue and Infinilux directly infringe the asserted claims of the '427 Patent." Dkt. 127-1 at p. 15, ¶ 34. However, while NICOR also accuses the SourceBlue Parties of induced infringement, it does not specifically identify any third-party entity that directly infringed the asserted patent. *See Limelight Networks, Inc. v. Akamai Techs. Inc.*, 572 U.S 915, 920 (2014)

1   ("inducement liability may arise, if, but only if, [there is] … direct infringement.").
2   NICOR failed to specifically identify a single third-party infringer and explain how
3   or why such third party infringes. *Tech. Licensing Corp. v. Technicolor USA, Inc.*,
4   No. CIV 2:03-1329 WBS EFB, 2010 WL 4070208, *2-3 (E.D. Cal. Oct. 18, 2010)
5   (granting motion for judgment on the pleadings because, like here, plaintiff failed to
6   state third-party direct infringement). Further, NICOR has not cited to any record
7   evidence demonstrating a specific intent to induce infringement. *See Exergen Corp.
8   v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (internal citation
9   omitted) (to succeed on a claim of inducement, a patentee must prove, "first that
10  there has been direct infringement, and second that the alleged infringer knowingly
11  induced infringement and possessed specific intent to encourage another's
12  infringement.") Thus, NICOR's claim that the SourceBlue Parties has induced
13  infringement of the '427 Patent necessarily fails.

### 3. NICOR's Arguments of No Substantial Noninfringing Uses Are Untimely and Unsupported

16  To succeed on its contributory infringement claim, NICOR has the burden to
17  allege and prove that the accused RDCC has no substantial non-infringing uses. *In
18  re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d
19  1323, 1337 (Fed. Cir. 2012); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363-
20  64 (Fed. Cir. 2012).

21  NICOR acknowledges that it previously failed to allege that the "RDCC has
22  no noninfringing uses." Dkt. 127-1 at 15, ¶35 ("Undisputed that NICOR does not
23  recite facts stating that the Accused Products has no noninfringing uses in its First
24  Amended Complaint ('FAC') or Counterclaims …"). Nevertheless, it offers two
25  new arguments but does not address NICOR's failure to plead a lack of substantial
26  non-infringing uses. Dkt. 127 at 9-10.
27  First, NICOR asserts that the three configurations of the RDCC with no

emergency drivers are not relevant because these configurations are not accused of infringement. Dkt. 127 at 9:17-21. But NICOR first claimed to exclude these configurations from its definition of Accused Product when it filed its summary judgment motion. Dkt. 131 at pp. 9-10, ¶18. Regardless, NICOR's recognition that configurations without emergency drivers cannot infringe is a silent admission that operating an accused RDCC without using its emergency drivers is a noninfringing use. *See Bill of Lading*, 681 F.3d at 1337 ("Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie.")

Second, NICOR acknowledges that Richard Moss opined that the RDCC has noninfringing uses because a user can simply connect to only a portion of the RDCC box (i.e., the normal side only). Dkt. 127 at 9:26-28.  Lacking citable record evidence, NICOR relies on attorney argument that customers would not pay for the Accused Product if they were not going to use all the drivers. *Id.* at 9:26-10:4. Because NICOR has not offered any survey, expert or other evidence showing how frequently a user chooses to connect some of the drivers in the lighting control units, summary judgment of no contributory infringement is appropriate. *See Toshiba*, 681 F.3d at 1362-63 (affirming summary judgment where plaintiff failed to present survey or expert evidence addressing frequency of the noninfringing use).

### 4. NICOR Has Not Shown That the SourceBlue Parties Had the Requisite Knowledge For Indirect Infringement

To prevail on an indirect infringement claim, NICOR must establish that the SourceBlue Parties knew that third-party acts constituted patent infringement. *Commil*, 575 U.S. at 639-42. NICOR relies on the SourceBlue Parties' installation instructions to suggest that the SourceBlue Parties knew their customers would directly infringe when they installed and used the RDCC. Dkt. 127 at 5:1-8. But NICOR's reliance on the installation instructions is misplaced for three reasons.

-4-

First, "[i]t is well settled that excerpts from user manuals as evidence of underlying direct infringement by third parties of products that can be used in a non-infringing manner are by themselves insufficient to show the predicate acts necessary for inducement of infringement." *Mirror Worlds, LLC. v. Apple, Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012). Here, as discussed above, the RDCC can be used in a noninfringing manner. Second, NICOR has not pointed to evidence that any third party read the installation instructions or used them, and as such, there is no evidence of inducement. *Anticancer, Inc. v. Leica Microsys.*, No. 11cv2756 DMS (JMA), 2013 WL 12089904, *4 (S.D. Cal. Jun. 26, 2013) (granting summary because, like here, plaintiff "failed to provide any evidence that the allegedly inducing material played any part in the alleged infringement"). Third, the installation instructions do not teach to connect an emergency mains AC power on the emergency power line and a normal AC mains power on the normal power line, as required in the claims. *See* concurrently-filed Reply SMF, ¶126. Indeed, during normal operation, the RDCC would receive the same normal mains AC power through both the normal and emergency power cables. *Id.* And during power failure, the emergency side receives emergency AC power while the normal side does not receive any power, and as such, the normal power distribution block is not configured (i.e., not in a state) to receive and distribute normal mains AC power. *Id.*

As soon as the SourceBlue Parties learned of the '427 patent in November 2020, SourceBlue responded to NICOR explaining why the RDCC lacked elements required by the asserted claims, particularly the two terminal blocks and the controller. Dkt. 109 at 4:14-8:2; Dkt. 109-2, ¶¶ 14-21; Ex. 54. NICOR did not respond to SourceBlue's November 2020 letter until March 11, 2021. Dkt. 127-1 at ¶¶16-19. When the SourceBlue Parties executed their purchase agreement for the NAO 5/6 project in late 2020, they had a good faith basis to believe the RDCC did not infringe NICOR's patent:

1

2

3

- "Mains AC Power Inputs" should be construed to mean "power cables that deliver 120-277 volts AC mains power" based on the specification and prosecution history of the '427 Patent.  Dkt. 131, ¶¶113, 117.

4

5

6

7

- The "terminal block on the normal power side" element should be construed to mean "one terminal block configured to both (1) accept normal mains AC power input, **and** (2) distribute normal DC power at constant current."  Dkt. 131, ¶¶126, 127.

8

9

10

11

12

13

14

- The prosecution history supports such construction because NICOR amended the claim to combine two terminal blocks with their respective functions into a single terminal block. Dkt. 125 at 8. Federal Circuit precedent also compels such construction. *See In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) (where claim language recites an element having two functions, the claim requires that the element performs both functions, rather than two elements that each perform one of the recited functions).

15

16

17

- The "second terminal block" element should be construed to mean "one terminal block configured to both (1) accept normal mains AC power input and (2) distribute emergency DC power at constant current.

18

19

- Figure 4 embodiment discloses a single terminal block 435 that has AC mains power in, DC power out and a controller connected to it.  Dkt. 131, ¶ 132.

20

21

- Figure 9 embodiment discloses a terminal block 945 having AC mains power in, and a separate terminal block 970 for 0-10 volt control signals. *Id.*, ¶ 133.

22

23

24

25

26

- Contrary to NICOR's representation, Fig. 9 is not a "preferred embodiment" of the '427 Patent because it does not disclose a terminal block configured to accept mains AC power input and distribute DC power at constant current. Dkt. 95-22 at 67-75. Indeed, the specification does not disclose Claim 1 in a single integrated embodiment. *Id.*

27

This evidence supports a reasonable inference that the SourceBlue Parties did

28

1    not have the requisite knowledge that third parties would infringe the '427 patent by

2    installing and using the RDCC products.

3            NICOR's only response is to insist that the SourceBlue Parties' claim

4    construction of the "terminal block" elements is "overly narrow and improper." Dkt.

5    127 at 5:14-17; 6:4-5. But NICOR has to show not just that the SourceBlue Parties'

6    claim construction is wrong (an issue for the Court), but also that each took an

7    affirmative act to encourage infringement with the knowledge that the induced acts

8    constitute patent infringement.

9            NICOR offers three arguments that the SourceBlue Parties had the required

10   knowledge, but none creates a genuine issue of dispute. First, NICOR claims that it

11   has always alleged that the RDCC has the required elements, including the terminal

12   blocks, and defendants always knew their RDCC product contains the structures

13   NICOR now contends are the terminal blocks. *Id.* at 8:12-21. But the SourceBlue

14   Parties had no reason to assume NICOR's claim construction was right and their

15   own interpretation was wrong, particularly in view of NICOR's changing position.

16   Dkt. 127-1 at ¶¶ 19-20. Second, NICOR claims that it's expert opinions support its

17   construction. Dkt. 127 at 6:15-19; 7:25-8:1. But SourceBlue had already been

18   awarded the contract for Facebook's project in October 2020, before it learned of the

19   '427 patent, and it supplied the RDCC years before NICOR served Dr. Schubert's

20   opening report on claim construction and infringement in 2022 and 2023, so his

21   opinions are irrelevant to the SourceBlue parties' knowledge and intent at the time

22   they supplied the RDCC products. Dkt. 109-2 (SF), ¶ 71. Third, NICOR claims that

23   the SourceBlue Parties knew the RDCC product infringed NICOR's patent when

24   they provided it to customers with installation instructions because it is "just like"

25   NICOR's LCU marked "patent pending." Dkt. 127 at 8:18-28. But a "patent

26   pending" notice cannot supply knowledge that a patent will issue or, if it does, what

27   claims it will contain. *State Indus.*, 751 F.2d at 1235. Therefore, NICOR has failed

28

INFINILUX'S REPLY ISO MOTION
FOR PARTIAL SUMMARY JUDGMENT
Nos.: 2:21-cv-05876-AB(PDx) and 2:21-cv-5300-AB(PDx)

to come forward with any material evidence supporting a reasonable inference that the SourceBlue Parties had the requisite knowledge and intent to induce direct infringement by a third party, and the SourceBlue parties are entitled to summary judgment on indirect infringement.

**B. NICOR FAILED TO MEET ITS BURDEN ON ITS STATE LAW CLAIMS**

**1. NICOR Cannot Introduce A New Legal Theory of A Cartwright Act Violation to Avoid Preemption and Oppose Summary Judgment**

Recognizing that state law claims brought on the basis of patent infringement are preempted by the Patent Act, NICOR now contends that its state law tort claims are also based on "unlawful pricing practices" or "unlawful bidding practices," namely, selling the RDCC below cost and making the loss up through sales of the LED light fixtures. Dkt. 127 at 10:13, 11:10-11 & 11:16-25. NICOR asserts, for the first time, that its state law claims are based on alleged violations of the Cartwright Act. But it is too late for NICOR to assert a new cause of action or new theory for a wrongful act to support its state law claims and avoid preemption.

A party cannot oppose summary judgment based on theories of liability "not set forth in the pleadings because the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations." *FDIC v. Network Capital Funding Corp.*, SA CV 14-00967-AB (ANx), 2015 U.S. Dist. LEXIS 199960, *15 (C.D. Cal. Aug. 28, 2015) (internal citations and quotations omitted); *McKinney v. Am. Airlines, Inc.*, 641 F.Supp.2d 962, 982 (C.D. Cal. 2009) ("Unless a plaintiff includes allegations in her complaint or informs the defendant before the close of discovery of her intent to rely on previously undisclosed allegations, she may not assert them for the first time in opposing summary judgment.")

NICOR is doing exactly that. It did not make any allegations about antitrust, sales below costs or loss leaders in its pleading and is raising them for the first time

in opposing summary judgment. Dkt. 55. Indeed, to state an antitrust claim under the Cartwright Act, NICOR was required to plead it with a "high degree of particularity" but did not do so. *See Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 196, 91 Cal.Rptr.2d 534, 553 (2000).

NICOR has never served an expert report that analyzes a Cartwright Act claim or even refers to the Cartwright Act. The SourceBlue Parties prepared their opening brief in support of their motions for summary judgment to address the claims as NICOR pleaded them and the evidence produced and elicited in discovery. Dkt. 109-1 at 8:14-14:10. The opening brief address every "wrongful" act alleged to have been done by the SourceBlue Parties and identified by NICOR's damages expert as the "key facts" for his lost profits analysis. *Id*. at 10:11-12:15. Now that discovery is over, it is unfair for NICOR to spring a Cartwright Act claim on the SourceBlue Parties in its opposition to a motion for summary judgment on its state law claims. The Court should decide whether the state law claims, as NICOR pleaded them, survive summary judgment.

## 2. NICOR's Evidence for Cartwright Act Violation is Insufficient to Create a Genuine Issue of Material Fact

Even if NICOR were allowed to amend its FAC, after the close of discovery, to allege that a Cartwright Act violation is the wrongful act that supports its state law claims, it has not pointed to evidence that would create a material dispute of fact to avoid summary judgment on that claim. The elements of a Cartwright Act antitrust claim are: (1) the formation and operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. *Starlight Cinemas v. Regal Ent. Grp.*, No. CV 14-5463-R, 2014 U.S. Dist. LEXIS 162497, at *2 (C.D. Cal. Oct. 23, 2014), *aff'd*, 691 Fed. App'x 404 (9th Cir. 2017).

Here, NICOR does not point to any evidence of the formation or operation of a conspiracy, much less its impact on restraint of trade. As for the objectives of the

alleged conspiracy, NICOR only says it was "to cut NICOR out of supplying its NICOR LCU and related light fixtures to the Facebook NAO3, 5 and 6 datacenters." Dkt. 127 at 16:11-12. But it did not articulate what evidence shows the "purpose of injuring competitors or destroying competition." Bus. & Prof. Code § 17043.

NICOR's purported evidence of a "wrongful act"—that Infinilux sold the accused products below its cost—falls short of creating a material issue of fact. First, the Accused RDCC products are sold as part of a lighting package with Solidian light fixtures. Reply SMF, ¶¶ 133, 137. This lighting package is submitted in the form of a <u>single bid</u> and materialized into a <u>single purchase contract</u> for all lighting products supplied to the Facebook datacenter project. Dkt. 99-13 (Purchase Contract); *Id.* at INFX-050367 (identifying bid in "Attachment D Bid Summary"); *Id.* at INFX-050378 (bid providing a "Total Package Price" without individual pricing of each supplied product). Indeed, the evidence that NICOR relies on shows that the overall profit margin for Infinilux's bid is ███ for NAO 5/6 datacenter. Dkt. 129-17 (Ex. 28). NICOR's damages expert report similarly confirms that ██████ ████████████████████████ and ████████████████████████ ████████████████████████." Dkt. 99-2, p. 55 of 70; Reply SMF, ¶137.

Indeed, there is no evidence that either NICOR or the SourceBlue Parties offered their lighting control product (LCU or RDCC) to Facebook as a stand-alone product. Both NICOR and SourceBlue, through their distributors, bid to supply lighting fixtures and remote driver units for an entire datacenter project. Dkt. 55, ¶¶ 9-12. Therefore, there is no evidence that Facebook compared the cost of a single NICOR LCU to that of a single Solidian RDCC, as NICOR purports to do for its "loss leader" theory. And NICOR has not alleged that the SourceBlue parties' entire bid was below cost. On the contrary, it concedes that Infinilux "sold its Accused Product below cost while still marking up its LED light fixtures in the same contract."  Dkt. 127 at 11:20-21.

Second, the sole case NICOR cites for this "wrongful act" theory illuminates the difficulty of proving this antitrust violation claim. *See Western Union Fin. Servs., Inc. v. First Data Corp.*, 20 Cal.App.4th 1530, 1539-41 (1993) (emphasizing that Sections 17043 and 17044 require specific intent to injury or destroy and affirming trial court's findings that defendant did not intend to injure its competitor but merely to build its own customer base). In *Western Union*, the California Court of Appeal stated that "it is unlawful to sell a product below cost as a 'loss leader' where 'the effect is to divert trade from or otherwise injure competitors.'" *Id.* at 1539-40. An increase in one's market share is necessarily at the cost of the other, but that does not mean that intent to compete on price constitutes intent to injure the competitor or injure competition. *Id.* at 1540-41. Like the plaintiff in *Western Union*, NICOR failed to show the required intent to injure or destroy competition.

In short, even drawing all inferences in NICOR's favor, NICOR has not come forward with evidence that the SourceBlue Parties performed any wrongful conduct under the Cartwright Act.

### 3. Other Than Its Untimely Assertion of Cartwright Act Violation, NICOR Has Not Articulated any Wrongful Acts to Support Its State Law Claims

Whether a conduct is wrongful by some measure beyond the fact of the interference is "a legal question for the trial court." *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 286 Cal.Rptr.3d 333, 343, 71 Cal.App.5th 528, 538 (2021). Similarly, the CACI jury instruction, No. 2202, Directions for Use, makes explicit: "Whether the conduct alleged qualifies as wrongful … is resolved by the court as a matter of law." Here, NICOR concedes that patent infringement "is *not* the basis of NICOR's state tort claims." Dkt. 127 at 10:16. And aside from its untimely assertion of Cartwright Act violation, NICOR has not pointed to a single "wrongful act" from its pleadings or expert report for the Court to resolve as a matter of law. Thus, summary judgment should be granted on NICOR's state law claims.

## C. NICOR HAS NOT SHOWN THAT THERE IS A GENUINE DISPUTE OF FACT PRECLUDING SUMMARY JUDGMENT ON ITS LOST PROFITS

### 1. Because NICOR Does Not Dispute That Martin Failed to Consider Non-Infringing Alternatives, it is Not Entitled to Lost Profit Damages

The SourceBlue Parties' technical expert, Mr. Richard Moss, identified four products that are commercially acceptable non-infringing alternatives. Dkt. 109-2, ¶89; Dkt. 109-1 at 17-18. NICOR's only argument in response is that Mr. Martin reviewed this factor in his report. Dkt. 127 at 18. But Mr. Martin reviewed only the Project Frog Lantana fixtures, which NICOR concedes is only one example of a prexisting solution using light fixtures with integrated drivers. Dkt. 127-1 at ¶ 88. NICOR admits that other luminaires with integrated drivers were: (i) available on the market, including from General Electric and Infinilux; and (ii) installed in Facebook datacenters. *Id.* at ¶87. But NICOR does not address why Mr. Martin ignored these solutions. He also ignored other non-infringing alternatives such as Project Frog's Lantana Remote Driver Unit and the Two-Wire LCU system. Dkt. 109-5 at 16-17. Mr. Martin did not address these products to determine what NICOR's purported market share was.

Nothing in Mr. Martin's report includes the type of "fair and accurate reconstruction of the 'but for' market." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999). Because Mr. Martin failed to conduct a meaningful market share analysis, partial summary judgment precluding NICOR from recovering lost profit damages is appropriate. *Aten Intl. Co. v. Uniclass Tech.*, CV 15-04424-AG, 2017 U.S. Dist. LEXIS 236197, at *10 (C.D. Cal. April 24, 2017) (granting partial summary judgment that plaintiff could not claim lost profits because its damages expert did not undertake a meaningful market analysis accounting for acceptable noninfringing alternatives).

### 2. NICOR Is Not Entitled to Recover Lost Profits of NICOR International as a Matter of Law

NICOR's argument that it is entitled to recover the alleged lost profits of NICOR International's ("NI") ignores Federal Circuit precedent holding otherwise. *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008); *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-1319 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated on other grounds by Halo Elecs.*, 579 U.S. 93.

In *Mars, Inc. v. TruRX LLC*, No. 6:13-cv-526-RWS-KNM, 2016 WL 4034803 (E.D. Tex. Mar. 14, 2016), the court considered arguments like those made by NICOR, including two cited by NICOR, *Wireless v. Solid Inc.*, No. 5:14-cv-03750-PSG, 2015 U.S. Dist. LEXIS 124772 (N.D. Cal. Sept. 16, 2015), and *Callaway Golf Co. v. Acushnet Co.*, 691 F. Supp. 2d 566, 576 (D. Del. 2010). The *TruRX* court set forth the history of the Federal Circuit cases considering whether a subsidiary's lost profits could be recovered by its parent. 2016 WL 4034803 at *8-10. Rejecting the argument by Mars that NICOR makes here, the court stated that the theory that a patent owner can recover its subsidiary's lost profits if they "inexorably flow" to the patentee is "not as 'well-settled'" as Mars and NICOR contend. *See id*. Rather, "since *Coin Acceptors* was decided, the Federal Circuit has twice indicated that it would be unwilling to allow a patentee to recover the lost profits of a related company as its own under the inexorable flow theory." *Id.* at *8 (granting summary judgment that plaintiff may not recover its subsidiaries' lost profits), *report and recommendation adopted by* 2016 WL 4061981, *2 (E.D. Tex. Apr. 29, 2016).

The Federal Circuit has been clear that companies "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the

consequential limitations of that structure." *Poly-America*, 383 F.3d at 1311.
NICOR's CFO admitted that it made decisions whether to sell products through
NICOR or NI for "tax benefit reasons." Dkt. 99-5 (Appendix of Exhibits, Ex. 7,
Loeppke Dep.) at 110:14-22.  NICOR must live with this decision and cannot
recover NI's lost profits in this litigation. The Federal Circuit's rulings in *Spine*
*Solutions*, *Warsaw Orthopedic*, and *Poly-America* control this analysis, and NICOR
cannot recover NI's lost profits when it created the corporate structure "to suit its
own goals and purposes." 383 F.3d at 1311.

      Thus, the Court should grant summary judgment precluding NICOR from
recovering lost profits damages.

### 3. NICOR Failed to Show a But-For Causation Between the Damages that It Seeks for Light Fixture Sales and Its Newly-Raised Wrongful Conduct Based on a Cartwright Violation from RDCC Sales

NICOR contends that its lost profits calculations are not limited to patent
infringement and that it also seeks lost profits for its IIPER claim. Dkt. 127 at 20:14-
17. But none of the authorities it cites absolve NICOR's burden of showing a but-for
proximate causation that provides a causal link between the damages it seeks and the
alleged wrongful conduct it asserts. To support its damages claim for NAO 3 and
LCO projects, NICOR doubles down on its the alleged Cartwright Action violation
claim. Dkt. 127 at 21. However, its argument is insufficient to create a genuine issue
of material fact for at least three reasons. First, because the LCO project has not
even begun, there is no act of selling a "loss leader" to support NICOR's Cartwright
Act violation claim. Second, because NICOR's wrongful-conduct claim is based on
the sales of the Accused RDCC Product, there is <u>no causal link</u> between the ***alleged***
***RDCC wrongful conduct*** and the alleged lost sales of ***light fixture products*** since
the remote driver units are not specified in Facebook's LCO specifications.

Finally, the cases cited by NICOR simply set forth the standard for
determining lost profits for an unestablished business, but none holds that a court

may award damages for the alleged lost profits of a non-party or related entity. *See Grupe v. Glick*, 26 Cal.2d 680, 692-693 (1945) (considering the standard for determining a party's own damages); *Kids' Universe v. In2Labs*, 95 Cal.App.4th 870, 882-83 (Cal. Ct. App. 2002) (same). The applicable pattern jury charge also does not provide any support for awarding damages on behalf of a non-party based on a never-disclosed damage theory. NICOR fails to provide any legal basis to recover damages on behalf of NI.

Because NICOR's proximate causation analysis is wholly inadequate, summary judgment against NICOR on its IIPER claim and related damages is appropriate.

## D. NICOR DOES NOT DISPUTE SUMMARY JUDGMENT ON ITS CLAIM FOR DISGORGMENT

In its opening brief, Infinilux explained that disgorgement of profits allegedly obtained by means of an unfair business practice is not an authorized remedy under California's unfair competition law.  Dkt. 109-1 at 21:10-23:9.  NICOR simply did not respond to this argument, instead arguing that it is entitled to lost profits for its state law claims.  Therefore, partial summary judgment that NICOR may not seek disgorgement as a remedy would be appropriately granted.

## III.   CONCLUSION

For the foregoing reasons, respectfully request that the Court enter partial summary judgment for Infinilux on NICOR's indirect infringement claims, state law claims, lost profits claims, and claim for disgorgement of Infinilux's profits.

DATED:  May 15, 2023                    ORBIT IP, LLP

                                        By:  /s/ Ehab M. Samuel
                                        David A. Randall (SBN 156722)
                                        Ehab Samuel (SBN 228296)
                                        Thomas J. Brindisi (SBN 175587)

                                        *Attorneys for SourceBlue, LLC and Infinilux Corporation*